**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| GALE CARTER and FORBES HAYS, *on behalf of themselves and those similarly situated,* | INDIVIDUAL AND COLLECTIVE ACTION FOR UNPAID MINIMUM WAGES UNDER FLSA |
| Plaintiffs, | CLASS ACTION UNDER TRUTH IN LEASING ACT, FEDERAL FORCED LABOR STATUTE, UNJUST ENRICHMENT |
| v. | |
| PASCHALL TRUCK LINES, INC., 3443 Highway 641 South P.O. Box 1080 Murray, KY 42071 | JURY TRIAL DEMANDED |
| and | No. |
| ELEMENT FLEET MANAGEMENT CORP., 161 Bay Street Toronto, Ontario M5J2S1 Canada | |
| and | |
| ECN CAPITAL CORP., 181 Bay Street, Suite 2830 Toronto, Ontario M5J2T3 Canada | |
| and | |
| ECN FINANCIAL, LLC, 655 Business Center Drive, Suite 250 Horsham, PA 19044 | |
| and | |
| ELEMENT TRANSPORTATION, LLC, 940 Ridgebrook Road, Sparks, MD 21152 | |
| and | |
| 19th CAPITAL GROUP, LLC 9702 East 30th Street | |

Indianapolis, IN 46229

    and

JOHN DOES 1-20

        Defendants.

---

**SECOND AMENDED
INDIVIDUAL, COLLECTIVE, AND CLASS ACTION CIVIL COMPLAINT**

Named Plaintiffs Gale Carter and Forbes Hays (hereinafter "Named Plaintiffs"), individually and on behalf of themselves and those similarly situated, by and through undersigned counsel, hereby complain as follows against Defendants Paschall Truck Lines, Inc. (hereinafter "Defendant PTL"), Defendant Element Fleet Management Corp., Defendant ECN Capital Corp., Defendant Element Transportation, LLC, Defendant ECN Financial, LLC, Defendant 19th Capital Group, LLC and John Does 1-20 (hereinafter collectively "Defendants").

**INTRODUCTION**

1.      Named Plaintiffs have initiated the instant action to redress Defendant PTL's violations of the Fair Labor Standards Act ("FLSA"). Named Plaintiffs assert that Defendant PTL erroneously designated Named Plaintiffs and those similarly situated as independent contractors and unlawfully deducted from and withheld portions of the wages owed to Named Plaintiffs and those similarly situated. Specifically, Defendant PTL required Named Plaintiffs and those similarly situated to cover the costs of Defendant PTL's business, intentionally reducing the wages of Named Plaintiffs and those similarly situated below the minimum wage.

2.      Named Plaintiffs have initiated the instant action to redress Defendant PTL's violations of the Truth in Leasing Act, 49 U.S.C. §14704 ("TILA"). Named Plaintiffs assert that

Defendant PTL entered into leases with Named Plaintiffs and those similarly situated that violated the provisions of the TILA.

3.      Named Plaintiffs have initiated this action to redress Defendants' violations of the Federal Forced Labor statute, 29 U.S.C. § 1589 ("FFL"). Named Plaintiffs assert that Defendants perpetuated a scheme to tie lease operators treated as independent contractors to labor for Defendants for long periods of time under threat of serious financial harm.

4.      Named Plaintiffs have initiated this action to redress Defendants' violations of the common law for unjust enrichment on behalf of themselves and all those similarly situated.

## JURISDICTION AND VENUE

5.      The foregoing paragraphs are incorporated herein as if set forth in their entirety.

6.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under laws of the United States, the FLSA, 29 U.S.C. § 201 *et seq.,* the FFL, 18 U.S.C. § 1589, and the TILA, 49 U.S.C. §14704, *et seq*. This Court has supplemental jurisdiction over Named Plaintiffs' state law claims because those claims arise out of the same nucleus of operative fact as the federal claims.

7.      This Court also has jurisdiction over Named Plaintiffs' state law claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5 million and at least one member of the putative class is domiciled in a state different from the domicile of any Defendant.

8.      This Court may properly maintain personal jurisdiction over Defendants, because Defendants' contacts with this state and this jurisdictional district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, and because Defendants have consented to jurisdiction in this court via a Choice of Law and Venue

clause contained within the lease agreements between Plaintiffs and Defendant Element, to which all Defendants are parties.

9.      Venue is properly laid in this judicial district pursuant to 29 U.S.C. § § 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

10.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

11.     Named Plaintiff Gale Carter is an adult individual residing at 3670 Buckingham CV E Horn Lake, MS 38637.

12.     Named Plaintiff Forbes Hays is an adult individual residing at 705 Harwell Drive Brunswick, GA 31532.

13.     Defendant PTL is a truckload carrier operating throughout the United States. Defendant PTL is a corporation with its principal place of business as set forth in the caption.

14.     Defendant PTL maintains its principal place of business in Murray, Kentucky and delivers freight throughout Kentucky on a regular basis.

15.     Element Financial Corporation ("EFC") is commercial finance business that provided equipment leasing services and vehicle leases to drivers of Defendant PTL, including Named Plaintiffs. EFC received the benefit of illegal agreements between itself and Named Plaintiffs and those similarly situated by conspiring with Defendant PTL to deny Named Plaintiffs and those similarly situated the benefits afforded to them under federal and state law.

16.     Element Financial LLC was a wholly owned subsidiary of EFC, acquired by EFC in or around 2012.

17.     Prior to September 18, 2016, Element Financial LLC acquired the beneficial interest in the assets leased by EFC to Named Plaintiffs and those similarly situated.

