UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:18-CV-041-TBR

GALE CARTER, *et al.*                                              PLAINTIFFS

v.

PASCHALL TRUCK LINES, INC., *et al.*                               DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendants ECN Capital Corp. ("ECN-Cap") and ECN Financial, LLC's ("ECN-Fin") Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). [R. 149.] Plaintiffs Gale Carter and Forbes Hayes ("Plaintiffs") responded, [R. 159], and ECN-Cap and ECN-Fin (together "ECN Defendants") replied, [R. 160]. Fully briefed, this matter is ripe for adjudication. For the reasons stated herein, ECN Defendants' Motion to Dismiss, [R. 149], is **GRANTED**.

**BACKGROUND**

This case arises out of Gale Carter and Forbes Hayes's previous employment as truck drivers for Paschall Truck Lines, Inc. ("PTL"). Further detail about this case can be found in this Court's previous Memorandum Opinion and Order concerning Element Transportation, LLC's Motion for Summary Judgment. [R. 136 at 1-3.] In short, this motion revolves around Paschall Truck Lines, Inc.'s ("PTL") relationship with Element Financial Corp. ("EFC"), ECN Financial, LLC ("ECN-Fin"), ECN Capital ("ECN-Cap"), and Quality Equipment Leasing, LLC ("Quality").

As of March 31, 2014, EFC, a Delaware corporation, entered into a Servicing Agreement under which Plaintiffs allege that "EFC authorized Quality Equipment Leasing[1] to act as its agent in procuring individual drivers and fleets to lease its trucks." [R. 159 at 6 (citing [R. 159-2 (3rd Amended Service Agreement).] Plaintiffs claim that, on or around March 12, 2014, "Defendant PTL entered into a Vehicle Lease Program Agreement with Quality in order to facilitate the operation of its lease-operator program." [*Id*. at 9.][2] Among other things, Plaintiffs allege that, under the Vehicle Lease Program Agreement, Quality agreed to provide vehicle leasing and financing services to drivers in PTL's lease-operator program. [*Id*.] Plaintiffs summarize the details of the agreement as follows:

> Quality agreed to assist PTL's personnel with the negotiation of leases and lease documentation, and the closing of lease transactions. *Id.* Under the agreement, Quality would enter into vehicle lease agreements with drivers while PTL would simultaneously enter into Independent Contractor Agreements with said drivers. *Id.* at 2. PTL was required to, on a weekly basis, directly remit to Quality all lease payments made by drivers. *Id.* PTL was specifically required to "promote [Quality] as a recognized and ***credible*** source of lease financing" for the individual drivers and to give Quality a "right of first refusal" for leasing vehicles to PTL's drivers.

[*Id*. (emphasis in original).]

The working relationship between PTL and Quality is exemplified through the experience of Plaintiffs Gale Carter, Forbes Hays, and Lakendal Harris. All three aver that after they received training from PTL at PTL's headquarters in Murray, KY, they were instructed to travel to Quality's facility in Indianapolis, Indiana to lease a truck. [*See* R. 159 at 15 (citing Hays Depo); R. 159-17 at 65:17-24, 111:15-112:16 (Hays Depo); R. 159-18 at 51:9-11, 84:9-17 (Carter Depo); R.159-19 at 50:21-23, 84:3-6 (Harris Depo).] According to Plaintiffs, Carter,

---

[1] According to the agreement, Quality is also a Delaware corporation.
[2] Although Plaintiffs cite to "Vehicle Lease Agreement, *attached* to Arora Decl. as 1-A," neither the Court nor the ECN Defendants were able to locate such an attachment. [*See* R. 160 at 4 n.2.] However, this document was previously provided as an exhibit under seal at R. 100-1.

2

Hays, and Harris entered into lease agreements with EFC, which were all serviced by Quality. [R. 159 at 9 (citing plaintiffs' lease agreements R. 159-4, R. 159-5, R.159-6; R. 159-21; R. 159-22; and R. 159-2).]

