IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| GALE CARTER and FORBES HAYES<br><br>Plaintiff,<br><br>v.<br><br>PASCAL TRUCK LINES, INC., *et al.*<br><br>Defendant. | No. 18-0041 |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION
FOR RULE 23(B)(3) CLASS CERTIFICATION**

**I.      INTRODUCTION**

Plaintiffs work for Defendants as over-the-road truck drivers in Defendant's Lease Driver Program, designated by Defendant PTL as independent contractors responsible for paying for all the business expenses associated with operating a truck prior to receiving pay for their labor, if any. Plaintiffs have brought—and the Court has conditionally certified—a claim for violations of the Fair Labor Standards Act ("FLSA")—which seeks a ruling that Defendants misclassified Plaintiffs as independent contractors rather than employees, and failed to pay Plaintiffs the minimum wage for all hours worked. However, Plaintiffs have also brought three other causes of action—that the uniform service agreements Defendants required Plaintiffs and other Lease Drivers to sign violated the federal Truth in Leasing Act ("TILA") regulations; that Defendants intentionally procured the labor of the Plaintiffs and the other Lease Drivers through the threat of serious financial harm in violation of the federal Forced Labor Statute ("FFLS"); and that Defendants were unjustly enriched under Kentucky common law by virtue of receiving the benefit of Plaintiffs' labor pursuant to unlawful contracts ("unjust enrichment"). Plaintiffs now seek the Court certify three sub-classes under Fed. R. Civ. P. 23(b)(3) for these respective claims.

1

The Court must conduct a rigorous analysis of the facts and legal theories in determining whether class certification is appropriate under Fed. R. Civ. P. 23(b)(3), and, where necessary, may even make factual rulings which overlap with the merits. However, where a merits determination is not necessary to determining that the requirements for class certification are met, the Court should refrain from such merits' determinations. Here, the Court need not make any merits determinations to determine that class treatment of these claims is appropriate. With respect to Plaintiffs' TILA claims, these claims are based solely on the essentially uniform contracts Defendants required the Lease Drivers sign, and the common policies and procedures Defendants implemented either in conformity with or in violation of those contracts. Thus, while Defendant has denied that the contracts violate the TILA, neither side has argued that resolution of Plaintiffs' TILA claims will turn on individualized issues or cannot be decided by common determinations of law and fact.

With respect to Plaintiffs' FFLS claims, these claims are also based on Defendants' uniformly applied policies which threatened serious financial harm to Lease Drivers who ceased working for Defendants—namely, the early termination fee which prevented Plaintiffs from leaving PTL for up to nine months (the tenure necessary to suspend the fee differed during the class period), in combination with the other debts all Lease Drivers accrued as a result of PTL deducting the cost of truck lease payments, fuel, insurance, and other operating expenses from the "pay" the Lease Drivers were ostensibly supposed to receive. By statute, the FFLS focuses not on individual class members' subjective experiences of such threats, but rather whether such threats are enough to compel a reasonable person to continue to provide labor to avoid realizing the threatened outcome. Because the FFLS turns on this objective standard, several federal courts—including the Tenth Circuit—have found that FFLS claims are suitable for class action treatment.

Finally, Plaintiffs' unjust enrichment claims are likewise suitable for Rule 23(b)(3) certification because they too will turn on common and predominating questions of fact and law—namely, whether the contracts were unlawful, and, if so, what is the proper measure of valuing the benefit received by PTL for which Plaintiff were not compensated.

Defendant has indicated that there are hundreds of potential class members, making joinder impracticable. While Defendant can advance defenses to each of these claims on the merits, what Defendant cannot do is show that individualized determinations are necessary to resolve these claims, or that a single class adjudication—whether resulting in a verdict for the class or for Defendant—is not the most efficient and superior way of addressing and resolving these claims. Accordingly, the Court should certify this matter as a class action pursuant to Fed. R. Civ. P. 23(b)(3).[1]

## II. STATEMENT OF FACTS

### PTL'S LEASE DRIVER PROGRAM

1. PTL is a federally-authorized, interstate motor carrier that employs drivers it classifies as both employees ("Company Drivers") and independent contractors ("Lease Drivers"). PTL's Responses to Plaintiffs' First Set of Requests for Admission, ECF Doc. No. 101-2, PageID# 1509, at ¶ 28.

