# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| THEODUS DAVIS, on behalf of himself and those similarly situated, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 3:16-CV-674 |
| v. | ) ) | Judge Travis R. McDonough |
| COLONIAL FREIGHT SYSTEMS, INC., *et al.*, | ) ) ) | Magistrate Judge H. Bruce Guyton |
| *Defendants*. | ) ) | |

## MEMORANDUM OPINION

Before the Court are two motions filed by Plaintiff: (1) motion for conditional and class certification (Doc. 69); and motion for equitable tolling (Doc. 75). For the following reasons, Plaintiff's motions are **GRANTED**.

## I.    BACKGROUND

Defendant Colonial Freight Systems, Inc. ("Colonial") is a truckload carrier that provides transportation of cargo for hire. (Doc. 61, at 3; Doc. 74-1, at 2.) Named-Plaintiff Theodus Davis worked as a commercial truck driver for Defendants from approximately September 2014 to January 2016. (Doc. 70-26; Doc. 74-6, at 18–19.) Colonial operates under three divisions: the Refrigerated Division, the Dry Van Division, and the Container Division.[1] (Doc. 70-20, at 10; Doc. 74-1, at 2.) Drivers in the Refrigerated Division haul perishable loads, drivers in the Dry Van Division haul dry loads, and drivers in the Container Division haul loads for two specific

---

[1] Colonial also contains a fourth division—the "ALCO" Division. (Doc. 70-20, at 10.) However, the ALCO Division only employs company drivers, which are not classified as independent contractors, and is, therefore, not relevant here. (*Id.* at 3–4.)

customers.  (Doc. 74-1, at 2.)  Approximately 200 trucks haul loads for these divisions.  (Doc. 70-20, at 11.)

Colonial hires commercial truck drivers, which it considers to be independent contractors, and assigns them to one of the three divisions.  (*Id.*; Doc. 74-1, at 2.)  In addition to various other qualifications, a potential driver may qualify to drive for Colonial by either having at least twelve months of experience in the previous three years or by completing a two-month "Driver Training Program."  (Doc. 70-20, at 4–5.)  Plaintiff alleges that, during the Driver Training Program, he and the other participants ("Driver-Trainees") were required to sign an "Independent Contractor/Trainee Agreement" ("ICTA").  (Doc. 61, at 9–10.)  Plaintiff submitted ICTAs signed by five other Driver-Trainees, which are materially similar to the ICTA he signed.  (Docs. 70-26, 70-27.)  Additionally, Colonial acknowledged in a Rule 30(b)(6) deposition that the ICTA Plaintiff signed was the form agreement used by Colonial for trainees around that time.  (Doc. 70-20, at 34.)  Under the ICTAs, Driver-Trainees were classified as independent contractors and given a stipend of $475.00 per week.  (Docs. 70-26, 70-27.)  A Driver-Trainee was required to reimburse Colonial the stipend payments at the end of the training period unless he entered into a lease agreement with Colonial and worked for Colonial for at least three months.[2]  (*Id.*)  Colonial acknowledges that this stipend-reimbursement provision is still in effect for Driver-Trainees.  (Doc. 70-20, at 35.)

If a potential driver did not own a truck, Colonial informed that driver about the option to lease a truck from Defendant Phoenix Leasing of Tennessee, Inc. ("Phoenix").  (*Id.* at 32.)  Approximately half of Colonial's 200 drivers lease a truck from Phoenix ("Phoenix-Lease Drivers").  (*Id.* at 11.)  Plaintiff and the Phoenix-Lease Drivers executed a materially similar

---

[2] According to Colonial, it has never required that a Driver-Trainee reimburse the stipend payments.  (Doc. 74-5, at 2.)

Commercial Vehicle Lease Agreement ("Lease Agreement"), whereby Colonial deducted a weekly lease installment and various other weekly charges from the Phoenix-Lease Drivers' weekly earnings.  (*See, e.g.*, Doc. 70-2, at 7–16; Doc. 70-24.)   According to Plaintiff, the Lease Agreements entered into by him and the other Phoenix-Lease Drivers required them to obtain written consent from Phoenix to haul loads for any carrier other than Colonial.[3]  (Doc. 61, at 11.)

Each Phoenix-Lease Driver, including Plaintiff, also entered into an Independent Contractor Operating Agreement ("ICOA") with Colonial, whereby Colonial leased back the truck the Phoenix-Lease Driver leased from Phoenix.  (*See, e.g.*, Doc. 70-2, at 17–21; Doc. 70-23.)  The ICOAs signed by Plaintiff and the Phoenix-Lease Drivers are materially similar.  (*See, e.g.*, *id.*)  The ICOAs characterized each Phoenix-Lease Driver as an independent contractor "and NOT an Employee."  (*See, e.g.*, Doc. 70-23, at 6.)  Phoenix-Lease Drivers were compensated based on either a percentage of gross freight revenue or per mile, depending on which division the driver was assigned to.  (*See id.* at 2; Doc. 70-20, at 26.)  The ICOAs authorized Colonial to deduct from the Phoenix-Lease Drivers' pay "sums sufficient to reimburse [Colonial] when such reimbursement is owed to [Colonial]."  (*See, e.g.*, Doc. 70-23, at 4.)  Additionally, the ICOAs authorized Colonial to deduct specific expenses incurred from fuel, toll charges, satellite equipment, advances, insurance, and fines, among many others.  (*See, e.g.*, *id.* at 3.)