18.     On or about October 3, 2016, EFC changed its name to Element Fleet Management Corp. ("EFMC").

19.     On or about October 3, 2016, EFC, now known as EFMC, spun off certain businesses and assets into a new corporation, ECN Capital Corp. ("ECN Capital").

20.     Defendant Element Fleet Management Corp. (hereinafter "Defendant EFMC") is a Canadian corporation, who operates its principal place of business as indicated in the caption.

21.     Defendant EFMC provides and has provided equipment leasing services, including but not limited to providing equipment leasing of trucks to owner/operator drivers.

22.     Defendant EFMC, formerly known as EFC, received the benefit of agreements, illegal under the Federal Forced Labor Statute and state law, for EFC to lease trucks to Named Plaintiffs and those similarly situated which were to be used in driving for Defendant PTL and subject to the provisions, restrictions, and penalties of the vehicle leases between EFC (and/or its successors in interest) and Named Plaintiffs and those similarly situated, and the provisions, restrictions, and penalties of the operating agreements between Defendant PTL and the Named Plaintiffs and those similarly situated.

23.     Defendant ECN Capital Corp. is a Canadian corporation, who operates its principal place of business as indicated in the caption.

24.     Defendant ECN Capital Corp. is a successor in interest to EFC.

25.     Defendant ECN Capital Corp. continues the commercial finance business of Defendant EFC, including the leasing of trucks to owner/operator drivers.

26.     Defendant ECN Capital Corp. received the benefit of agreements, illegal under the Federal Forced Labor Statute and state law, for EFC to lease trucks to Named Plaintiffs and those similarly situated which were to be used in driving for Defendant PTL and subject to the provisions, restrictions, and penalties of the vehicle leases between EFC (and/or its successors in interest) and Named Plaintiffs and those similarly situated, and the provisions, restrictions, and penalties of the operating agreements between Defendant PTL and the Named Plaintiffs and those similarly situated.

27.     Defendant Element Transportation, LLC is a Delaware limited liability company with its principal place of business as indicated in the caption.

28.     Defendant Element Transportation, LLC is a wholly owned subsidiary of Defendant EFMC, and a successor in interest to EFC.

29.     On or about September 19, 2016, Element Financial, LLC, transferred assets to Defendant Element Transportation, LLC.

30.     As a result of same, Defendant Element Transportation, LLC, acquired the assets previously leased by EFC to Named Plaintiffs and those similarly situated, as well as the beneficial interest in same.

31.     At all relevant times prior to December 30, 2016, Defendant Element Transportation provided equipment leasing services to drivers of Defendant PTL.

32.     Thus, Defendant Element Transportation, LLC received the benefit of agreements, illegal under the Federal Forced Labor Statute and state law, for EFC to lease trucks to Named Plaintiffs and those similarly situated which were to be used in driving for Defendant PTL and subject to the provisions, restrictions, and penalties of the vehicle leases between EFC (and/or its successors in interest) and Named Plaintiffs and those similarly situated, and the provisions,

6

restrictions, and penalties of the operating agreements between Defendant PTL and the Named Plaintiffs and those similarly situated.

33.     On September 19, 2016, prior to the October 2016 split, Element Financial, LLC changed its operational name to ECN Financial, LLC, named as a Defendant herein.

34.     Following the October 2016 renaming of EFC and the spin-off of Defendant ECN Capital Corp., Defendant ECN Financial, LLC, was transferred from Defendant EFMC, f/k/a EFC, and became a wholly owned subsidiary of Defendant ECN Capital Corp.

35.     Defendant 19th Capital Group, LLC (hereinafter "Defendant 19th Capital") is a Delaware limited liability company that owns and operates its principal place of business as indicated in the caption.

36.     Defendant 19th Capital is a joint venture between Defendant Element Fleet Management Corp. and Celadon Group, Inc.

37.     Defendant 19th Capital is a successor in interest to Defendant Element Transportation, LLC by virtue of an asset transfer from Defendant Element Transportation, LLC to Defendant 19th Capital on or about December 30, 2016.

38.     Pursuant to the transfer, Defendant 19th Capital acquired the assets previously leased by EFC and/or its successors in interest to Named Plaintiffs and those similarly situated, as well as the beneficial interest in same.

39.     Defendant 19th Capital provides equipment leasing services to drivers of Defendant PTL.

40.     Defendant 19th Capital received the benefit of agreements, illegal under the Federal Forced Labor Statute and state law, for EFC to lease trucks to Named Plaintiffs and those similarly situated which were to be used in driving for Defendant PTL and subject to the provisions,

restrictions, and penalties of the vehicle leases between EFC (and/or its successors in interest) and Named Plaintiffs and those similarly situated, and the provisions, restrictions, and penalties of the operating agreements between Defendant PTL and the Named Plaintiffs and those similarly situated.

41.     Defendant Element Fleet Management Corp., Defendant ECN Capital Corp., Defendant Element Transportation, LLC, Defendant ECN Financial, LLC and Defendant 19th Capital (hereinafter "Element Defendants")  engaged in a scheme whereby Element Defendants leased tractor trailers to Named Plaintiffs, Class Plaintiffs and Collective Plaintiffs (hereinafter collectively "Plaintiffs"), who in turn subleased said tractor trailers and their driving services to Defendant PTL, permitting Defendant PTL to misclassify Plaintiffs as independent contractors, deprive Plaintiffs of their rights under federal and state law, and pass their business expenses on to Plaintiffs.