In order to explain ECN-Fin and ECN-Cap's relation to EFC, the Court will quote its previous explanation of this complicated corporate lineage from its previous Memorandum Opinion and Order:

> On June 30, 2016, EFC became Element Financial, LLC. [R. 110-11 at 3 (Certificate of Conversion).] Element Financial, LLC continued to operate the commercial and vendor leasing business it had previously operated as EFC. [R. 110-2 at 4; R. 98-1 at 6.] On September 19, 2016, a transaction occurred between Element Financial, LLC and Element Transportation, LLC, another subsidiary of Element Financial, LLC's parent company—Element Financial Corporation. [R. 110-19 at 67:17-21 (Bradley Rowse Deposition); R. 110-2 at 4; R. 98-1 at 7.] . . . Element Financial, LLC transferred the trucks and the rights to receive lease payments on those trucks to Element Transportation . . . [R. 110-2 at 4 (citing R. 110-14).] . . . .
> On October 3, 2016, Element Financial Corporation split to form ECN Capital Corp. and Element Fleet Management Corporation. [R. 110-19 at 49:12-18; R. 98-1 at 7.] As a part of the split, Element Financial, LLC became ECN Financial, LLC (ECN). [R. 110-19 at 49:12-18; R. 98-1 at 7; R. 110-2 at 5.] Plaintiffs states that, with that name change, ECN Financial, LLC was divested from Element Fleet Management Corporation and became a subsidiary of ECN Capital Corp. [R. 110-2 at 5.]

[R. 136 at 2-3.]

On October 11, 2017, Plaintiffs filed their original complaint in federal district court. [R. 1.] On March 1, 2019, Defendants ECN-Cap and ECN-Fin (together "ECN Defendants") filed a Motion to Dismiss for lack of personal jurisdiction, which is currently before the Court. [R. 149.]

## LEGAL STANDARD

Under Rule 12(b)(2), the burden is on the Plaintiffs to show that personal jurisdiction exists as to each defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). "[I]n

the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* When "[p]resented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Id.* (citing *Serras v. First Tennessee Bank Nat. Ass'n.*, 875 F.2d 1212, 1214 (6th Cir. 1989)). When an evidentiary hearing has not been held, as in this case, a plaintiff's burden is "relatively slight" and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 548–49 (6th Cir. 2016) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)). "[T]he pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Air Prods.*, 503 F.3d at 549 (quoting *Theunissen*, 935 F.2d at 1459).

"A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant only to the extent that a court of the forum state could do so." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997). Under Kentucky law, the Court first considers Kentucky's long-arm statute to determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). If the statutory requirements are met, the Court must then apply the constitutional due process test "to determine

if exercising personal jurisdiction over the non-resident defendant offends [its] federal due process rights." *Id.*[3]

## DISCUSSION

This matter is ripe, and the Court will decide the motion upon the record before it, including pleadings and affidavits, and require Plaintiffs to make a prima facie showing that personal jurisdiction exists. In their Motion to Dismiss pursuant to Rule 12(b)(2), ECN Defendants argue that Plaintiffs have failed to make this prima facie showing both under the Kentucky long-arm statute and the federal due process analysis. As outlined above, the Court will first address the Kentucky long-arm statute followed by the federal due process analysis.

### A. Kentucky Long-Arm Statute

ECN Defendants have filed a properly supported motion to dismiss pursuant to Rule 12(b)(2). In particular, ECN Defendants contend that Plaintiffs have failed to establish jurisdiction under both K.R.S. § 454.210(2)(a)(1) and § 454.210(2)(a)(2). [R. 149-1 at 7.] As Plaintiffs only dispute ECN Defendants' argument concerning § 454.210(2)(a)(1), [R. 159 at 13], the Court will only address the matter as it pertains to that section of the Kentucky long-arm statute. Section 454.210(2)(a)(1) provides:

> (2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
>
> 1. Transacting any business in this Commonwealth . . . .

Ky. Rev. Stat. Ann. § 454.210(2)(a)(1).