2. PTL operates more than 1,100 trucks at present. These trucks include trucks driven by its Company Drivers and Lease Drivers. *See* Federal Motor Carrier Safety Administration

---

[1] On August 12, 2019, Defendant moved for summary judgment as to Plaintiff Hays' and Plaintiff Carter's TILA and FFLS claims. *See* ECF Doc. No. 177. Having moved for summary judgment prior to a class being certified and notified, if the Court grants such a ruling, it will not bind absent class members. *See, e.g., Schwarzschild v. Tse,* 69 F.3d 293, 297 (9th Cir. 1995). Should the Court grant Defendants' motion, Plaintiff seek leave to identify alternative named plaintiffs from among the opt-in plaintiffs who have already filed consent forms to join this lawsuit with the Court and with whom Plaintiffs' counsel are in contact.

3

Website Webpage "Paschall Truck Lines Company Snapshot", ECF Doc. No. 101-2, PageID# 1675.

3. PTL contracts with Quality to lease vehicles to PTL's Lease Drivers. Vehicle Lease Program Agreement, ECF Doc. No. 100-1. The contract states that PTL and Quality "agree[] in principle to cooperate to offer a program to provide for the lease of Vehicles to [Lease Drivers]." Vehicle Lease Program Agreement, ECF Doc. No. 100-1, at p. 1.

4. Per the agreement between PTL and Quality, Quality facilitates lease financing for tractors on behalf of PTL's Lease Drivers. *Id.* The tractors are leased by Lease Drivers "to be operated as part of the [PTL] fleet." *Id.*

5. Per the agreement between PTL and Quality, PTL is required to "assist Quality in the planning, structuring and implementation of the lease of the vehicles." *Id.* p. 2.

6. Per the agreement between PTL and Quality, PTL "agrees to promote [Quality] as a recognized and credible source of lease financing for [PTL's Lease Drivers], and to offer [Quality] the right to provide lease financing to [Lease Drivers] on a transaction by transaction basis. *Id.*

7. Per the agreement between PTL and Quality, PTL agrees that Quality has a "right of first refusal" for any individuals who wish to become a Lease Driver of PTL. *Id.*

8. Individuals who lease vehicles through Quality to drive for PTL are required to sign a Vehicle Lease Agreement ("Lease Agreement"), whereby they lease a vehicle to operate a truck for PTL. The Lease Agreement states that PTL will withhold compensation otherwise due to the driver to pay Quality for the lease payments. *Id.*; *See also* Gale Carter's Vehicle Lease Agreement, ECF Doc. No. 101-2, at PageID# 1437-1452; Forbes Hays' Vehicle Lease Agreement, ECF Doc. No. 101-2, at PageID# 1453-1470.

9. The Lease Agreement states that the Lease Driver must continue providing services for PTL or else will be considered in default of the Lease Agreement. ECF Doc. No. 101-2, at PageID# 1453-1470, ¶11. In the event of default, the Lease Agreement states that Quality can, *inter alia*, repossess the tractor and declare all remaining lease payments for the remainder of the Lease immediately due. *Id.* at ¶12.

10. Per the agreement between PTL and Quality, PTL is required to have Lease Drivers who sign Lease Agreements simultaneously execute Independent Contractor Service Agreements ("ICSAs") whereby they sub-lease their driving services and commercial motor vehicles to PTL to haul freight for PTL's customers. PTL's Answer to Plaintiffs' First Amended Complaint ("PTL's Answer"), ECF Doc. No. 82 at ¶ 52; Quality Payments, ECF Doc. No. 100-1, at p. 2.

11. The ICSAs that Carter, Hays, and other Lease Drivers executed with PTL are materially similar. PTL's Responses to Plaintiffs' Second Requests for Production, ECF Doc. No. 101-2, PageID #1565-1667, at pp. 10-11, ¶ 10 ("Second RFP Responses"); Carter ICSA, ECF Doc. No. 101-2, PageID #1396-1415; Hays ICSA, ECF Doc. No. 101-2, PageID #1416-1436; Declaration of Gale Carter, ECF Doc. No. 101-2, PageID #1480-1485, at ¶ 25; Declaration of Forbes Hays, ECF Doc. No. 101-2, PageID #1486-1490, at ¶ 23; Declaration of Lakendal Harris, ECF Doc. No. 101-2, PageID #1491-1496, at ¶ 25.