Generally, when a Colonial terminal manager received an order from a customer, they offered the load to a Phoenix-Lease Driver.  (Doc. 70-20, at 19–20, 22.)  The Phoenix-Lease Driver was given a scheduled pick-up and delivery time, the rate, the commodity, temperature parameters, and special instructions, if any.  (*Id.* at 25.)  When a Phoenix-Lease Driver

---

[3] This does not appear to be an express provision in the Lease Agreements.  (*See, e.g.*, Doc. 70-24.)  However, Defendants admitted this allegation in their answer.  (Doc. 62, at 16.)

completed a load, he was responsible for "clearing the load," *i.e.*, contacting Colonial to report a delivery and submitting appropriate information.  (Doc. 70-21, at 6.)  Once a week, Colonial provided Phoenix-Lease Drivers a settlement sheet.  (Doc. 74-5, at 2.)  As provided in the ICOAs, Colonial compensated Phoenix-Lease Drivers for each load hauled but subtracted deductions authorized in the ICOA, such as fuel, repairs, and cash advances.  (*Id.* at 3.)  The "net amount" in a settlement sheet reflects this calculation.  (*Id.*)  Colonial maintains that not all loads were cleared in the settlement period in which they were hauled, sometimes creating a discrepancy between the amount worked in that pay period and the net amount paid to the Phoenix-Lease Driver.  (*Id.* at 2–3.)

Plaintiff alleges that Defendants misclassified the Phoenix-Lease Drivers as independent contractors and that Defendants' policy of deducting various expenses from Phoenix-Lease Drivers' pay caused their wages to drop below the federal minimum wage of $7.25 an hour.  (Doc. 61, at 16–18.)  Plaintiff provides a number of his own settlement sheets that he asserts demonstrate he was not compensated the minimum wage.  (Doc. 70-28.)  For example, in December 2014, Plaintiff hauled a load from Kentucky to Louisiana.  (*Id.* at 2.)  According to Plaintiff, he drove 631 "loaded miles" and 142 "empty miles" during this trip.  (*Id.*; *see also* Doc. 70-20, at 27.)  The load paid $956.08, but after various deductions for fuel, lease payments, highway use taxes, and the like, totaling $1,091.49, Plaintiff's settlement sheet for the trip stated that he was to receive nothing and, furthermore, that he owed Defendants $135.41 for carrying the load.  (Doc. 70-28, at 2–3.)

According to Plaintiff, Defendants provided load information and settlement sheets during discovery for six Phoenix-Lease Drivers selected by Defendants (the "Exemplar Phoenix-Lease Drivers").  (Doc. 70, at 21.)  The first Exemplar Phoenix-Lease Driver drove two loads

4

from January 27, 2016, to February 3, 2016, including 224 loaded miles and 795 empty miles. (Doc. 70-3, at 5–6.)  For these loads, the Driver earned $446.21, but after various deductions totaling $446.21, he netted $0 for this pay period.  (*Id.*)  For each of the five other Exemplar Phoenix-Lease Drivers, Plaintiff submitted at least one settlement sheet reflecting miles driven for a load and a negative net pay for that load.  (*See, e.g.*, Doc. 70-4, at 14–15; Doc. 70-5, at 2–3; Doc. 70-6, at 2–3; Doc. 70-7, at 4–5; Doc. 70-8, at 2–3.)

Plaintiff filed a complaint on September 20, 2016, alleging claims against Defendants for: (1) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; (2) violation of the Truth-in-Leasing ("TIL") regulations, 49 C.F.R. § 376.1 *et seq.*, promulgated under the Motor Carrier Act, 49 U.S.C. § 14701 *et seq.*; and (3) breach of contract.[4]  (Docs. 1, 61.)  On December 22, 2017, Plaintiff filed a motion for conditional and class certification, requesting that the Court:  (1) conditionally certify collective-action classes[5] of Driver-Trainees and Phoenix-Lease Drivers under the FLSA; and (2) certify a class action of all Phoenix-Lease Drivers under Federal Rule of Civil Procedure 23(a) for violations of the TIL regulations.  (Doc. 69.)  On January 20, 2018, Plaintiff filed a motion for equitable tolling, seeking to toll putative plaintiffs' FLSA claims from October 31, 2016.  (Doc. 75.)  Both motions are now ripe for review.