42.     As a condition of their employment for Defendant PTL, Defendant PTL required Plaintiffs to enter into Individual Program Lease Agreements ("Lease Agreements") with Element Defendants whereby Plaintiffs were required to lease tractors from Element Defendants.

43.     As a condition of entering into the Lease Agreements with Element Defendants, Element Defendants required Plaintiffs to enter into Independent Contractor Service Agreements ("ICS Agreements") with Defendant PTL, whereby Plaintiffs subleased the tractors and their driving services to Defendant PTL via ICS Agreements.

44.     As a condition of entering into the Lease Agreements with Element Defendants, Element Defendants required Plaintiffs to allow Defendant PTL to deduct from Plaintiffs' compensation every week to pay Plaintiffs' lease payments, or any other costs accrued by Plaintiffs.

45.     The Lease Agreements between Plaintiffs and Element Defendants require Plaintiffs to drive only for Defendant PTL, or default on their Lease Agreements, subjecting Plaintiffs to an acceleration clause whereby Plaintiffs would be required to pay the entire balance of the lease immediately.

46.     The Lease Agreements between Plaintiffs and Element Defendants restrict Plaintiffs' ability to hire workers to drive the vehicles by requiring Plaintiffs to obtain written approval from Element Defendants' to do so.

47.     Through the extensive restrictions placed on Plaintiffs' work by the Lease Agreements and ICS Agreements, Defendant PTL retained such control over Plaintiffs that Defendant PTL was Plaintiffs' employer under the FLSA.

48.     Defendants John Doe 1 through John Doe 10 are presently unknown persons or entities who directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices of Defendants, which resulted in Defendants failing to pay Named Plaintiffs and Collective Plaintiffs proper compensation pursuant to the FLSA.

49.     Defendants John Doe 11 through John Doe 20 are presently unknown persons or entities who had control over processing payroll regarding Plaintiffs.

50.     At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

51.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

52.     Named Plaintiffs bring this action for violations of the FLSA as an individual action and as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of

all persons who performed work as lease operators and who were designated as "independent contractors" by Defendants at any point during the three years preceding the date the instant action was initiated (the members of this putative class are hereinafter collectively referred to as "Collective Plaintiffs").

53.     Named Plaintiffs and Collective Plaintiffs are similarly situated, have substantially similar job duties, have substantially similar pay provisions, and are all subject to Defendants' unlawful policies and practices as described herein.

54.     There are numerous similarly situated current and former employees of Defendant PTL who were compensated in violation of the FLSA and who would benefit from the issuance of a Court Supervised Notice of the instant lawsuit and the opportunity to join the present lawsuit.

55.     Similarly situated employees are known to Defendant PTL, are readily identifiable by Defendant PTL, and can be located through Defendant PTL's records.

56.     Therefore, Named Plaintiffs should be permitted to bring this action as a collective action for and on behalf of themselves and those employees similarly situated, pursuant to the "opt-in" provisions of the FLSA, 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

57.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

58.     Named Plaintiffs bring this action for violations of the TILA, the FFL, and the common law as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who performed work as lease operators or in similar positions, who leased equipment from Element Defendants and who were designated as "independent contractors" by Defendant PTL, and who worked in this capacity at any point during the applicable statute of limitations (the members of this putative class are hereinafter collectively referred to as "Class Plaintiffs").

59.     The class is so numerous that the joinder of all class members is impracticable. Named Plaintiffs do not know the exact size of the class, as such information is in the exclusive control of Defendants; however, on information and belief, the number of potential class members is in the hundreds.

60.     Named Plaintiffs' FFL claims are typical of Class Plaintiffs' claims because Named Plaintiffs and all Class Plaintiffs were subject to similar financial penalties by both Element Defendants and/or Defendant PTL if they attempted to cease working for Defendant PTL.

61.     Named Plaintiffs' TILA claims are typical of the claims of Class Plaintiffs because Named Plaintiffs and all Class Plaintiffs signed substantively similar lease agreements which contained terms and conditions which are unlawful pursuant to the TILA.

62.     Named Plaintiffs' common law claims for unjust enrichment are typical of the claims of Class Plaintiffs because Defendants uniformly utilized illegal liquidated damages provisions to enrich themselves and to obtain labor from Named Plaintiffs and Class Plaintiffs at sub-minimum wage levels.

63.     Named Plaintiffs will fairly and adequately protect the interests of the Class Plaintiffs, because Named Plaintiffs' interests are coincident with and not antagonistic to those of the class.  Named Plaintiffs have retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

64.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action.  The class will be easily identifiable from Defendants' records.

65.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Such treatment will allow all similarly situated individuals to

prosecute their common claims in a single forum simultaneously.  Prosecution of separate actions by individual members of the putative class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendants.  Furthermore, the amount at stake for individual putative class members may not be great enough to enable all of the individual putative class members to maintain separate actions against Defendants.

66.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class.  Among the questions of law and fact that are common to the class are: (1) whether Defendant PTL misclassified Named Plaintiffs and Class Plaintiffs as independent contractors; (2) whether Defendants coerced Named Plaintiffs and Class Plaintiffs to perform work for Defendant PTL through coercive means whereby Named Plaintiffs and Class Plaintiffs were subject to serious financial harm if they attempted to cease working for Defendant PTL; (3) whether Defendant PTL paid less than minimum wage to Named Plaintiffs and Class Plaintiffs; (4) whether Defendant PTL violated TILA with respect to the agreements signed by Named Plaintiffs and Class Plaintiffs; and (5) whether Defendant PTL was unjustly enriched by their relationships with Named Plaintiffs and Class Plaintiffs.