To assert personal jurisdiction over ECN Defendants under the Kentucky long-arm statute, Plaintiffs must show: (1) ECN Defendants' conduct falls under § 454.210(2)(a)(1) and

---

[3] *Caesars* clarified that "Kentucky's long-arm statute is narrower in scope than the federal due process clause." *Cox v. Koninklijke Philips, N.V.*, 647 F. App'x 625, 628 (6th Cir. 2016) (citing *Caesars*, 336 S.W.3d at 55–57).

(2) Plaintiffs' claim "arises from" that statutory provision. *See Caesars*, 336 S.W.3d at 59. "A claim 'arises from' certain conduct when there is a 'reasonable and direct nexus' between the conduct causing injury and the defendant's activities in the state." *Churchill Downs, Inc. v. NLR Entm't, LLC*, No. 3:14-CV-166-H, 2014 WL 2200674, at *5 (W.D. Ky. May 27, 2014) (quoting *Caesars*, 336 S.W.3d at 59).

Here, ECN Defendants argue that Plaintiffs fail to make a prima facie showing that ECN Defendants transacted any business in Kentucky. [R. 149-1 at 7.] In particular, ECN Defendants focus on the lease agreements between the truck drivers and EFC. [R. 149 -1 at 8.] In response, Plaintiffs assert that "Quality, acting as an agent for ECN-Fin (then operating under the name of Element Financial Corp.) entered into a partnership with PTL to lease vehicles to drivers working in PTL's owner-operator program." [R. 159 at 14.][4]

In support of their argument, Plaintiffs cite to the Eastern District of Kentucky's explanation in *Hall v. Rag-O-Rama, LLC* of several district courts' interpretations of § 454.210(2)(a)(1). 359 F. Supp. 3d 499, 505 (E.D. Ky. 2019). In particular, Plaintiffs focus on one interpretation mentioned in *Hall* involving two Kentucky districts' reliance on the Sixth Circuit's interpretation of Michigan's long-arm statute, which also contains the phrase "transacting any business." [R. 159 at 13 (citing *Hall*, 359 F. Supp. 3d at 505).] The Eastern District of Kentucky described that interpretation as follows: "The Sixth Circuit has held that the 'use of the word "any" . . . establishes that *even the slightest transaction is sufficient to bring a corporation within [the forum's] long-arm jurisdiction.*'" *Hall*, 359 F. Supp. 3d at 506 (emphasis in original). However, the "transactions" described both in the Sixth Circuit case quoted in *Hall* and the accompanying

---

[4] In its Reply, ECN Defendants dispute whether ECN-Fin is the same entity as EFC. [R. 160 at 4; 5-6.] Being mindful of the fact that the Court should not weigh the controverting assertions of the party seeking dismissal, the Court finds that even if it considers EFC to be the predecessor to ECN-Fin, the outcome of its analysis would remain the same.

6

district court cases cited by the court all involve the defendant reaching out to the plaintiff in their forum state by travelling to that state or calling, texting, or emailing the plaintiff in that state. *See Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (finding that the agent of the defendant travelling to the forum state to recruit the plaintiff satisfied the "slightest transaction" test); *Eat More Wings, LLC v. Home Mkt. Foods, Inc.*, 282 F. Supp. 3d 965, 970 (E.D. Ky. 2017) (finding that the defendant transacted business in Kentucky when he "sent emails to [plaintiff], knowing that he was in Kentucky, asking him to send samples and instructions for his products, which [plaintiff] fulfilled from Kentucky"); *Power Investments, LLC v. Becker*, No. CV 5:18-466-DCR, 2018 WL 4390722, at *3 (E.D. Ky. Sept. 14, 2018) (finding the defendant satisfied the "slightest transaction" test by calling, texting, and sending e-mails to a Kentucky resident and asking him to wire money, which he did from Kentucky).

Even under Plaintiffs' proffered interpretation of "transacting any business," Plaintiffs still failed to make the required prima facie showing. Unlike the cases citing this interpretation of § 454.210(2)(a)(1), Plaintiffs have not alleged that Quality or ECN-Fin reached out to the Plaintiffs in Kentucky in any way, including travelling to Kentucky or calling, texting, or emailing Plaintiffs in Kentucky.