12. The ICSAs state that if the Lease Drivers do not "[provide] services when required by PTL on a continuing basis," for at least 9 months, the Lease Driver will be obligated to pay an "early termination fee" of $5,000. Carter ICSA, ECF Doc. No. 101-2, PageID# 1404; Hays ICSA, ECF Doc. No. 101-2, PageID# 1424.

13. At present, at least 4,659 individuals have executed ICSAs with PTL and leased trucks via Quality Equipment Lease Group ("Quality Lease Drivers"). PTL's Responses to Plaintiffs' Interrogatories, ECF Doc. No. 101-2, PageID# 1522-1564, at ¶ 8.

14. PTL assigns all Lease Drivers a Fleet Manager who coordinates the driver's work. PTL's IRS SS-8 Determination, ECF Doc. No. 101-3, PageID# 1685-1688.

15. All Lease Drivers are subject to the same procedures for getting paid for a load. *Id.*

16. Lease drivers are not permitted to haul loads for other carriers while working for PTL. Carter Lease Agreement, ECF Doc. No. 101-2, PageID# 1438-1439; Hays Lease Agreement, ECF Doc. No. 101-2, PageID# 1456-1457; Carter Declaration, ECF Doc. No. 101-2, PageID# 1482, at ¶ 8; Hays Declaration, ECF Doc. No. 101-2, PageID# 1487; Vehicle Lease Program Agreement, ECF Doc. No. 100-1, at p. 3.

17. All of PTL's Lease Drivers are paid either a percentage of gross freight revenue or mileage pay as their primary compensation. PTL's Answer, ECF Doc. No. 82 at ¶ 81.

18. The ICSA agreements requires the Lease Drivers to be responsible for "all costs and expenses associated with the operation of the Equipment," including, but not limited to, fuel, tires, maintenance, and the truck lease. *See* Carter ICSA, ECF Doc. No. 101-2, Page ID# 1399.

### III. ARGUMENT

#### A. LEGAL STANDARD

Rule 23 of the F.R.C.P. governs a District Court's consideration of a motion for class certification. A district court must undertake "a rigorous analysis" to ensure that the requirements of Rule 23(a) are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541 (*quoting* Gen. *Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982)); *see also In re BancorpSouth, Inc.*, 2016 U.S. App. LEXIS 16936, *2-3 (6th Cir. 2016). Once the requirements of Rule 23(a) are met,

the court must then determine if the class satisfies one of the conditions of Rule 23(b). *In re BancorpSouth, Inc.,* 2016 U.S. App. LEXIS 16936 at *2-3.

Rule 23(b)(3) sets forth two requirements for class certification: (1) "that the questions of law or fact common to class members predominate over questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc v. Ct. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013). Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage; merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. *Rikos v. Procter & Gamble Co*., 799 F.3d 497, 505 (6th Cir. 2015).

Motor carriers such as PTL may perform authorized transportation in equipment they do not own *only* if the equipment is covered by a written lease meeting the requirements set forth in 49 C.F.R. § 376.12, the federal TILA regulations. *See* 49 C.F.R 376.11(a); *see also* 49 U.S.C. § 14102. A person injured by an authorized motor carrier's failure to comply with the federal leasing regulations may bring an action seeking injunctive relief and damages pursuant to 49 U.S.C. § 14704(a)(1) and (2) and may recover attorneys' fees and costs under 49 U.S.C. § 14704(e). Plaintiff alleges that he and the putative class members were subjected to work agreements which were unlawful under the TILA, and that they suffered damages as a result.

Likewise, the Federal Forced Labor Statute ("FFLS") specifically prohibits forced labor secured through coercion, defined as serious harm or threats of serious harm. Courts have confirmed that the serious harm that underpins a FFLS claim includes financial harm, and that the

7

statute is not limited to victims of sex trafficking, or immigrant domestic workers held in conditions of forced peonage. *See, e.g., United States v. Callahan,* 801 F.3d 606, 617 (6th Cir. 2015); *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011); *United States v. Calimlim*, 538 F.3d 706, 712, 714 (7th Cir.2008). Plaintiffs—and the putative class members who also worked for Defendants in Defendants' Lease Driver Program—were compelled to provide their labor to Defendants for fear of the financial harm—the imposition of a substantial early termination fee of $5000, and the recovery of the other debts that the drivers were accruing while over-the-road— that would befall them if they ceased hauling loads for Defendant PTL. Accordingly, they allege that Defendant PTL unlawfully procured their labor under the FFLS.

Finally, Plaintiffs have pleaded that Defendants were unjustly enriched in violation of Kentucky law, by virtue of having to work for Defendants pursuant to an unlawful contract.