## II.    CONDITIONAL CERTIFICATION AS A COLLECTIVE ACTION

### a.  *Standard of Law*

The FLSA provides a private cause of action against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

---

[4] Plaintiff does not move for class certification of his breach-of-contract claims.  (*See* Doc. 70.)

[5] Though a collective action under the FLSA is not a "class action" contemplated by Federal Rule of Civil Procedure 23, the Court will use the term "class" to reference the putative group of opt-in plaintiffs in the proposed collective actions.

29 U.S.C. § 216(b).  Unlike class actions under Federal Rule of Civil Procedure 23, the FLSA requires putative class members to opt into the action.  *Id.*  The FLSA does not define "similarly situated," but "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy of conduct in conformity with that policy proves a violation as to all plaintiffs."  *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *overruled on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 664 (2016).  Plaintiffs are also similarly situated when "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct."  *Id.*  A plaintiff bears the burden of showing the claims of the putative class are similarly situated.  *Id.* at 584.

Typically, courts follow a two-phase inquiry to determine whether a putative class is similarly situated for the purposes of the FLSA.  *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).  "The first [phase] takes place at the beginning of discovery" and "[t]he second occurs after all of the opt-in forms have been received and discovery has concluded."  *Id.* At the first stage, commonly referred to as the "notice phase," a plaintiff must make a "modest factual showing" that they and potential co-plaintiffs are similarly situated with respect to the conduct alleged in the complaint.  *Id.* at 547.  This standard is "fairly lenient" and "typically results in conditional certification . . . ."  *Id.* (internal quotation marks omitted).  "At the second stage, following discovery, trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated."  *Id.*  "Plaintiffs generally must produce more than just allegations and affidavits demonstrating similarity in order to achieve final certification."  *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012).  At this stage, relevant considerations include "the factual and employment settings of the individual

plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and

the degree of fairness and procedural impact of certifying the action as a collective action."

*O'Brien*, 575 F.3d at 584 (internal quotation marks omitted).

However, where parties have conducted some, but not all, discovery, district courts

within the Sixth Circuit apply an intermediate, or hybrid, standard.  *See, e.g.*, *Creely v. HCR

ManorCare, Inc.*, 789 F. Supp. 2d 819, 823 (N.D. Ohio 2011).  After some amount of discovery,

the conditional certification question goes "beyond the stage one evidentiary boundaries of the

complaint's allegations and supporting affidavits."  *Id.* at 826.  Under this hybrid review, a court

should require a plaintiff to make a modest "plus" factual showing.  *Id.*  In other words, a court

should determine whether plaintiff has made a sufficient factual showing "that would tend to

make it more likely that a class of similarly situated employees exists" by comparing the

plaintiff's allegations in his complaint with the factual record assembled.  *Id.* at 827.  Because

the factual record has not been fully developed, however, a court should not consider the merits

of a plaintiff's claims and "resolv[e] any gaps or doubts in the evidence in favor of [the

plaintiff.]"  *Id.* at 826–27.

Here, given the amount of discovery that has taken place, a hybrid standard of review is

appropriate.  Plaintiff filed his complaint in September 2016 (Doc. 1), and the Court issued a

scheduling order in March 2017 (Doc. 32).  Plaintiff filed his motion for conditional and class

certification on December 22, 2017, giving him over a year since his lawsuit was filed and

approximately nine months from when the scheduling order was issued.  Though Plaintiff argues

that Defendants' "misconduct and requests for extensions" have caused considerable delay in the

discovery process, Plaintiff concedes that there have been four depositions and that Defendants

have responded to at least two sets of discovery requests.[6]  (Doc. 81, at 2.)  Moreover, Plaintiff attaches twenty-eight documents to his memorandum in support of his motion for conditional and class certification, suggesting that this matter has proceeded beyond the typical notice phase, which "takes place at the beginning of discovery."  *Comer*, 454 F.3d at 546.  Accordingly, the Court will apply the hybrid standard in reviewing Plaintiff's motion for conditional certification.

### b. *Analysis*

Plaintiff asserts this action should be conditionally certified pursuant to 29 U.S.C. § 216(b) because Defendants have instituted common policies or practices which violate the FLSA.  Plaintiff seeks conditional certification of two separate classes:  the Driver-Trainee Class and the Phoenix-Lease-Driver Class.

### i. Driver-Trainees

Plaintiff argues that Driver-Trainees are similarly situated because all were subject to the same FLSA-violating policy:  misclassifying them as independent contractors instead of employees and failing to provide them their wages "free and clear."[7]  (Doc. 70, at 14–16.) Defendants respond that members of the putative Driver-Trainee Class are not similarly situated because, under the primary-benefit test of determining whether an employment relationship exists in the context of training,[8] whether Colonial received an economic benefit from a trainee will vary depending on the trainee's production.  (Doc. 74, at 24–26.)  In other words, according

---

[6] Defendants represent that they have produced over 4,800 pages of documents.  (Doc. 74, at 12.)