## STATUTORY AND REGULATORY FRAMEWORK

67.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

68.     The federal Truth-in-Leasing regulations, 49 C.F.R. Part 376, were developed by the Interstate Commerce Commission out of grave concern for the plight faced by Lease Drivers and Owner Operators within the trucking industry.  The regulations govern the leases between motor carriers and independent owner-operators of trucks, and were enacted to create transparency in the terms of the equipment and driver services leases to help combat illegal practices by motor

carriers such as skimming from owner-operator compensation.  In furtherance of this goal, and

with the express intent of alleviating the burden placed on owner-operators by the significant

disparity in bargaining power that largely defines their relationship with motor carriers, the Truth-

in-Leasing regulations provide standards of conduct to be incorporated in written leases that

govern the contractual relationship between the owner-operator and motor carrier.

69.    To protect owner-operators from abusive business practices by motor carriers, the

Truth-in-Leasing regulations prescribe certain terms and conditions that govern these

relationships:

a.   "[A]uthorized motor carriers" such as Defendant PTL may perform authorized

transportation in equipment that they do not own *only* if the equipment is

covered by a written lease meeting the requirements set forth in 49 C.F.R. §

376.12.  *See* 49 C.F.R. § 376.11(a).

b.   The conduct and business practices of authorized motor carriers must comply

with the Truth-in-Leasing regulations irrespective of whether their written

lease agreements satisfy the requirements of the regulations. 49 C.F.R. §

376.12.

c.   When a driver leases his or her equipment to an authorized motor carrier, the

compensation for the equipment and services must be "clearly stated on the

face of the lease or in an addendum which is attached to the lease." 49 C.F.R.

§ 376.12(d).

d.   An owner-operator driver may not be required to purchase any products,

equipment or services from the authorized carrier as a condition of entering

into the lease.  49 C.F.R. §376.12(i).

e.  An authorized carrier may make deductions from a driver's compensation for items initially paid for by the carrier *only* if those items are clearly specified in the lease and then *only* if the lease recites how the amount of each deduction is computed.  49 C.F.R. §376.12(h).

f.  The lease must inform the driver that he or she is entitled to copies of those documents which are necessary to determine the validity of the charge.  49 C.F.R. §376.12(h).

g.  Where an owner-operator driver is required to deposit funds with the carrier to cover certain specified costs, such "escrow funds" are monies which belong to the owner-operator drivers.  49 C.F.R. §§376.12(k)(2), (6).

h.  Where escrows are required, the lease must clearly specify how the money can be used and the money can only be used for actual obligations incurred by an individual driver.  49 C.F.R. §§376.12(k)(2), (6).

i.  The carrier must provide periodic accountings to drivers, and, upon termination of the relationship with the carrier, a final accounting reporting all transactions involving the escrow fund. 49 C.F.R. §376.12(k)(3), (4), (6).

j.  The carrier must pay interest to the driver on amounts deposited in escrow on at least a quarterly basis.  49 C.F.R. 376.12(k)(5).

k.  Following termination, all unused escrow funds must be returned to the driver within 45 days from the date of termination.  49 C.F.R. §376.12(k)(6).

l.  By statute, each motor carrier providing transportation of household goods is responsible for all acts or omissions of its agents which relate to the performance of such transportation.  49 U.S.C. § 13907.

m. An authorized carrier is obligated "to ensure that [owner-operator drivers] receive all of the rights and benefits … under the leasing regulations…" regardless of whether the lease is between the authorized carrier and the driver or between the authorized carrier and its agent.  49 C.F.R. § 376.12(m).

70. 49 U.S.C. § 14704(a)(1) and (2) authorizes owner-operator drivers to bring legal actions for injunctive relief and damages to enforce the federal Truth-in-Leasing regulations.  49 U.S.C. § 14704(e) authorizes an award of attorney's fees to owner-operator drivers in such cases.

## FACTUAL BACKGROUND

71. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

72. Named Plaintiff Gale Carter worked for Defendant PTL as a commercial truck driver from in or around October of 2015 to in or around December of 2015.

73. Named Plaintiff Forbes Hays worked for Defendant PTL as a commercial truck driver from in or around March of 2016 to in or around June of 2016.

74. Collective and Class Plaintiffs worked/work for Defendant PTL as commercial truck drivers during the relevant time periods.

75. At all times relevant, Defendant PTL unlawfully designated Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs as independent contractors.

76. At all times relevant, Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs leased trucks from Element Defendants for the purpose of driving freight for Defendant PTL.

### Named Plaintiffs, Collective Plaintiffs and Class Plaintiffs
### Were "Employees" under Federal and State Law

77. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

78. Defendant PTL is a motor carrier as defined by the Motor Carrier Act.

79. Defendant PTL's primary business is to provide transportation of cargo for hire.

80.     Element Defendants are financial services companies that provides vehicle leasing services to Defendant PTL.

81.     Defendant PTL provided to Plaintiffs ICS Agreements, which purport to classify Plaintiffs as independent contractors.

82.     Defendant PTL provided said agreements to Plaintiffs under the guise that Plaintiffs would be participating in Element Defendants' Lease-Purchase Program.