The Court finds that this district's holding on a similar matter in *Churchill Downs, Inc. v. NLR Entm't, LLC* sheds further light on this issue. *Churchill Downs, Inc.*, No. 3:14-CV-166-H, 2014 WL 2200674, at *5 (W.D. Ky. May 27, 2014) (Heyburn, J.). In *Churchill Downs*, the court found that the defendants' actions did not amount to "transacting business" in Kentucky when the defendants did not make any contacts with the state of Kentucky beyond entering an agreement with a Kentucky plaintiff. *Churchill Downs, Inc.*, No. 3:14-CV-166-H, 2014 WL

2200674, at *6-7. In support, the court quoted a previous holding from the Western District of Kentucky that stated: "[T]he key inquiry in personal jurisdiction cases concerns the activities of the *defendant,* not the plaintiff." *Id*. (quoting *Spectrum Scan, Inc. v. AGM CA,* 3:07 CV 72 H, 2007 WL 2258860, at *3 (W.D. Ky. Aug. 2, 2007) (emphasis in original), *adhered to on denial of reconsideration sub nom. Spectrum Scan, LLC v. AGM California,* 519 F. Supp. 2d 655 (W.D. Ky. 2007). Thus, the Court concluded that the plaintiff could not "predicate personal jurisdiction on [its] conduct instead of [Defendants'] contacts with Kentucky." *Id*. at *7 (quoting *Thompson v. Koko,* 2012 WL 374054, at *2 (W.D. Ky. Feb. 3, 2012).

Similar to the plaintiff in *Churchill Downs*, Plaintiffs do not assert any contacts that Quality or ECN-Fin may have had with Kentucky beyond the Vehicle Lease Program Agreement. As stated above, Plaintiffs have not alleged that Quality or ECN-Fin reached out to the Plaintiffs in Kentucky in any way, including travelling to Kentucky or calling, texting, or emailing Plaintiffs in Kentucky. Thus, the Court finds that neither Quality nor ECN-Fin's actions amount to "transacting business" in Kentucky, and Plaintiffs' claim under § 454.210(2)(a)(1) cannot proceed.[5] However, even if Plaintiffs' claim were to succeed, the Court finds that Plaintiffs' claim would ultimately fail under the federal due process analysis.

### B. Constitutional Due Process Test

ECN Defendants argue that the Due Process Clause does not permit the exercise of jurisdiction over the ECN Defendants. [R. 149-1 at 5.] Plaintiffs respond that the interactions between ECN-Fin and PTL are sufficient to satisfy due process considerations. [R. 159 at 17.]

The Court's exercise of jurisdiction comports with due process when the defendant has sufficient minimal contacts such that "traditional notions of fair play and substantial justice are

---

[5] The Court need not consider whether Plaintiffs' claims "arise from" ECN Defendants' contacts. *Churchill Downs, Inc*., No. 3:14-CV-166-H, 2014 WL 2200674, at *7.

not offended." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The frequency of contacts is not determinative; the defendant's conduct must be such that he or she "should reasonably anticipate being hauled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

"The minimum contacts requirement may be satisfied by a showing of either general jurisdiction or specific jurisdiction." *Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir .2006); *Fairbrother v. American Monument Found., LLC*, 340 F. Supp. 2d 1147, 1153 (D. Colo. 2004). General jurisdiction over a nonresident requires a showing of continuous and systematic contacts with the forum state. *Aristech Chemical Intern. Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624 (6th Cir. 1998); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). In order for a nonresident to be subject to the jurisdiction of the court under specific jurisdiction, i.e., for specific claims asserted, those claims must arise out of or be related to activities that were significant and purposely directed by the defendant at a resident of the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). The following criteria have historically been employed to determine if specific personal jurisdiction is appropriate:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528, 542–43 (6th Cir. 1993) (*quoting Theunissen*, 935 F.2d at 1460). "[E]ach criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1303 (6th Cir. 1989).