Plaintiffs propose to certify pursuant to Fed. R. Civ. P. 23(b)(3) the following three sub-classes:

(1) A TILA class of all individuals who leased tractors from third-party leasing companies and then subleased these vehicles to PTL during the period four years prior to the filing of the initial Complaint in this manner through the present;

(2) A FFLS class of all individuals who leased tractors from Quality Leasing and then subleased these vehicles to PTL during the period ten years prior to the filing of the initial Complaint in this matter through the present;

(3) A Kentucky Common Law Unjust Enrichment class of all individuals who leased tractors from third-party leasing companies and then subleased these vehicles to PTL during the period five years prior to the filing of the initial Complaint in this manner through the present;

8

Named Plaintiff Gale Carter seeks to be named the representative plaintiff for each of these three sub-classes. Plaintiffs aver that the Rule 23(a) and Rule 23(b)(3) elements are met for their TILA, FFLS, and their unjust enrichment claims and sub-classes. Accordingly, the Court should grant Plaintiffs' motion for Rule 23 class certification of these claims.

**B.     ASCERTAINABILITY, NUMEROSITY, AND ADEQUACY ARE SATISFIED FOR THE CLASS FOR ALL THREE CLAIMS**

**1. Members of the Class are ascertainable.**

For a class to be certified it must "be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 537-38 (6th Cir. 2012) (citing 5 James W. Moore et al., *Moore's Federal Practice § 23.21[1]* (Matthew Bender 3d ed. 1997); *See also Cole v. City of Memphis*, 839 F.3d 530 (6th Cir. 2016). The class cannot merely exist, but must be precisely definable, and cannot be maintained if it is "amorphous" or "imprecise"). *Id.*

Defendant was able to readily produce a similar list of potential FLSA opt-in plaintiffs.[2] Accordingly, these individuals are readily ascertainable.

**2. The class is sufficiently numerous that joinder is impracticable.**

Rule 23(a) requires "the class be so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). There exists, however, no "strict numerical test", such that "substantial" numbers of affected individuals will satisfy this requirement. *Young*, 693 F.3d at 541 (quoting *In re Whirlpool*, 2012 U.S. App. LEXIS 12560, at *7 (6th Cir. 2012).

---

[2] Plaintiffs sought to conditionally certify a slightly broader putative collective action class for their FLSA claims, namely all Lease Drivers who worked for PTL, regardless of which third-party leasing company they secured their trucks from. Because Plaintiffs' FFLS claims

9

At present, at least 4,659 individuals have executed ICSAs with PTL and leased trucks via Quality Equipment Lease Group ("Quality Lease Drivers"). PTL's Responses to Plaintiffs' Interrogatories, *attached hereto as* Ex. 1-J at p. 15. This does not include the individuals who executed ICSAs with PTL but leased trucks from other third-party vendors, such as Cure Leasing.

Given the impracticability and inefficiency of joinder under such circumstances, the proposed class has met the numerosity requirement of Rule 23(a).

### 3. The class representative and class counsel satisfy the adequacy prerequisite of Rule 23(a)

The adequacy requirement of Rule 23(a)(4) comprises two parts: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re American Medical Sys.,* 75 F.3d 1069, 1083 (6th Cir. 1996). Sixth circuit courts also review whether class counsel is "qualified, experienced and generally able to conduct the litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000). Plaintiffs seek to have Named Plaintiff Carter serve as the representative plaintiff for the class.[3] Carter's claims are neither antagonistic of nor do they conflict with those of the putative class. Accordingly, Carter is an adequate Named Plaintiff.

Likewise, undersigned counsel has significant experience and expertise in litigating class labor disputes, especially in the trucking industry, and will adequately serve the interests of the class. *See* Declaration of Joshua Boyette. Indeed, Plaintiffs' counsel has already expended significant resources and time litigating this matter to date. Accordingly, Plaintiff has met the adequacy requirements of Fed. R. Civ. P. 23(a)(4).

---

[3] While the Amended Complaint names Plaintiff Hays as a Named Plaintiff, in light of Defendant's arguments regarding Hays' bankruptcy, Plaintiffs are seeking to only name Plaintiff Gale Carter as the representative plaintiff of the Rule 23 classes.