[7] Pursuant to Department of Labor ("DOL") regulation, wages must be paid "free and clear" to satisfy the FLSA's minimum-wage requirements.  29 C.F.R. § 531.35.  Where an employer institutes a policy that requires repayment of wages already delivered, that policy will violate the minimum-wage "free and clear" regulation.  *Stein v. HHGregg, Inc.*, 873 F.3d 523, 535 (6th Cir. 2017).

[8] "[T]he proper approach for determining whether an employment relationship exists [under the FLSA] in the context of a training . . . situation is to ascertain which party derives the primary benefit from the relationship."  *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 529 (6th Cir. 2011).

8

to Defendants, the question of whether each Driver-Trainee was misclassified as an independent contractor will vary from Driver-Trainee to Driver-Trainee.

Because the FLSA's minimum-wage requirements apply to "employers," Driver-Trainees must be considered "employees" under the FLSA to recover.  Determining whether the Driver-Trainees were misclassified as independent contractors, however, also determines the merits of the Driver-Trainees' FLSA claims.  At the conditional-certification stage, a court should not consider the substance of a putative class's claims, even when conducting a hybrid standard of review.  *Creely*, 789 F. Supp. 2d at 826–27; *see also Heldman v. King Pharms., Inc.*, No. 3-10-1001, 2011 WL 465764, at *3 (M.D. Tenn. Feb. 2, 2011) (rejecting defendant's argument that plaintiff was exempt from the FLSA as premature).  Accordingly, the Court will not address whether the Driver-Trainees were misclassified as independent contractors at this time.

Instead, comparing Plaintiff's allegations in his complaint with the factual record assembled, Plaintiff sufficiently demonstrates that members of the putative Driver-Trainee class are similarly situated.  Plaintiff alleges that he and other Driver-Trainees were required to sign ICTAs classifying them as independent contractors to complete the Driver Training Program. (Doc. 61, at 9–10.)  The ICTA signed by Plaintiff and ICTAs signed by other Driver-Trainees in the relevant time period all provide for a $475.00 per week stipend, which must be reimbursed at the end of the training period unless the Driver-Trainee enters into a lease agreement with Colonial and works for Colonial for at least three months.  (Docs. 70-26, 70-27.)  Moreover, Colonial acknowledged in a Rule 30(b)(6) deposition that the ICTA signed by Plaintiff was the form agreement used by Colonial for trainees at that time.  (Doc. 70-20, at 34.)  Accordingly, the Driver-Trainees are similarly situated because they are all were subject to the same alleged FLSA-violating policy:  misclassification as independent contractors and failure to pay wages

free and clear.  Plaintiff's motion for conditional certification of the Driver-Trainee Class, therefore, will be **GRANTED**.

     ii.  <u>Phoenix-Lease Drivers</u>

Plaintiff also moves for conditional certification of the Phoenix-Lease-Driver Class. Plaintiff argues that all Phoenix-Lease Drivers are subject to the FLSA-violating policy of misclassifying them as independent contractors instead of employees and deducting various expenses from their settlement payments, such that the Phoenix-Lease Drivers were paid less than minimum wage.  (Doc. 70, at 16–23.)  Defendant responds that Phoenix-Lease Drivers are not similarly situated because Phoenix-Lease Drivers will have to individually prove that they received less than minimum wage in any given workweek, given that each division is compensated differently and that settlement sheets reflect deductions for items such as personal use and pre-pay advances.[9]  (Doc. 74, at 21–24.)

Comparing the allegations in Plaintiff's complaint with the factual record assembled, Plaintiff has made a sufficient showing that tends to make it more likely that Phoenix-Lease Drivers are similarly situated.  As noted, conditional certification is proper where claims are "unified by common theories of defendants' statutory violations, *even if the proofs of these theories are inevitably individualized and distinct*."  *O'Brien*, 575 F.3d at 585 (emphasis added). Plaintiff alleges that Defendants violated the FLSA by misclassifying Phoenix-Lease Drivers as independent contractors and by deducting their pay below minimum wage.[10]  (Doc. 61, at 16–

---

[9] Defendants also argue that the determination of whether a Phoenix-Lease Driver was misclassified as an independent contractor varies from driver to driver.  (Doc. 74, at 13–20.)  As with the Driver-Trainees, the issue of whether the Phoenix-Lease Drivers were misclassified pertains to the merits of the Phoenix-Lease Drivers' claims and is not appropriate to consider at this conditional-certification stage.