83.     In order to participate in the Lease-Purchase program, Defendant PTL required Plaintiffs to execute Lease Agreements with Element Defendants.

84.     As a condition of entering into the Lease Agreements, Plaintiffs were required to maintain ICS Agreements with and work for Defendant PTL to avoid defaulting on the Lease Agreement.

85.     In the event of default, Element Defendants reserved the right to declare the entire balance of lease payments for the remainder of the lease term and the end term value immediately due and payable by way of an acceleration clause in the Lease Agreement, purportedly subjecting Plaintiffs to more than $100,000 in liability.

86.     Additionally, pursuant to the ICS Agreement, Plaintiffs were informed that if they did not "provide[] services when required by PTL on a continuing basis," for at least 9 months, Plaintiffs would be obligated to pay an "early termination fee" of $5,000.

87.     On information and belief, Defendant PTL and Element Defendants entered into joint agreements to administer the Lease-Purchase Program that Plaintiffs participated in, including the deduction of lease and maintenance payments from Plaintiffs' settlement sheets and the division of such payments between Defendant PTL, Element Defendants and Defendant John Does 1-20.

88.     The ICS Agreements provided to Plaintiffs are similar and/or identical in all material terms.

89.     The Lease Agreements provided to Plaintiffs are similar and/or identical in all material terms.

90.     Defendant PTL controlled and directed Plaintiffs in the performance of their work.

91.     Upon Named Plaintiffs' hiring, Defendant PTL required Named Plaintiffs to attend an orientation, which lasted several days.

92.     During orientation, Defendant PTL required Plaintiffs to take a drug test, take a physical, and watch numerous training videos.

93.     Upon completing orientation, Defendant PTL required Plaintiffs to sign ICS Agreements with Defendant PTL and a Lease Agreement with Element Defendants.

94.     Defendant PTL assigned Plaintiffs a "driver leader/manager," who acted as Plaintiffs' supervisor throughout their employment with Defendant PTL.

95.     Plaintiffs are/were not permitted to use the commercial vehicles leased to them for any carrier other than Defendant PTL.

96.     Plaintiffs are/were not permitted to accept jobs that were assigned to them by any carrier other than Defendant PTL.

97.     During orientation, Defendant PTL instructed Plaintiffs that their employment and lease agreements would be terminated if they accepted work from any carrier other than Defendant PTL.

98.     Throughout their employment, Plaintiffs were not permitted to choose which loads were assigned to them.

99.     Additionally, Plaintiffs were informed that if they failed to provide services as required of them by Defendant PTL, they would be subject to at $5,000 fine.

100.     Plaintiffs had no meaningful opportunity to increase their revenue by recruiting new customers, as they are/were not permitted to recruit new customers as a consequence of being permitted to accept only loads assigned to them by Defendant PTL.

101.     Named Plaintiffs were paid a percentage of received line haul and fuel surcharge revenue on the individual loads assigned to Named Plaintiffs.

102.     Named Plaintiffs were not able to negotiate the rates that were paid to them on loads that were assigned to them by Defendant PTL.

103.     Collective and Class Plaintiffs are/were paid a percentage of received line haul and fuel surcharge revenue and/or a flat per-mile rate based on the individual loads assigned to Collective and Class Plaintiffs.

104.     Collective and Class Plaintiffs were not able to negotiate the rates that were paid to them on loads assigned to them by Defendant PTL.

105.     Plaintiffs can/could do little to increase their profitability other than attempt to work more hours and increase fuel efficiency.

106.     Plaintiffs are/were economically dependent upon Defendant PTL.

107.     At all times, Defendant PTL directed, provided, and supervised the work performed by Plaintiffs on its behalf.

### Failure to Pay Minimum Wage for all Hours Worked
### (Named Plaintiffs and Collective Plaintiffs v. Defendants)

108.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

109.    Following the completion of Defendant PTL's orientation, Plaintiffs were provided a truck by Element Defendants and were paid a percentage of received linehaul and fuel surcharge revenue or a flat per-mile rate.

110.    Following Defendant PTL's orientation, Plaintiffs reported their status to Defendant PTL via the on-board computers in their trucks.

111.    Per 29 C.F.R. § 785.22, the maximum amount of time an employer may dock an employee who is on assignment for more than 24 hours for sleeping and meal periods is 8 hours per day.  The remaining amount of time (16 hours per day) is work time and must be paid.

112.    While over-the-road, Named Plaintiffs and Collective Plaintiffs were confined to the general vicinity of their assigned truck for more than 24 consecutive hours.

113.    Furthermore, Plaintiffs were regularly denied at least five hours of uninterrupted sleep each working day, and accordingly should have been paid for all time logged in the sleeper berth when such was the case.

114.    Per the applicable federal minimum wage, Defendant PTL is typically required to compensate Named Plaintiffs and Collective Plaintiffs at least $116 per day ($7.25 x 16 hours).

115.    Nevertheless, Defendant PTL's pay structure and wage deduction practices and policies regularly caused Named Plaintiffs' wages to drop below the federal minimum wage of $7.25 per hour for all hours worked during a workweek.

116.    For example, on May 11, 2016, Named Plaintiff Hays was issued a statement for work he performed during the workweek of April 20, 2016.  His paystub shows that he completed 3 trips.  Nevertheless, after deductions for Defendant PTL's business expenses, Named Plaintiff Hays finished the workweek in debt to Defendant PTL and was paid nothing.