Although ECN Defendants contend that the Court has neither general jurisdiction nor specific jurisdiction, Plaintiffs only dispute whether the Court has specific jurisdiction over ECN Defendants. [R. 159 at 16.] Thus, the Court will focus its analysis on whether the exercise of specific jurisdiction over ECN Defendants is proper.

Under the first specific jurisdiction criterion, ECN Defendants contend that they did not purposefully avail themselves of the privilege of acting in or causing consequence in Kentucky because they are not parties to any agreements with Plaintiffs. [R. 149-1 at 10.] Rather, Plaintiffs contracted with EFC, a Pennsylvania resident, through Individual Program Lease Agreements. [*Id.*] Moreover, ECN Defendants contend that Plaintiffs do not allege in the Complaint that ECN Defendants derived any benefits or enforced any obligations pursuant to these agreements by availing themselves of the privileges of Kentucky law. [*Id.* at 11.][6]

In Plaintiffs' brief response to this argument,[7] they first assert that "ECN-Fin, while acting as Element Financial Corp. worked in partnership with PTL in Kentucky, to create a long-term leasing partnership agreement," which constitutes purposeful availment in Kentucky. [R. 159 at 13.] The Court assumes that Plaintiffs are referring to the Vehicle Lease Program

---

[6] Also, ECN Defendants mention that Plaintiffs alleged in their complaint that "on information and belief" ECN Defendants entered into "joint agreements with PTL to administer the 'Lease-Purchase Program' in which Plaintiffs participated and were purportedly harmed by." [*Id.*] ECN Defendants contend that, assuming such agreements exist, there is still "no allegation that the performance of such agreements connects the ECN defendants to Kentucky." [*Id.*]

[7] It is possible that Plaintiffs' argument was brief due to what appears to be Plaintiffs' outdate understanding of the Kentucky long-arm statute's alignment with due process requirements. [R. 159 at 17 ("[A]ny exercise of jurisdiction in accordance with the Kentucky long-arm statute would comport with the requirements of the due process clause as a matter of simple logic."). Indeed, some long-arm statutes run co-extensive with due process. *E.g., Southern Mach. Co. v. Mohasco Indust., Inc.*, 401 F.2d 374, 377 (6th Cir. 1968). That used to be the case in the Commonwealth. However, the Kentucky Supreme Court reversed course in *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011). Looking to the plain language of KRS 454.210, the court recognized that "the long-arm statute discloses no language indicating that its provisions should, *per se*, be construed as coextensive with the limits of federal due process." *Id.* at 56. Following *Caesars* and its progeny, then, courts applying Kentucky law must engage in a two-part inquiry. First, the Court must "determine if the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." *Id.* at 57. Second, the Court must "determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." *Id.*

Agreement between Quality and PTL as they specifically cite to that agreement earlier in their motion when listing "key events" that exemplify their alleged business activities within Kentucky. [*See* R. 159 at 6.] Furthermore, Plaintiffs mention that this transaction "lasted from early 2014 through EFC's sale of assets to Element Transportation," and that ECN-Fin "maintained and currently maintains a registered agent in Kentucky." [*Id.*] After considering Plaintiffs' assertions, the Court finds that they have failed to meet the purposeful availment criterion required to establish personal jurisdiction.

The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.'" *Burger King,* 471 U.S. at 475 (internal citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (citation omitted and emphasis in original). When a defendant "has created 'continuing obligations' between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Id.* at 476 (internal citation omitted). "In addition, physical presence in a forum state is not required, and the Supreme Court has 'consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2007) (citing *Burger King.,* 471 U.S. at 476).

Regarding contracts that cross state lines, the Supreme Court has stated that parties who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions for the consequences of their activities." *Burger King,* 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647,

11

(1950)). "Although entering into a contract with an out-of-state party *alone* does not automatically establish sufficient minimum contacts, the presence of certain factors in addition to the contract will be found to constitute purposeful availment. Factors to consider are 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Air Prods.*, 503 F.3d at 551 (citing *Burger King,* 471 U.S. at 478-79) (internal citation omitted).