### C. COMMONALITY, TYPICALITY, PREDOMINANCE, AND SUPERIORITY ARE SATISFIED FOR ALL THREE CLAIMS.

Plaintiffs must also satisfy the Rule 23(b)(3) prerequisites of predominance and superiority. *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C*., No. 18-4139, 2019 WL 3820259, at *4 (6th Cir. Aug. 15, 2019). Likewise, the Rule 23(a) requirements of commonality and typicality overlaps with and merges with the predominance inquiry and is addressed here. *Id.*

#### 1. Commonality, Typicality, Predominance, and Superiority are satisfied for Plaintiffs' TILA Claims.

For a Rule 23(a) class to be certified, there must be questions of law or fact common to the class and the plaintiff's claims must be typical of the class members' claims. Fed. R. Civ. P. 23(a)(2), (3); *Young*, 693 F.3d at 541. These considerations "tend to merge" because they both help determine whether maintenance of the class is "economical" and whether the class' claims are "so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Young*, 693 F.3d at 541 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Here, in order to satisfy commonality and typically, Named Plaintiff Carter's interests must be aligned with those of the putative class such that he will advance their mutual interests by pursuing his own claims. *Id.* To satisfy the predominance requirement, Plaintiffs must show that issues subject to generalized proof predominate over issues that are subject to only individualized proof. *Young,* 693 F.3d 532, 544 (quoting *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir. 2011). The existence of defenses to individual claims does not necessitate a finding that individual issues predominate over common ones. *Young*, 693 F.3d 532 (quoting *Beattie v. CenturyTel, Inc.* F.3d 554, 564 (6th Cir. 2007)). Whereas the Rule 23(a)(2) commonality analysis requires a showing that one common question exists Rules 23(b)(3) requires a showing that common questions <u>predominate.</u> *Id.*

11

With respect to their TILA claims, Plaintiffs present several common and predominating questions of law and fact related to the lawfulness under TILA of the essentially uniform contracts PTL required Lease Drivers to sign. For instance, Plaintiffs have alleged and challenged the lawfulness of Defendant's disclosures regarding and use of maintenance accounts, including the failure to provide proper accountings, the failure to provide interest payments, and the use of such escrow accounts to recover unlawful deductions and alleged debts owed by drivers to PTL, in violation of 49 C.F.R. § 376.12(k). *See* Second Amended Complaint, ECF Doc. No. 103, ¶ 69(g)-(k). Plaintiffs have alleged that the certain deductions were unlawful because they were either not adequately disclosed or the method of their calculation was not adequately disclosed, in violation of 49 C.F.R. § 376.12(h). *See* Second Amended Complaint, ECF Doc. No. 103, ¶ 127(e). Plaintiffs have alleged that disclosures regarding the amount of pay to receive or deductions from pay related to service failures were impermissibly vague. *See* Second Amended Complaint, ECF Doc. No. 103, ¶ 127(c)-(d).

The TILA regulations were enacted to "espouse a goal of ensuring that owner-operators such as [plaintiff] are informed of all potential costs and liabilities that they may incur as a result of entering into an equipment lease." *Jones Express, Inc. v. Watson* 871, F. Supp. 2d 719, 730 (M.D. Tenn. May 15, 2012). The common questions listed above address whether Defendants' form ICSA's were unlawfully vague as to (or failed to disclose entirely) the costs associated with working for Defendants.

Courts have found the class action mechanism of Rule 23 to be an appropriate outlet for the resolution of TILA claims. *See, e.g., Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.,* 2005 U.S. Dist. LEXIS 23350 (N.D. Ill. May 23, 2005) (Finding that the drivers' claims were not so individualized that individual issues predominated, as the common threshold factual

issue was the legality of the defendants' lease provisions); *Owner-Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc.*, No. 2:02 CV 950 TS, 2005 WL 2098919, at *8 (D. Utah Aug. 29, 2005); *Davis v. Colonial Freight,* No. 3:16-CV-674, ECF Doc. No. 85 (E.D. Tenn. Mar. 2, 2018), attached hereto as Exhibit 1; *James Foster & Stone Logistics, Inc. v. CEVA Freight, LLC*, 272 F.R.D. 171, 175 (W.D.N.C. Aug. 3, 2012).