[10] Defendants argue that the policy of deducting from an employee's paycheck does not, by itself, violate the FLSA.  (Doc. 74, at 21.)  Plaintiff does not allege merely a policy of

18.)  The Phoenix-Lease Drivers entered into materially similar Lease Agreements and ICOAs, which characterized them as independent contractors, allowed Colonial to make deductions from their paychecks, and contained various other similar provisions.  (*See, e.g.*, Doc. 70-2, at 7–16, 17–21; Doc. 70-23; Doc. 70-24.)  Settlement sheets from Plaintiff and the six Exemplar Phoenix-Lease Drivers show weeks in which they were either not compensated for work or where they actually owed Colonial money, despite having worked that week.[11]  (Doc. 70-3, at 5–6; Doc. 70-4, at 14–15; Doc. 70-5, at 2–3; Doc. 70-6, at 2–3; Doc. 70-7, at 4–5; Doc. 70-8, at 2–3; Doc. 70-28, at 2–3.)  At the conditional-certification stage, this is sufficient to demonstrate a FLSA-violating policy that applied to all putative class members.  Accordingly, Plaintiff has made a sufficient showing that Phoenix-Lease Drivers are similarly situated.  Plaintiff's motion for conditional certification of the Phoenix-Lease Driver Class will be **GRANTED**.

## III.    MOTION FOR EQUITABLE TOLLING

Plaintiff requests that the Court toll putative-FLSA plaintiffs' claims as of October 31, 2016.  (Docs. 75, 77.)  An FLSA claim to recover unpaid compensation must "be commenced within two years after the cause of action accrued" or within three years if the violation is willful.  29 U.S.C. § 255(a).  Additionally, "[a] cause of action is deemed to accrue, as a general rule, at

---

deductions, however.  Plaintiff alleges deductions that cause the paychecks of Phoenix-Lease Drivers to fall below minimum wage in violation of the FLSA.  The case cited by Defendants only considers whether an employer policy providing automatic deductions for meal breaks violates the FLSA.  *See White v. Baptist Mem'l Health Care Corp.*, No. 08-2478, 2011 WL 1883959, at *8–9 (W.D. Tenn. May 17, 2011), *aff'd* 699 F.3d 869 (6th Cir. 2012).

[11] Defendants argue that Plaintiff's method for calculating Phoenix-Lease Drivers' compensation is flawed and underreports compensation.  (Doc. 74, at 21–24.)  For example, a Phoenix-Lease Driver would not be compensated for a load he delivered one week if he did not clear the load until the next week.  (*Id.*)  Again, Defendants' argument pertains to the merits of the Phoenix-Lease Drivers' claims and is not germane at this stage.  All that is required at this point is that Plaintiff make a "sufficient showing beyond their original allegations that would tend to make it more likely that a class of similarly situated employees exists."  *Creely*, 789 F. Supp. 2d at 827.  At this stage, the Court will "resolv[e] any gaps or doubts in the evidence in favor of [the plaintiff.]"  *Id.* at 826.

each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008) (internal quotation marks omitted).  The FLSA further directs that, for putative class members, an action commences when he or she submits to the Court a written consent to join the collective action.  29 U.S.C. § 256(b).  As a result, the statute of limitations continues to run after the named plaintiff files suit, and the pool of timely claims continues to shrink until either all putative class members' claims have become time-barred or they have consented to join the suit within the limitations period.  *See Thompson v. Direct Gen. Consumer Prods., Inc.*, 2014 WL 884494, at *7 (M.D. Tenn. Mar. 5, 2014).

"Equitable tolling enables a court, in its discretion, to extend the statute of limitations on a case-by-case basis to prevent inequity." *Id.* (citing *Truitt v. Cty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)).  The Sixth Circuit has held equitable tolling may be appropriate in FLSA actions.  *See, e.g.*, *Hughes*, 542 F.3d at 187–88; *see also Penley v. NPC Int'l, Inc.*, 206 F. Supp. 3d 1341, 1347 (W.D. Tenn. 2016) ("The equitable tolling doctrine is read into every federal statute.").  However, equitable tolling should be granted sparingly.  *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000).  "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Id.* at 560–61.  The plaintiff bears the burden of demonstrating he is entitled to equitable tolling.[12]  *Penley*, 206 F. Supp. 3d at 1348.

---

[12] Typically, the Sixth Circuit applies five factors to determine whether to apply equitable tolling:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

Plaintiff argues that equitable tolling in this case is appropriate because Defendants caused approximately 178 days of delays.  (Doc. 77, at 7–8.)  The 178-day period includes various extensions on response deadlines as well as discovery delays that Plaintiff asserts were either requested or caused by Defendants.  (*Id.*)  Plaintiff requests that the Court toll putative plaintiffs' claims from October 31, 2016, "41 days after Plaintiff filed his initial Complaint in this matter, and 4 days after Defendant filed its first motion to dismiss."  (*Id.* at 5.)