117.    Similar events happened the following workweek, and despite performing significant work for Defendant PTL during the workweek, Named Plaintiff Hays was paid nothing, and ended the workweek further in debt, after he was issued a paystub on May 18, 2016 that provided no wages.

118.    Upon information and belief, Collective Plaintiffs regularly received less than the federal minimum wage of $7.25 per hour for all hours worked during a workweek.

## Violations of the Truth-in-Leasing Act
### (Named Plaintiffs and Class Plaintiffs v. Defendants)

119.    The foregoing paragraphs are incorporated herein as if set forth in full.

120.    To help facilitate the interstate and intrastate delivery of freight, Defendant PTL enters/entered into substantively similar and/or identical ICS Agreements with Named Plaintiffs and Class Plaintiffs.

121.    These ICS Agreements purport to lease, on behalf of Defendant PTL, heavy duty trucks and driving services from Named Plaintiffs and Class Plaintiffs.

122.    Upon information and belief, the trucks provided by Plaintiffs are either leased from EFC, Element Defendants, or other truck leasing entities that have entered into agreements with Defendant PTL to lease trucks to individuals participating in Defendant PTL's lease purchase program on terms favorable to Defendant PTL.

123.    Under federal law and regulations, "authorized motor carriers" such as Defendant PTL may perform authorized transportation in equipment that they do not own *only* if the equipment is covered by a written lease meeting the requirements set forth in 49 C.F.R. § 376.12. *See* 49 C.F.R. § 376.11(a).

124.    The ICS Agreements do not conform to the requirements set forth in 49 C.F.R. § 376.12.

125.    The ICS Agreements do not conform to 49 C.F.R. § 376.12(a) because the Agreements are not signed between the "owner of the equipment" and Defendant PTL.

126.    By way of example only:

      a.    Named Plaintiff Carter executed the ICS Agreement with Defendant PTL on October 15, 2015.

      b.    Named Plaintiff Carter was not an "owner of the equipment," at the time his Agreement was signed, because Named Plaintiff Carter did not have title to the vehicle, did not have lawful possession of the vehicle, and did not have the right to exclusively use the equipment. *See* 49 C.F.R. § 376.2.

      c.    Instead, on October 20, 2015, after the ICS Agreement with Defendant PTL was signed, Named Plaintiff Carter signed a Lease Agreement with Defendant ECN.

      d.    Said Lease Agreement thus postdated the ICS Agreement in violation of 49 C.F.R. § 376.12(a).

127.    Additionally, the ICS Agreements contain several provisions that violate the Truth-in-Leasing Regulations, as, by way of example only:

      a.    Paragraph 4.04 of the Agreements requires Named Plaintiffs and Class Plaintiffs to indemnify Defendant PTL and hold Named Plaintiffs and Class Plaintiffs responsible for various claims, fees, costs and penalties.  These provisions impermissibly seek to limit Defendant PTL's exclusive possession, control and responsibility concerning the operation of the vehicles, in violation of 49 C.F.R. § 376.12(c)(1).

b.  Paragraph 4.04(a) states that Named Plaintiffs and Class Plaintiffs are responsible for the first $2,500 of any loss relating to any personal injury to a third party or a damage to property resulting from any act or omission of Named Plaintiffs and Class Plaintiffs while under Defendant PTL's dispatch.  Said provision further states that Named Plaintiffs and Class Plaintiffs would be responsible for the entirety of the loss in the event that Named Plaintiffs and Class Plaintiffs failed to immediately report the occurrence or the equipment was operated with an unauthorized person present.  This limitation of Defendant PTL's liability further limits its exclusive possession, control and responsibility concerning the operation of the vehicles, in violation of 49 C.F.R. § 376.12(c)(1).

c.  Paragraph 1.01 of Appendix A of the Agreements authorizes Defendant PTL to reduce Named Plaintiffs' and Class Plaintiffs' compensation by the amounts paid by Defendant PTL to any third parties in relation to movement of loads "without limitation."   Said provision is impermissibly vague as it permits Defendant PTL to charge back against Named Plaintiffs and Class Plaintiffs' compensation an undefined amount in violation of 49 C.F.R. § 376.12(h).

d.  Paragraph 1.03 of Appendix A includes a non-exhaustive list of "other charges" that may be paid to Named Plaintiffs and Class Plaintiffs by Defendant PTL.  Said provision is impermissibly vague as it does not specifically identify the amounts to be paid to Named Plaintiffs and Class Plaintiffs, in violation of 49 C.F.R. § 376.12(d).

e.   Paragraph 4 of Appendix A authorizes Defendant PTL to deduct "any other amount due to PTL" by Named Plaintiffs and Class Plaintiffs pursuant to the Agreement.  Said provision is impermissibly vague as it permits Defendant PTL to charge back against Named Plaintiffs and Class Plaintiffs' compensation an undefined amount in violation of 49 C.F.R. § 376.12(h).

f.   Paragraph 2.05 includes a non-exhaustive list of cost and expenses for which Named Plaintiffs and Class Plaintiffs are responsible.  Said provision does not state with specificity the responsibility of each party with respect to costs incurred via the operation of the equipment, in violation of 49 C.F.R. § 376.12(e), and is impermissibly vague as it permits Defendant PTL to charge back against Named Plaintiffs and Class Plaintiffs' compensation an undefined amount in violation of 49 C.F.R. § 376.12(h).