The Court finds the Sixth Circuit's holding in *Air Products & Controls, Inc. v. Safetech International, Inc.* to be particularly informative in this matter. In *Air Products*, the Sixth Circuit held that a Kansas corporation, Safetech, and its president, Davenport, purposefully availed themselves of the privilege of acting in the forum state of Michigan when they opened a credit account with Air Products and purchased goods from Air Products's headquarters in Michigan over a span of nine years. *Id*. Amongst several reasons for finding purposeful availment, the Court first explained that the parties had engaged in a "continuous business relationship" in which the defendants "sent purchase orders to Michigan, some or all of which presumably formed the basis of contracts on which the parties ultimately based their breach of contract claims in the initial Kansas litigation." *Id*. The Court found that this was not a "one-time transaction" but an instance where the defendants "reached out beyond Kansas' borders to conduct business with a company whose principal place of business it knew to be in Michigan." *Id*.

Additionally, the Court in *Air Products* explained that the fact that Davenport "contacted Air Products in Michigan on approximately several hundred occasions through telephone, email, facsimile, and ordinary mail correspondence for purposes of discussing and placing orders for goods" demonstrated purposeful availment as these contacts "were initiated by the defendants

12

themselves and, therefore, are not simply the result of unilateral activity on the part of Air Products." *Id.* at 552. Furthermore, these contacts furthered the business relationship as they were made for the purpose of placing purchase orders. *Id.*

In contrast to *Air Products*, the only factors Plaintiffs mention beyond the Vehicle Lease Program Agreement are that the "transaction" lasted from 2014 until 2016 and that ECF-Fin has a registered agent in Kentucky. [R. 159 at 16-17.] What is missing from Plaintiffs Complaint and motions is any allegation that ECN-Fin, or Quality, "'reach[ed] out beyond one state and create[d] continuing relationships and obligations with citizens of another state' . . . ." *Burger King,* 471 U.S. at 473, (quoting *Travelers Health Ass'n v. Virginia,* 339 U.S. at 647). Although the agreement between PTL and Quality was not necessarily a "one-time transaction," Plaintiffs do not allege Element reached out beyond the Indiana state border to conduct business with PTL or that there were any communications via telephone, email, facsimile, or ordinary mail correspondence for purposes of discussing truck leases. Moreover, Plaintiffs have not provided any information regarding prior negotiations and contemplated future consequences of the agreement or any details concerning the parties' actual course of dealing. Put simply, Plaintiffs have not shown that a "substantial connection" with Kentucky was created from actions "by the defendant[s] [themselves]." *Burger King,* 471 U.S. at 475.

As for Plaintiffs assertion regarding the length of the transaction, the Sixth Circuit has stated that "the parties' actions 'in the negotiation and performance of the . . . agreement' are more important factors to consider than the duration of the contract in determining whether this case 'should be subject to suit in [the state at issue].'" *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) (quoting *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co. Ltd.*, 91 F.3d 790, 796 (6th Cir. 1996)). Once again, besides the fact that PTL sent drivers to Quality

13

Indianapolis to lease trucks, Plaintiffs provide no detail concerning the negotiation of the agreement or actions taken by either party in furtherance of the performance of the agreement.

Regarding ECN-Fin's registered agent in Kentucky, this district previously held that a corporation having a registered agent in Kentucky did not establish a prima facie showing of jurisdiction. *Stuart v. Lowe's Home Centers, LLC*, No. 4:17-cv-077-JHM, 2017 WL 4875281, at *2 (W.D. Ky Oct. 27, 2017) *aff'd*, 737 F. App'x 278 (6th Cir. 2018) (McKinley, J.). In *Stuart*, the plaintiff alleged in his complaint that the defendant was subject to personal jurisdiction due to the fact that the defendant was registered to do business in Kentucky with a registered agent. *Stuart*, No. 4:17-CV-00077-JHM, 2017 WL 4875281, at *2.[8] The court held that "this does not make a prima facie showing of jurisdiction as it neither invokes any of the enumerated activities from the Kentucky long-arm statute nor proves that the claim arose from Lowe's Home Improvements, LLC's actions." *Stuart*, No. 4:17-CV-00077-JHM, 2017 WL 4875281, at *2. Thus, the Court finds that without any further evidence regarding ECN-Fin's actions within Kentucky, the fact that ECN-Fin has a registered agent in Kentucky does not tip the scales in favor of purposeful availment.