The ICOAs and Lease Agreements signed by the class members are form in nature. *See* SOF at ¶ 11. Likewise, the claims that provisions in the agreements violate TILA are based on Defendant's uniform course of conduct in enforcing and implementing these agreements. Thus, there are no material differences between Carter's claims and those of the other Lease Drivers. There can be no serious dispute that a decision determining the legality of these provisions would resolve this issue for the entire class, resulting in a mutual and common decision applicable to Carter and putative class members. The legality of these contracts under the TILA regulations is an either-or proposition, applicable to the entire class. Accordingly, not only do common issues exist, these common issues predominate over any individual issues—they will settle at a stroke the common deciding factor for all class members.

With respect to damages, Plaintiff's initial review of Defendant's motion for summary judgment makes clear that Defendant has made common arguments that certain technical violations of TILA cannot result in damages as a matter of law. As for showing individual damages, to the extent, for instance, that Defendant's escrow accounts were unlawful and therefore the deductions therefrom were impermissible, while the damages each class member would sustain from such a violation would differ, the individual calculation of damages is not a bar to Rule 23 class certification. *See, e.g., Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988); *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*, No. 18-4139, 2019 WL 3820259, at

*10 (6th Cir. Aug. 15, 2019) (individual damage calculations based on a uniform theory of liability and single formula do not undermine predominance).

Finally, with respect to superiority, a single adjudication of these common issues of law and fact will result in significant judicial efficiencies and allow for efficient determinations of damages for class members' whose individual claims may only be in the hundreds or thousands of dollars—typically an insufficient amount to justify individual adjudication. Thus, Rule 23(b)(3) superiority is also satisfied.

Carter and the putative class members share: 1) the same factual allegations as to Defendants' alleged unlawful conduct under TILA; 2) the same legal claims that Defendants' agreements with them and Defendants' conduct violates TILA; and 3) the same interest in proving Defendants' liability. Thus, Carter's claims are typical of the claims of the putative class, share common questions of law with those of the putative class, and common issues predominate over individual issues. Accordingly, the Court should certify a Rule 23(b)(3) class as to the Plaintiffs' TILA claims.

### D.   **PLAINTIFFS' FFLS CLAIMS SATISFY THE RULE 23 PREREQUISITES OF COMMONALITY, PREDOMINANCE, AND SUPERIORITY**

Plaintiffs' FFLS claims also satisfy the requirements of commonality, predominance, and superiority. The FFLS makes it unlawful to obtain labor by threats of serious harm, including threats of serious financial harm. *See* 18 U.S.C. 1589(a)(2). However, the threat of serious harm is measured on an objective standard—it is any harm "sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm. *See* 18 U.S.C. 1589(c)(2).

Based on this objective standard of serious harm, courts have found that FFLS claims are susceptible to class certification under Rule 23 because the gravamen of the claim focuses on the Defendant's conduct and intentions, and on whether the threats by which the labor is procured is "objectively" compulsive. *See, e.g., Menocal v. GEO Grp., Inc.,* 882 F.3d 905, 919–20 (10th Cir.), cert. denied, 139 S. Ct. 143, 202 L. Ed. 2d 34 (2018) (whether threat was the type to compel forced labor determined pursuant to an objective standard, thereby permitting class treatment); *Rosas v. Sarbanand Farms, LLC*, 329 F.R.D. 671, 690 (W.D. Wash. 2018) (same). The inquiry does not address how each class member perceived Defendants' actions or whether he or she subjectively felt compelled to work, but rather whether the threat was made and whether it was the type of threat which would objectively compel someone to continue to work to avoid the threat. *See Tanedo v. E. Baton Rouge Par. Sch. Bd.*, No. LA CV10-01172 JAK, 2011 WL 7095434, at *8 (C.D. Cal. Dec. 12, 2011).

Plaintiffs do not dispute that they will need to show causation in addition to showing that Defendant's threats would objectively compel a reasonable similarly situated person to provide the forced labor, and Plaintiffs expect Defendant to argue that Carter testified that he continued working for Defendant because he hoped to one day start making money, and that because of that, Carter cannot make out his own individual FFLS claim, nor can he represent a class of others who may also have "continued to work" for Defendant not because of the threats of financial harm which would come from stopping working for Defendant but because they hoped that Defendant would start providing sufficient work so that they could make money. But Carter's actual testimony was that he and other drivers discussed how they were limited in the companies they could transfer their Quality trucks to, but that they would have wanted to go work for one of these

15

other Quality-approved trucking companies except that they could not afford to pay the early termination fee. *See* Deposition of Carter, attached as Exhibit 2, at 86:22-87:17.