However, Plaintiffs did not move for conditional certification until December 22, 2017, approximately fifteen months after Plaintiff filed suit.  (*See* Docs. 1, 69.)  Plaintiff cites multiple delays in Defendants responding to discovery requests, but Plaintiff did not necessarily need responses to discovery to move for conditional certification.  Many FLSA plaintiffs move for conditional certification on the basis of pleadings and affidavits alone.  *See White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 373 (E.D. Tenn. 2006) ("At the notice stage, all that is required is substantial allegations supported by declarations, and once the plaintiff has met that burden, the case may be conditionally certified as a collective action.").  Additionally, Plaintiff himself requested various extensions of the deadline to move for conditional certification.  (*See, e.g.*, Docs. 53, 54.)  This suggests less diligence on Plaintiff's part and weighs against equitable tolling.  *Cf. Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842, 847 (S.D. Ohio 2013) (noting that the plaintiffs had been diligent where they moved for class certification "a mere four months after the commencement of their FLSA action").  Additionally, though Plaintiff requests that the Court determine equitable tolling based on the date he filed his complaint, courts typically

---

*Hughes*, 542 F.3d at 187.  "[T]hese factors are not necessarily comprehensive."  *Penley*, 206 F. Supp. 3d at 1348.  Because Plaintiff focuses on one argument, however, the Court will address that argument and not focus on the five factors listed above.

determine equitable tolling based on the date upon which a court could have conditionally certified the class at issue.  *See, e.g.*, *Thompson*, 2014 WL 884494, at *10.

On the other hand, some circumstances that caused delays in this case truly were beyond Plaintiff's control.  Defendants were served on September 28, 2017, making their answers originally due on October 19, 2016.  (*See* Doc. 3.)  After a stipulation extending Defendants' time to answer (Doc. 6), an agreed order transferring this case to this Court (Doc. 12), and the Court granting Defendants' another extension (Doc. 20), Defendants did not answer Plaintiff's complaint until January 17, 2017—a delay of ninety days.  Additionally, the Court continued the scheduling conference in this matter due to various scheduling concerns from January 24, 2017, to March 6, 2017—a delay of forty-one days.  (Docs. 22, 31.)  Finally, the Court granted Defendants two extensions of time to respond to Plaintiff's motion for conditional certification— a delay of fourteen days.  Accordingly, tolling the statute of limitations from 145 days from the date of this Order accurately represents the period of time attributable to delay caused by factors outside Plaintiff's control.  Accordingly, the Court will **GRANT** Plaintiff's motion for equitable tolling but will order equitable tolling of the putative plaintiffs' claims that were viable **145 days** before the date of this Order through the date of this Order.

## IV.    CLASS CERTIFICATION

### a.  *Standard of Law*

"A district court has broad discretion to decide whether to certify a class."  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996)).  A class action, however, is "an exception to the usual rule that litigation is conducted by and on behalf of the individual

named parties only." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)).

To obtain class certification, Plaintiffs must demonstrate:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[13]

*Id.* (quoting Fed. R. Civ. P. 23(a)).  Additionally, plaintiffs must meet at least one of the three requirements listed in Rule 23(b).  *Dukes,* 564 U.S. at 345.  In cases where plaintiffs seek class certification pursuant to Rule 23(b)(3), as is the case here, they must demonstrate "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *Whirlpool*, 722 F.3d at 850–51.  Plaintiffs "carry the burden to prove that the class certification prerequisites are met."  *Whirlpool*, 722 F.3d at 851.

TIL regulations, 49 C.F.R. § 376.1 *et seq.*, are promulgated under the Federal Motor Carrier Act, 49 U.S.C. § 14701 *et seq.*  The regulations "govern leases between federally regulated motor carriers and independent owner-operators of trucks."  *Jones Express, Inc. v. Watson*, 871 F. Supp. 2d 719, 726–27 (M.D. Tenn. 2012).  "A primary goal of this regulatory scheme is to prevent large carriers from taking advantage of individual owner-operators due to their weak bargaining position."  *Id.* at 727 (quoting *Owner-Operator Indep. Drivers Ass'n v. Swift Transp. Co.*, 367 F.3d 1108, 1110 (9th Cir. 2004)).  Pursuant to federal law, authorized motor carriers like Colonial may transport property in leased equipment only if the equipment is covered by a written lease that meets the requirements of TIL regulation.  49 C.F.R. §§ 376.11–

---

[13] These four requirements are commonly known as the numerosity, commonality, typicality and adequacy-of-representation requirements.  *Whirlpool*, 722 F.3d at 850.

12.  Those regulations require that the lease outline certain terms in detail, such as the duration of the lease, compensation, the return of escrowed funds, a listing of items for charge-back or deduction, and duties relating to insurance coverage.  *Id.*  If an authorized carrier fails to comply with those requirements, the statute provides for a private right of action for the enforcement of the regulations, either by injunctive relief or by an award of damages and attorney's fees.  49 U.S.C. § 14704.