g.   Paragraph 3.05 states that all settlements are final and Named Plaintiffs and Class Plaintiffs are prohibited from bringing an action against Defendant PTL for additional monies unless Named Plaintiffs and Class Plaintiffs notify Defendant PTL of any discrepancies within 90 days of payment.  Said provision unlawfully sets a time limit for submission by the lessor of required documents, in violation of 49 C.F.R. § 376.12(f).

h.   Paragraph 7.01 authorizes Defendant PTL to set off and deduct from the compensation of Named Plaintiffs and Class Plaintiffs any expenses incurred by Defendant PTL resulting from Named Plaintiffs' and Class Plaintiffs' breach of the Agreement.  Said provision is impermissibly vague as it does not state with specificity all items to be initially paid by Defendant PTL and

subsequently deducted from Named Plaintiffs' and Class Plaintiffs' compensation or the method of computation of same, in violation of 49 C.F.R. § 376.12(h).

128.     Furthermore, the Agreements do not contain certain provisions required by the Truth-in-Leasing Regulations; by way of example only:

a.  The Agreements do not specify Defendant PTL's obligation to give the Named Plaintiffs and Class Plaintiffs, before or at the time of settlement, a copy of the rated freight bill or a computer-generated document containing the same information, in violation of Defendant PTL's obligation to clearly state same in the Agreements as per 49 C.F.R. § 376.12(g)(1).

b.  Appendix A, Section II authorizes Defendant PTL to deduct from Named Plaintiffs' and Class Plaintiffs' compensation any rights, remedies, or claims PTL may have upon Plaintiffs' termination but does not sufficiently specify the items that may be charged back against Plaintiffs' compensation pursuant to this provision, in violation of Defendant PTL's obligation to do so as per 49 C.F.R. § 376.12(h).

c.  Appendix A, Section II authorizes Defendant PTL to deduct unauthorized charges and expenses incurred by Named Plaintiffs and Class Plaintiffs but does not sufficiently specify the items that may be charged back against Plaintiffs' compensation pursuant to this provision or the method of computation of same, in violation of Defendant PTL's obligation to do so as per 49 C.F.R. § 376.12(h).

      d.   Appendix A, Section II authorizes Defendant PTL to deduct "any other amount due" to Defendant PTL by Named Plaintiffs and Class Plaintiffs but does not sufficiently specify the items that may be charged back against Plaintiffs' compensation pursuant to this provision or the method of computation of same, in violation of Defendant PTL's obligation to do so as per 49 C.F.R. § 376.12(h).

129.    The conduct and business practices of authorized motor carriers must also comply with the Truth-in-Leasing regulations irrespective of whether or not their written lease agreements satisfy the requirements of the regulations. *See* 49 C.F.R. § 376.12.

130.    Defendant PTL's conduct does not conform to the requirements set forth in 49 C.F.R. § 376.12, as, by way of example only, Plaintiffs were required to purchase insurance, satellite communication equipment and legal and maintenance services from Defendant PTL, in violation of 49 C.F.R. § 376.12(f).

131.    As a result of Defendant PTL's violations of 49 C.F.R. § 376.12(d) and (h), Named Plaintiffs and Class Plaintiffs were disadvantaged by a lack of transparency in their contractual relationship with Defendant PTL, resulting in damages.

132.    The above violations are mere examples of the written lease violating substantial provisions of the TILA.  Moreover, many of the violations stated herein violate multiple sections of the TILA even where only one specific section is cited.

**Defendants' Violations of the Federal Forced Labor Statute**
**(Named Plaintiffs and Class Plaintiffs v. Defendants)**

133.    The foregoing paragraphs are incorporated herein as if set forth in full.

134.    Defendants force Plaintiffs to labor for them for long periods of time, under terms that employees would never be bound to follow.

135.    Defendants also benefit financially from knowingly participating in the scheme outlined herein.

136.    The Lease Agreements state that, among other things, that if Plaintiffs cease working for Defendant PTL, that Element Defendants may declare the "entire balance of the lease payments for the remainder of the Lease Term and the End of Term value . . . immediately due and payable by acceleration and recover such amounts as liquidated damages…"

137.    The ICS Agreements state that, among other things, if Plaintiffs do not "provide[] services when required by PTL on a continuing basis," for at least 9 months, Plaintiffs would be obligated to pay an "early termination fee" of $5,000.

138.    Even though Plaintiffs are tied to working for Defendant PTL for a long period of time, Defendant PTL has the ability to terminate the contract by failing to provide assignments to Plaintiffs.

139.    Defendant PTL is not contractually obligated to provide assignments to Plaintiffs, and if Plaintiffs do not receive assignments from Defendant PTL (Plaintiffs' sole source of revenue), deductions for lease payments are not made, resulting in a default of the Lease Agreement.

140.    In such a default, all payments remaining on the lease become immediately due (subjecting Plaintiffs to potentially more than $100,000 in debt), and Element Defendants may repossess the truck.  Such repossession further would leave Plaintiffs in default of the ICS Agreement, allowing Defendant PTL to terminate the lease and potentially obtain an additional $5,000 in liquidated damages.

141.     Defendant PTL's ability to put Plaintiffs in default of the Lease Agreement at any time provides Defendants with further means to maintain exclusive control over the lease operators' work, and forces lease operators to accept work at sub-minimum wage levels.

142.     Plaintiffs are unable to terminate the ICS Agreement because doing so would leave them in immediate default of the Lease Agreement, resulting in the same severe financial penalties as if Defendant PTL had terminated the ICS Agreement.