Furthermore, the Court notes that the choice of law provision of the Vehicle Lease Program Agreement states that the agreement is to be interpreted under the laws of Indiana, not Kentucky. [R. 100-1 at 7.] The Supreme Court "stated that a choice of law provision, though alone insufficient to establish jurisdiction, can 'reinforce [a] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.'" *Calphalon Corp.*, 228 F.3d at 723 (quoting *Burger King*, 471 U.S. at 482). Logically, it would seem that a choice of law

---

[8] In fact, it appears as though it might be the same agent as the one listed for ECN-Fin. [*See* R. 159-13.] Both are named Corporation Service Company and reside at 421 West Main Street, Frankfort, Kentucky. [*Id.*]

provision favoring Indiana would weigh against "the reasonable foreseeability of possible litigation" in Kentucky.

Finally, the Court notes that other courts within the Sixth Circuit have come to a similar conclusion as this Court in the matter at hand. *See Shehan v. Turner Construction Company*, No. CV 18-14-DLB-CJS, 2019 WL 1320046, at *9 (E.D. Ky. Mar. 22, 2019); *McDermott v. Johnston Law Office, P.C.*, No. 1:15-CV-00095-GNS, 2016 WL 1090624, at *3 (W.D. Ky. Mar. 18, 2016) (Stivers, J.) (holding that the court did not have personal jurisdiction in Kentucky over the defendants when a contract existed between the parties but plaintiff failed to claim that defendants' communications to plaintiff "were made to further their business and to create continuous and substantial consequences in Kentucky"). For example, in *Shehan v. Turner Construction Company*, the Eastern District of Kentucky held that the plaintiff, Shehan, failed to provide specific facts regarding communications between himself and the defendant, the Museum of Natural History ("Museum"), that would allow the Museum to reasonably anticipate being haled into court in Kentucky. *Shehan*, No. CV 18-14-DLB-CJS, 2019 WL 1320046, at *9. In that case, Shehan claimed he satisfied the purposeful availment requirement by making a substantial contract with the Museum, a resident of New York. *Id*. However, the court held that Shehan failed to "describe any communications which may have been initiated by the Museum." *Id*. Furthermore, despite Shehan's claim that he met with representatives of the Museum to discuss the project at issue, the court found that Shehan failed to provide specific facts concerning this contact that would demonstrate purposeful availment. *Id*. Like Shehan, Plaintiffs have failed to provide specific facts regarding communications between PTL and Quality that would demonstrate contacts between the parties and, therefore, allow ECN-Fin to reasonably anticipate being haled into court in Kentucky.

15

In sum, after viewing the pleadings and affidavits in a light most favorable to Plaintiffs, the Court finds that ECN-Fin did not purposefully avail itself of the privilege of acting in or causing consequence in Kentucky. Because Plaintiffs failed to make a prima facie showing that ECN-Fin purposefully availed itself of this forum, the Court "need not dwell on" the final two prongs of the due process analysis. *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1303 (6th Cir. 1989).

### C. ECN Capital Corp.

Plaintiffs argue that "ECN-Fin is a mere alter-ego to ECN-Cap, and accordingly, the transactions which warrant the exercise of jurisdiction over ECN-Fin apply with equal force to the exercise of jurisdiction over ECN-Cap." [R. 159 at 2.] As the Court has found that Plaintiffs failed to make a prima facie showing of personal jurisdiction over ECN-Fin, the Court holds that personal jurisdiction cannot be exercised over ECN-Cap either.

### CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**: ECN Defendants Motion to Dismiss, [R. 149-1], is **GRANTED without prejudice**.

**IT IS SO ORDERED**.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

May 29, 2019

cc: Counsel of Record