In this context, Carter's subsequent testimony that the early termination fee did not physically prevent Carter from quitting, and that—given that he was stuck with the truck—he waited before quitting in the hopes that eventually he would start being given the types of loads that would allow him to make money—does not preclude either (a) Carter's individual claim that Defendant's early termination fees and other impositions of debt forced him to continue giving PTL his labor (instead of taking that labor to another trucking company which Quality would accept), or (b) that this testimony—along with additional representative testimony from other Lease Drivers—can be used to show that while many drivers had hopes that things would turn around, they were also objectively compelled to keep working for Defendant because if they did not, they would be subjected to a significant early termination fee which—because of the low to nonexistent wages Defendant was providing—would prove especially ruinous.

Such a framework is consistent with the Tenth Circuit's certification of a Rule 23 class in a FFLS claim brought by immigrant detainees forced to clean their own facility without pay under threat of discipline and loss of privileges in *Menocal.* 882 F.3d at 919-920. In that case, the Tenth Circuit found that each individual class member could prove by circumstantial evidence that they were aware of the work policies which contained the unlawful threat, that they performed the work, and that therefore they performed the work because of the unlawful threat. *Id.* This would be enough for a factfinder to conclude by a preponderance of the evidence "that each [class member] would not have performed his or her assigned cleaning duties without being subject to the Sanitation Policy." *Id.* at 922. Where the allegation is that threats were made and were part of the Defendant's common scheme or practice to coerce labor, this is enough to establish that the class'

claim is susceptible to class-wide resolution. *Rosas v. Sarbanand Farms, LLC*, 329 F.R.D. 671, 689 (W.D. Wash. 2018).

The remaining elements to Plaintiffs' FFLS claims—Defendants' intent to compel labor and their *scienter* that their actions would compel labor—are clearly uniform issues that will be the same for all Plaintiffs. Accordingly, where all or nearly all the elements of the FFLS claims will involve answering common questions with common answers using common proof, predominance is satisfied. *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 923 (10th Cir.), *cert. denied*, 139 S. Ct. 143, 202 L. Ed. 2d 34 (2018). Accordingly, the Court should also certify Plaintiffs' FFLS claims pursuant to Fed. R. Civ. P. 23(b)(3).

### E. **PLAINTIFFS' UNJUST ENRICHMENT CLAIMS SATISFY THE RULE 23 PREREQUISITES OF COMMONALITY, PREDOMINANCE, AND SUPERIORITY**

Finally, Plaintiffs' unjust enrichment claims satisfy the remaining Rule 23(a) and Rule 23(b)(3) prerequisites as well. Under Kentucky law, for a party to prevail under the theory of unjust enrichment, they must prove three elements: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value. *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009). Moreover, under Kentucky law, the party must also show that there is no valid and enforceable contract, as such would preclude an unjust enrichment claim. *See, e.g., Holley Performance Prod., Inc. v. Keystone Auto. Operations, Inc.,* No. 1:09-CV-00053-TBR, 2009 WL 3613735, at *5 (W.D. Ky. Oct. 29, 2009).

Here, in order to succeed, Plaintiffs will need to show that the ICSA's were not valid or enforceable. Plaintiffs intend to do so by showing that contracts unlawfully misclassified them as independent contractors and failed to ensure that drivers received the minimum wage, thereby making the contracts void for illegality. *See, e.g., Jackson v. Commonwealth*, 481 S.W.3d 794, 798

17

fn. 5 (Ky. 2016). The benefit that the class members conferred is the benefit of the deliveries they made, and the money received by PTL from PTL's customers for these deliveries. Finally, the *value* of this benefit to PTL will revolve around common questions and determinations, as Plaintiffs intend to show that there was a uniform value to PTL of these deliveries, and it is the cost PTL would have had to pay an employee to make these deliveries, i.e., the salary a company driver would have received for making each particular delivery. Thus, all the most significant questions and answers related to Plaintiff's unjust enrichment claim will be common and applicable to all class members. Accordingly, commonality, predominance, typicality, and superiority are all met for this claim as well, and the Court should certify this claim as a class claim pursuant to Rule 23(b)(3) as well.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for Rule 23 class certification as to their TILA, FFLS, and unjust enrichment claims.

Respectfully submitted,

*/s/ Joshua S. Boyette, Esq.*
Joshua S. Boyette, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Hwy N, Ste. 402
Cherry Hill, NJ 08034
Tel.: (856) 685-7420
Fax: (856) 685-7417
jboyette@swartz-legal.com

DATED: August 23, 2019