Plaintiff seeks to certify the Phoenix-Lease Drivers as a class for their claims against Colonial for violations of the TIL regulations, asserting that a number of violations are common to the proposed class.  (Doc. 70, at 23–30.)  For example, Plaintiff argues that common claims include whether Defendants violated 49 C.F.R. § 376.12(d)[14] and (h)[15] by failing to clearly specify what items can be charged back against the Phoenix-Lease Drivers' pay and the method of calculating those items in the ICOAs.[16]  (*Id.* at 26.)  Defendants argue that Plaintiff fails to establish Rule 23(a)'s commonality requirement and Rule 23(b)'s predominance requirement. (Doc. 74, at 27–31.)

### b.  *Rule 23(a) Requirements*

The numerosity requirement of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Plaintiff submits deposition

---

[14] Title 49 C.F.R. § 376.12(d) provides:  "The amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease."

[15] Title 49 C.F.R. § 376.12(h) provides:  "The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed.  The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge."

[16] The ICOAs generally authorize Colonial to deduct from the Phoenix-Lease Drivers' pay "sums sufficient to reimburse [Colonial] when such reimbursement is owed to [Colonial]."  (*See, e.g.*, Doc. 70-23, at 4.)

testimony that approximately 90 to 100 Phoenix-Lease Drivers lease their trucks back to Colonial.  (Doc. 70-20, at 11.)  Moreover, Defendants do not dispute that Plaintiff has met the numerosity requirement.  (*See* Doc. 74, at 27–31.)  Accordingly, Plaintiff has demonstrated that the proposed class is so numerous that joinder of all the parties is impracticable.

Rule 23(a) also requires that "there are questions of law or fact common to the class" and that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(2)–(3).  To meet the commonality requirement, the plaintiffs' "claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  To demonstrate typicality, "the representative's interest [must] be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members."  *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012) (internal quotation marks omitted).  "[T]he commonality and typicality requirements of Rule 23(a) tend to merge [because] [b]oth serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Dukes*, 564 U.S. at 349 n.5 (internal quotation marks omitted).

Defendants argue that the commonality requirement is not met here because there is no common question that will resolve Defendants' liability in a single stroke.  (Doc. 74, at 28–31.)  According to Defendants, a necessary requirement for a TIL-violation claim is showing actual damages, which would require an individual determination of each plaintiff's injury.  (*Id.*)

Defendants argue that, therefore, establishing that the ICOAs violate the TIL regulations is not capable of class-wide resolution. (*Id.*)

The text of the statute suggests that a showing of damages is required to recover under the Motor Carrier Act. Title 49 U.S.C. § 14704 provides that "[a] carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for *damages sustained by a person* as a result of an act or omission of that carrier or broker in violation of this part." (Emphasis added). Though the Sixth Circuit has not directly addressed the issue, other circuits require plaintiffs to prove actual damages. *See, e.g.*, *Owner-Operator Indep. Drivers Ass'n v. Landstar Sys., Inc.*, 622 F.3d 1307, 1325 (11th Cir. 2010).

However, although Phoenix-Lease Drivers may be required to show actual damages, "the damages [the Phoenix-Lease Drivers] are seeking . . . are a remedy under the statute, and not an element of liability." *Foster v. CEVA Freight, LLC*, 272 F.R.D. 171, 177 (W.D.N.C. 2011). Here, liability *can* be determined on a class-wide basis—by determining whether the ICOAs violate the TIL regulations. Though damages may have to be established individually, those damages are still predicated on a common determination of liability. Other district courts have reached the same conclusion. *See, e.g.*, *id.*; *Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 284–85 (N.D. Ill. 2005). Accordingly, Plaintiff has met his burden of demonstrating that there are common questions of law applicable to the proposed class.

With regard to typicality, the ICOAs signed by Plaintiff and the Phoenix-Lease Drivers are materially similar. (*See, e.g.*, Doc. 70-2, at 17–21; Doc. 70-23.) Each contains the provisions that Plaintiff asserts violate the TIL regulations. Accordingly, Plaintiff's interests will be aligned with the Phoenix-Lease Drivers and, in pursuing his own claims, Plaintiff will also

advance the interests of all Phoenix-Lease Drivers.  Plaintiff has, therefore, met the typicality requirement.[17]

Finally, under Rule 23(a), the representative party must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  The Court "looks to two criteria for determining adequacy of representation:  1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."  *Young*, 693 F.3d at 543 (internal quotation marks omitted).  Additionally, the Court should "review[ ] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation."  *Id.*

As noted, Plaintiff was subject to an ICOA materially similar to the other Phoenix-Lease Drivers.  Plaintiff's counsel represents that they "ha[ve] significant experience and expertise in litigating class labor disputes, especially in the trucking industry, and will adequately serve the interests of the class."  (Doc. 70, at 29.)  Moreover, Defendants do not dispute that Plaintiff meets this requirement.  Accordingly, Plaintiff has demonstrated that he will fairly and adequately represent the interests of putative class members.