143.     Defendants' scheme is designed to force the continued labor of Plaintiffs by using threats of serious financial harm through explicit threats to impose, enforce, and collect significant debts.

**COUNT I**
**Violations of the Fair Labor Standards Act ("FLSA")**
**(Failure to Pay Minimum Wage)**
**Named Plaintiffs and Collective Plaintiffs v. Defendant PTL**

144.     The foregoing paragraphs are incorporated herein as if set forth in full.

145.     At all times relevant herein, Defendant PTL was and continues to be an "employer" within the meaning of the FLSA.

146.     At all times relevant herein, Named Plaintiffs and Collective Plaintiffs were/are "employees" within the meaning of the FLSA.

147.     The FLSA requires employers, such as Defendant PTL, to minimally compensate employees, such as Named Plaintiff and Collective Plaintiffs, at the federal minimum wage rate for each hour worked.

148.     As a result of Defendant PTL's company-wide practices and policies of not paying its employees at least the federally mandated minimum wage for all hours worked, Named Plaintiffs and Collective Plaintiffs have been harmed.

149.     John Does 1-10 are jointly and individually liable for Defendant PTL's failure to compensate Named Plaintiffs and Collective Plaintiffs at least the statutorily mandated federal minimum wage for all hours worked because they directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices which violated the FLSA.

150.     John Does 11-20 are jointly and individually liable for Defendant PTL's failure to compensate Named Plaintiff and Collective Plaintiffs at least the statutorily mandated federal minimum wage for all hours worked because they had control over processing payroll for Named Plaintiffs and Collective Plaintiffs.

151.     Defendant PTL willfully failed/fail to compensate Named Plaintiffs and Collective Plaintiffs the federal minimum wage.

152.     As a result of Defendant PTL's failure to compensate Named Plaintiffs and Collective Plaintiffs at the federal minimum wage rate, Defendant PTL has violated and continue to violate the FLSA.

**COUNT II**
**Violations of the Truth in Leasing Act**
**Named Plaintiffs and Class Plaintiffs v. Defendant PTL**

153.     The foregoing paragraphs are incorporated herein as if set forth in full.

154.     The ICS Agreements provided to Named Plaintiffs and Class Plaintiffs violate numerous provisions of the Truth in Leasing Act.

155.     As a result of Defendant PTL's conduct, Named Plaintiffs and Class Plaintiffs have suffered damages.

**COUNT III**
**Violations of the Federal Forced Labor Statute**
**Named Plaintiffs and Class Plaintiffs v. Defendants**

156.     The foregoing paragraphs are incorporated herein as if set forth in full.

157.    Defendants obtained the continuous labor of Plaintiffs by using threats of serious harm.

158.    Defendants operated a scheme, plan or pattern intended to cause Plaintiffs to believe that non-performance of labor would result in serious financial and professional harm.

159.    Defendants' conduct violation the federal forced labor statutes, 18 U.S.C. §§ 1589 and 1595.

**COUNT IV**
**Violations of the Common Law**
**Unjust Enrichment**
**Named Plaintiffs and Class Plaintiffs v. Defendants**

160.    The foregoing paragraphs are incorporated herein as if set forth in full.

161.    Defendants were unjustly enriched by enforcing unlawful liquidated damages provision in contracts to enrichen Defendants financially and to obtain labor from Plaintiffs at sub-market rates.

162.    As a result of Defendants' conduct, Named Plaintiffs and Class Plaintiffs have suffered damages.

**WHEREFORE**, Plaintiffs pray that this Court enter an Order providing that:

(1)    Defendants are to be prohibited from continuing to maintain their policies, practices or customs in violation of federal law, state laws and principles of equity;

(2)    Defendants are to compensate, reimburse, and make Named Plaintiffs, Collective and Class Plaintiffs whole for any and all pay and benefits they would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings.  Named Plaintiffs, Collective and Class Plaintiffs should be accorded those benefits illegally withheld;

(3)    Named Plaintiffs, Collective and Class Plaintiffs are to be awarded liquidated, statutory and/or punitive damages as applicable under the laws they are suing;

29

(4)     Named Plaintiffs, Collective, and Class Plaintiffs are to be awarded the costs and

expenses of this action and reasonable legal fees as provided by applicable law;

(5)     Named Plaintiffs, Collective, and Class Plaintiffs are to be awarded equitable relief,

including disgorgement of profits and other relief deemed appropriate by the Court;

(6)     Any and all other equitable relief which this Court deems fit; and

(7)     A trial by jury.


Respectfully Submitted,

*/s Joshua Boyette*
Joshua S. Boyette, Esq.
Travis Martindale-Jarvis, Esq.
Manali Arora, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Highway North, Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417

Date: October 12, 2018

## **DEMAND TO PRESERVE EVIDENCE**

All Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Named Plaintiffs', Collective Plaintiffs, and Class Plaintiffs' employment and/or contractual relationship with Defendant, to Named Plaintiffs', Collective Plaintiffs, and Class Plaintiffs' cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, Defendant's marketing materials (including its website), orientation materials, complaints made by any driver regarding pay, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, Qualcomm messages, driver logs, spreadsheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

Respectfully Submitted,

*/s Joshua Boyette*
Joshua S. Boyette, Esq.
Travis Martindale-Jarvis, Esq.
Manali Arora, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Highway North, Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417

Date: October 12, 2018

31