### c.  *Rule 23(b)(3) Requirements*

Turning to Rule 23(b), Plaintiff must demonstrate "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The predominance requirement is met

---

[17] Defendants do not dispute that Plaintiff has met the typicality requirement of Rule 26(a)(3). (*See* Doc. 77, at 27–31.)

when issues subject to generalized proof and applicable to the class as a whole predominate over issues subject to individualized proof. *Whirlpool*, 722 F.3d at 860–61.

Defendants argue that class certification is inappropriate because individual questions of fact predominate and assert the same arguments that they did against the commonality requirement. (Doc. 74, at 28–31.)  Moreover, according to Defendants, the Court should adopt a "detrimental reliance" test for TIL-regulation damages, which would require each plaintiff to show how he sustained damages because of the violations. (*Id.*)  Because individual testimony would be required to determine whether a particular Phoenix-Lease Driver relied on and was damaged by a TIL violation, Defendants argue that class certification is improper. (*Id.*)

Defendants rely heavily on the Eleventh Circuit's opinion in *Owner-Operator Independent Drivers Ass'n v. Landstar Systems, Inc.*, 622 F.3d 1307 (11th Cir. 2010).  In *Landstar*, the Eleventh Circuit considered an appeal from the district court's decertification of a class claiming TIL-regulation violations. *Id.* at 1326.  Noting that "each class member will have to offer evidence as to his or her actual damages, offset against any counterclaims," the appellate court upheld the district court's decertification ruling. *Id.* at 1326–27.  However, *Landstar* belies Defendants' argument.  The district court initially *granted* certification and specifically rejected the defendant's argument that certification was inappropriate because each class member would be required to establish not only actual damages, but also detrimental reliance. *Owner-Operator Independent Drivers Ass'n v. Landstar Systems, Inc.*, No. 3:02-cv-1005, ECF No. 199, at 3–5 (M.D. Fla. Aug. 30, 2005).  Moreover, the defendant attempted to appeal the class-certification order, but the Eleventh Circuit denied its petition. *Landstar*, 622 F.3d at 1313.  Only at trial did the district court determine that the class should be decertified as to the issue of damages. *Id.* at

1314.  Accordingly, *Landstar* suggests that class certification of TIL-regulation claims is appropriate, even if decertification is warranted at the damages stage.

As the Court has already noted with regard to commonality, the issue of whether the ICOAs violate the TIL regulations is subject to generalized proof and applicable to the class as a whole.  This generalized issue of liability predominates over issues subject to individualized proof, at least at the present stage.  Moreover, the Sixth Circuit has recognized the "universal" rule that "individual damages calculations do not preclude class certification under Rule 23(b)(3) . . . ."  *Whirlpool*, 772 F.3d at 861.  Accordingly, Plaintiff has met his burden to demonstrate predominance.

As for the superiority requirement, which Defendants do not dispute, class certification is proper where it is the superior method to adjudicate the case "fairly and efficiently."  *Id.*  Rule 23(b)(3) lists four factors to consider:  (1) individual interests in "controlling the prosecution or defense of separate actions"; (2) "extent and nature of any litigation concerning the controversy already begun"; (3) whether "concentrating litigation . . . in the particular forum" is desirable; and (4) "likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A)–(D).  "Use of the class method is warranted particularly [where] class members are not likely to file individual actions—the cost of litigation would dwarf any potential recovery."  *Id.*

No party has identified any individual interests that may control this litigation.  Plaintiff represents that he is not aware of any litigation asserting a TIL-regulation claim against Defendants.  (Doc. 70, at 30.)  Moreover, damages are likely modest here, suggesting that many Phoenix-Lease Drivers would not choose to pursue individual claims.  Finally, because putative class members are all truck drivers, it is likely that many are frequently on the road and, thus,

unable to monitor and pursue individual litigation.  Accordingly, the Court finds that Plaintiff has satisfied the requirements necessary to certify a class under Rule 23(b)(3).

## V.       CONCLUSION

For the foregoing reasons, Plaintiff's motion for conditional and class certification (Doc. 69) and motion for equitable tolling (Doc. 75) are **GRANTED**.  The parties are further **ORDERED** to, within **fourteen days** from the date of this Order, provide an agreed-upon notice to the Driver-Trainee Class and the Phoenix-Lease-Driver Class related to their ability to opt into the FLSA collective actions conditionally certified herein.  To the extent the parties are unable to agree, Plaintiff should file a proposed notice to which Defendants may respond within fourteen days with objections.

**SO ORDERED.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**