IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | |
|---|---|
| GALE CARTER and FORBES HAYS, on behalf of themselves and those similarly situated, | Case No. 5:18-cv-00041-BJB-LLK |
| Plaintiffs, | Judge Benjamin J. Beaton |
| v. | |
| PASCHALL TRUCK LINES, INC.; ELEMENT FLEET MANAGEMENT CORP.; and JOHN DOES 1-20, | |
| Defendant. | |

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

# TABLE OF CONTENTS

I.    DEFINITIONS ........................................................................................................ 4

  1.    Action. ......................................................................................................... 4

  2.    Administrative Expenses. ........................................................................... 4

  3.    Final Approval. ........................................................................................... 4

  4.    Final Approval and Fairness Hearing. ....................................................... 5

  5.    Final Approval Date. ................................................................................... 5

  6.    Plaintiffs' Counsel. ..................................................................................... 5

  7.    Collective Period. ....................................................................................... 5

  8.    Defendant. ................................................................................................... 5

  9.    Defense Counsel. ........................................................................................ 5

  10.   Final Effective Date. ................................................................................... 5

  11.   Original Class and Collective Action Complaint ....................................... 6

  12.   First Amended Individual, Collective, and Class Action Civil Complaint ............ 6

  13.   Second Amended Individual, Collective, and Class Action Civil Complaint. ........ 6

  14.   Gross Settlement Amount. .......................................................................... 7

  15.   Collective Notice. ....................................................................................... 7

  16.   Named Plaintiff. .......................................................................................... 7

  17.   Net Settlement Amount ............................................................................... 7

  18.   Objection Deadline, Opt-Out Deadline, and Dispute Deadline. ................ 7

  19.   Opt-Out(s). .................................................................................................. 8

  20.   Opt-Out Request. ........................................................................................ 8

  21.   Opt-In Plaintiffs. ......................................................................................... 8

  22.   Collective Members .................................................................................... 8

  23.   Parties. ......................................................................................................... 8

  24.   Preliminary Approval Date ......................................................................... 8

  25.   Qualifying Weeks Worked. ......................................................................... 8

  26.   Estimated Individual Settlement Amounts ................................................. 8

  27.   Individual Settlement Amounts ................................................................... 9

  28.   Released Claims. ......................................................................................... 9

  29.   Reserve Fund ............................................................................................... 9

**30.**    Released Parties. .................................................................................. 10

**31.**    Settlement. ............................................................................................ 10

**32.**    Settlement Administrator. .................................................................... 10

**33.**    Settlement Collective. .......................................................................... 10

**34.**    Settlement Collective Member. ........................................................... 10

**35.**    Settlement Payment. ............................................................................ 10

II.     FACTUAL AND PROCEDURAL BACKGROUND OF ACTION ................................. 0

    **1.**    The Filing of the Action. .............................................................................. 0

    **2.**    Discovery, Investigation, and Research. ...................................................... 0

    **3.**    Allegations of Named Plaintiff and Benefits of Settlement. ....................... 1

    **4.**    Defendant's Denials of Wrongdoing and Liability and Benefits of Settlement. .... 2

    **5.**    Intent of Settlement. .................................................................................... 3

III.    SETTLEMENT TERMS AND CONSIDERATION ......................................................... 3

    **1.**    Gross Settlement Amount. ........................................................................... 3

    **2.**    Service Fee Award. ...................................................................................... 3

    **3.**    Reserve Fund. .............................................................................................. 2

    **4.**    Allocation of the Net Settlement Amount. .................................................. 2

IV.    ATTORNEY FEES AND EXPENSES OF PLAINTIFFS' COUNSEL AND SETTLEMENT ADMINISTRATOR COSTS ........................................................... 3

    **1.**    Plaintiffs' Counsel Fees and Expenses. ...................................................... 3

    **2.**    Settlement Administration Costs. ................................................................ 3

V.     RELEASE BY THE SETTLEMENT COLLECTIVE AND NAMED PLAINTIFF ........ 3

    **1.**    Release of Claims by Named Plaintiff and Settlement Collective Members. ........ 4

VI.    CLAIMS ADMINISTRATION COSTS AND EXPENSES; FUNDING OF SETTLEMENT .................................................................................................... 6

    **1.**    The Settlement Administrator's Costs and Expenses. ................................. 6

    **2.**    Payment by Defendants of the Gross Settlement Amount. ......................... 6

VII.    NOTICE TO COLLECTIVE MEMBERS AND CLAIMS ADMINISTRATION ............ 6

    1.    Settlement Administrator's Duties. .............................................................. 7

    2.    List of Settlement Collective Members. ...................................................... 8

    3.    Notice of Collective Action Settlement. ...................................................... 9

4.    Opt-Out and Objection Procedure. ....................................................... 10

5.    Objections. ........................................................................................... 12

VIII.    NULLIFICATION OF THIS AGREEMENT ...................................................... 12

1.    Non-Approval of the Agreement. ......................................................... 12

2.    Apportionment of Settlement Administrator Charges in the Event of Settlement
Failure. .................................................................................................. 13

IX.    COURT FINAL APPROVAL OF SETTLEMENT ............................................... 13

1.    Final Approval. ..................................................................................... 13

2.    Defendant' Duty to Fund Settlement. ................................................... 13

3.    Payments to and on Behalf of Settlement Collective Members. ........... 14

4.    Remaining Payments. ........................................................................... 15

X.    MISCELLANEOUS PROVISIONS .................................................................... 16

1.    Parties' Authority. ................................................................................ 16

2.    Mutual Full Cooperation. ..................................................................... 16

3.    No Prior Assignment. ........................................................................... 16

4.    No Admission. ...................................................................................... 16

5.    Enforcement Actions. ........................................................................... 17

6.    Different Facts. ..................................................................................... 18

7.    Public Comments Regarding the Action or the Settlement. The Parties agree as
follows: .................................................................................................. 18

8.    No Retaliation. ...................................................................................... 19

9.    Governing Law. .................................................................................... 19

10.    Attorney Fees, Costs, and Expenses. ................................................... 19

11.    Notices. ................................................................................................. 19

12.    Construction. ........................................................................................ 20

13.    Captions and Interpretations. ............................................................... 20

14.    Modification. ........................................................................................ 20

15.    Integration Clause. ............................................................................... 21

16.    Binding Effect. ..................................................................................... 21

17.    Signatures of All Settlement Collective Members Unnecessary to be Binding. .. 21

18.    Counterparts. ........................................................................................ 22

This Settlement Agreement and Release of Claims (Agreement) is entered into between Named Plaintiff Gale Carter (Plaintiff) and Defendant, Paschall Truck Lines, Inc. (PTL).

## I.    **DEFINITIONS**

As used in this Agreement, the following terms shall have the meanings specified below. To the extent terms or phrases used in this Agreement are not specifically defined below, but are defined elsewhere in this Agreement, they are incorporated by reference into this definition section.

### 1.    **Action.**

"Action" shall mean the Individual, Collective and Class Action Civil Complaint filed on October 11, 2017 in the U.S. District Court, Eastern District of Pennsylvania, under Case No. 2:17-cv-04543 and entitled *Gale Carter, et al. v. Paschall Truck Lines, Inc. et al.;* First Amended Individual, Collective, and Class Action Civil Complaint filed under the same case number on December 18, 2017; and Second Amended Complaint filed on October 10, 2018 in U.S. District Court, Western District of Kentucky under Case No. 5:18-cv-00041.

### 2.    **Administrative Expenses.**

"Administrative Expenses" shall include Plaintiffs' Counsel's attorney fees (based on a percentage of the Gross Settlement Amount approved by the Court not to exceed one third), Plaintiffs' Counsel's expenses not to exceed $50,000, any Service Fee granted to Named Plaintiff not to exceed $10,000, any Service Fee granted to a Discovery Collective Member not to exceed $500, each, the Reserve Fund, and the Settlement Administrator's costs and expenses for administration of the Settlement, which are anticipated to not exceed $15,000.

### 3.    **Final Approval.**

"Final Approval" shall mean the Court's approval of the Settlement after the Final Approval and Fairness Hearing.

**4. <u>Final Approval and Fairness Hearing.</u>**

"Final Approval and Fairness Hearing" shall mean a hearing set by the Court to determine the fairness, adequacy, and reasonableness of the Settlement, after preliminary approval and notice has been sent to the plaintiffs, including opt-in plaintiffs.

**5. <u>Final Approval Date.</u>**

"Final Approval Date" shall mean the date upon which the Court enters an order of final approval approving this Agreement.

**6. <u>Plaintiffs' Counsel.</u>**

"Plaintiffs' Counsel" shall mean Justin L. Swidler, Joshua S. Boyette, and Manali Arora of Swartz Swidler, LLC, 9 Tanner Street, Suite 101, Suite 101, Haddonfield, NJ 08034.

**7. <u>Collective Period.</u>**

"Collective Period" shall mean October 12, 2014, through March 14, 2024.

**8. <u>Defendant.</u>**

"Defendant" shall mean PTL, Paschall, and Paschall Truck Lines, Inc.

**9. <u>Defense Counsel.</u>**

"Defense Counsel" shall mean Christopher J. Eckhart and James A. Eckhart of Scopelitis Garvin Light Hanson & Feary, P.C., 10 West Market Street, Suite 1400, Indianapolis, IN 46204.

**10. <u>Final Effective Date.</u>**

"Final Effective Date" shall mean the first date following the entry of a final non-appealable order disposing of the case, which may be the last of the following occurrences:

a)       The date the time to appeal or seek permission to appeal or seek other judicial review of the entry of the final judgment approving the Settlement has expired with no appeal or other judicial review having been taken or sought; or

b)       If an appeal or other judicial review has been taken or sought: (i) the date the final judgment is finally affirmed by an appellate court with no possibility of subsequent appeal or other judicial review; or (ii) the date the appeal(s) or other judicial review are finally dismissed with no possibility of subsequent appeal or other judicial review; or (iii) if remanded to the District Court or to a lower appellate court following an appeal or other review, the date the final judgment is entered by the District Court after remand and the time to appeal or seek permission to appeal or seek other judicial review of the entry of that final judgment has expired with no further appeal or other judicial review having been taken or sought. If further appeal is sought after a remand, the time periods in this Subparagraph shall apply.

11. **Original Class and Collective Action Complaint.**

"Original Class and Collective Action Complaint" shall mean the complaint filed in the U.S. District Court, Eastern District of Pennsylvania October 11, 2017, under Case No. 2:17-cv-04543.

12. **First Amended Individual, Collective, and Class Action Civil Complaint.**

"First Amended Complaint" shall mean the amended complaint that was filed on December 18, 2017, in the U.S. District Court, Eastern District of Pennsylvania under Case No. 2:17-cv-04543.

13. **Second Amended Individual, Collective, and Class Action Civil Complaint.**

"Second Amended Complaint" shall mean the operative amended complaint in the Action, which was filed on October 15, 2018, in the U.S. District Court, Western District of Kentucky.

14. **Gross Settlement Amount.**

"Gross Settlement Amount" shall be an amount of $1,175,000.00, which is inclusive of all payments for alleged wages, damages, penalties, and interest to Named Plaintiff and the Opt-In Plaintiffs; the Reserve Fund; attorney fees; costs and expenses; and settlement administration costs. This Settlement does not require participating Collective Member to file claims, and no part of the Gross Settlement Amount will revert to Defendant. In no event shall Defendant be required to pay any amount beyond the Gross Settlement Amount.

15. **Collective Notice.**

"Collective Notice" shall mean the Notice of Proposed Collective Action Settlement and Final Approval Hearing, as set forth in the form of Exhibit 1 attached hereto, or as otherwise approved by the Court.

16. **Named Plaintiff.**

"Named Plaintiff" shall mean Gale Carter.

17. **Net Settlement Amount.**

"Net Settlement Amount" shall mean the Gross Settlement Amount minus Administrative Expenses.

18. **Objection Deadline, Opt-Out Deadline, and Dispute Deadline.**

"Objection Deadline" and "Opt-Out Deadline" shall mean the date by which Opt-In Plaintiffs must send an Opt-Out Request Form, or object to this Agreement in order to either be excluded from the Settlement or to lodge an objection to the Settlement. The Dispute Deadline is the deadline by which a Settlement Collective Member must dispute their Qualifying Weeks Worked or Estimated Individual Settlement Amount. The "Objection Deadline", "Opt-Out Deadline", and "Dispute Deadline" will be 45 days from the date the Collective Notice is mailed.

19. **Opt-Out(s).**

"Opt-Out(s)" shall mean any and all persons who timely and validly request exclusions from the Collective.

20. **Opt-Out Request.**

"Opt-Out Request" shall mean a timely and valid request for exclusion from the Collective and the Settlement.

21. **Opt-In Plaintiffs.**

"Opt-In Plaintiffs" shall mean any and all persons who filed an opt-in consent form.

22. **Collective Members**

Collective Members" shall mean the Opt-In Plaintiffs and the Named Plaintiff.

23. **Parties.**

"Parties" shall mean Named Plaintiff, the Opt-In Plaintiffs, and the Defendant.

24. **Preliminary Approval Date**

"Preliminary Approval Date" shall mean the date upon which the Court enters an order preliminarily approving this Agreement.

25. **Qualifying Weeks Worked.**

"Qualifying Weeks Worked" shall mean the total number of workweeks during which a Collective Member worked one or more days for Defendant at any time during the Collective Period as an independent contractor, and will be calculated by counting the number of weekly settlement statements issued to each Collective Member for services performed during the Collective Period.

26. **Estimated Individual Settlement Amounts**

"Estimated Individual Settlement Amount" shall mean the estimated pro-rata payment each Collective Member will receive from the settlement Net Settlement Amount. The Estimated Individual Settlement Amount shall be included on the Collective Notice.

**27. <u>Individual Settlement Amounts</u>**

"Individual Settlement Amount" shall mean the pro-rata payment each Settlement Collective Member receives from the Net Settlement Amount after accounting for (1) timely and valid disputes; and (2) Collective Members who timely and validly opt out.

**28. <u>Released Claims.</u>**

"Released Claims" shall mean all claims, known or unknown, any Collective Member has or may have from October 12, 2014, through March 14, 2024, against the Released Parties, that assert failure to pay wages, liquidated damages, or attorneys' fees under the Fair Labor Standards Act ("FLSA"), failure to pay minimum wages, liquidated damages, or attorneys' fees under any state law, violations of the federal Forced Labor Statute, 18 U.S.C. § 1589, violations of the Truth-In-Leasing Act and its regulations, 49 U.S.C. §14704, et seq., or unjust enrichment under the common law of any state related to any work performed while under contract with Defendant.

Notwithstanding the above, this release does not apply to claims under the FLSA for workweeks in which the Collective Member performed services while designated as a W-2 employee for PTL for the entire workweek.

**29.    <u>Reserve Fund</u>**

The amount set aside out of the Administrative Expenses in the amount of Fifteen Thousand Dollars ($15,000) that the Settlement Administrator may use, with approval from the Parties (which shall not be unreasonably withheld) to make payments to Settlement Collective Members as provided in Article IX, Paragraph 3.

30. **Released Parties.**

"Released Parties" shall mean Defendant and Defendant's present and former parent companies, subsidiaries, affiliates, related companies, joint ventures, and each of their respective present and former owners, officers, directors, shareholders, agents, employees, insurers, attorneys, accountants, auditors, advisors, representatives, consultants, pension and welfare benefit plans, plan fiduciaries, administrators, trustees, general and limited partners, predecessors, successors, and assigns, although not specifically named herein.

31. **Settlement.**

"Settlement" shall mean the settlement between the Parties, which is memorialized in this Agreement.

32. **Settlement Administrator.**

"Settlement Administrator" shall mean Simpluris, agreed upon by the Parties and approved by the Court, who will be responsible for administration of the Settlement and related matters in accordance with the terms of this Agreement or another neutral administrator mutually agreed to by the Parties.

33. **Settlement Collective.**

"Settlement Collective" shall mean Named Plaintiff and the Opt-In Plaintiffs who do not opt-out of the Settlement.

34. **Settlement Collective Member.**

"Settlement Collective Member" shall mean any member of the Settlement Collective.

35. **Settlement Payment.**

"Settlement Payment" shall mean the payment made to each member of the Settlement Collective from the Net Settlement Amount.

## II.  FACTUAL AND PROCEDURAL BACKGROUND OF ACTION

### 1.  The Filing of the Action.

On October 11, 2017 the Named Plaintiff filed the Original Class and Collective Action Complaint against Defendant in the U.S. District Court, Eastern District of Pennsylvania, under Case No. 2:17-cv-04543 and entitled *Gale Carter, et al. v. Paschall Truck Lines, Inc. et al.*. On December 18, 2017, Named Plaintiff filed the First Amended Complaint.  On February 5, 2018, the Action was transferred to the Western District of Kentucky and assigned Case No. 5:18-cv-00041. On October 10, 2018, Named Plaintiff filed the operative Second Amended Complaint, ECF No. 103.[1]

### 2.  Discovery, Investigation, and Research.

Plaintiffs' Counsel have conducted discovery and a thorough investigation of the facts during the prosecution of the Action. This discovery, investigation, and prosecution has included, among other things, (a) multiple meetings and conferences with Named Plaintiff and various Opt-in Plaintiffs; (b) inspection and analysis of voluminous documents produced by Defendant; (c) analysis of the legal positions taken by Defendant; (d) investigation into the viability of collective treatment of the claims asserted by Named Plaintiff, the filing of a motion for conditional certification, and the granting of that motion; (e) analysis of potential class-wide damages; (f) research of the applicable law with respect to the claims asserted in the Action, and the potential defenses thereto; (g) consulting with expert witnesses; (h) answering and propounding extensive written discovery; (i) defending depositions of Named Plaintiff and various Opt-In Plaintiffs,; (j) taking depositions of Defendant's witnesses; (k) assembling data for calculating damages; and (l) preparing for and participating in a mediation.

---

[1] Named Plaintiff also asserted claims against other defendants, but all other defendants have been previously dismissed from this Action.

Named Plaintiff has vigorously prosecuted the Action, and Defendant has vigorously contested it. The Parties have engaged in sufficient investigation, as well as formal and informal discovery, to assess the relative merits of the claims and the defenses to them.

**3.** **Allegations of Named Plaintiff and Benefits of Settlement.**

The extensive discovery conducted in this Action and discussions between counsel have been adequate to give Named Plaintiff and Plaintiffs' Counsel a sound understanding of the merits of their positions, to evaluate the worth of the claims of the Settlement Collective, and to compromise the issues on a fair and equitable basis. Plaintiffs' Counsel are knowledgeable about and have done extensive research with respect to the applicable law and practical defenses to the Claim of the Settlement Collective. The Parties also negotiated with the assistance of an experienced mediator, Hunter Hughes, Esq. Although the mediation did not result in a settlement agreement, the arm's length bargaining by the Parties during a full-day mediation session, in conjunction with the Court's orders on Plaintiff's motion for class certification and Defendant's motion for summary judgment, ultimately helped the parties reach a final resolution.

Named Plaintiff and Plaintiffs' Counsel believe that the claims and contentions asserted in the Action have merit. However, Named Plaintiff and Plaintiffs' Counsel recognize and acknowledge the expense and delay of continued lengthy proceedings necessary to prosecute the Action against Defendant through trial and appeals. Plaintiffs' Counsel has taken into account the uncertain outcome and the risk of any litigation, the risk of continued litigation in complex actions such as this, as well as the difficulties and delays inherent in such litigation, and the potential difficulty of maintaining a collective action. Plaintiffs' Counsel is mindful of the inherent problems of proof under, and possible defenses to, the claims alleged in the Action. Plaintiffs' Counsel believes that the Settlement set forth in this Agreement confers substantial benefits upon the

Settlement Collective and that an independent review of this Agreement by the Court in the approval process will confirm this conclusion. Based on their own independent investigation and evaluation, Plaintiffs' Counsel have determined that the Settlement set forth in this Agreement is fair, reasonable, and adequate and is in the best interests of the Settlement Collective.

   4. **<u>Defendant's Denials of Wrongdoing and Liability and Benefits of Settlement.</u>**

Defendant has denied and continue to deny the claims and contentions alleged by Named Plaintiff in the Action.

Defendant has expressly denied and continues to deny all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action. Defendant contends that it complied in good faith with the laws under which the claims were brought, including the FLSA. Defendant further denies that, for any purpose other than settling this Action, the claims remain appropriate for class or representative treatment. Nonetheless, Defendant has concluded that further litigation of the Action would be protracted and expensive and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement in order to limit further expense, inconvenience, and distraction, to dispose of burdensome and protracted litigation, and to permit the operation of Defendant's business without further expensive litigation and the distraction and diversion of its personnel to matters at issue in the Action.

Defendant has also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases such as the Action. Defendant has therefore determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Agreement. Defendant and Defense Counsel also agree that the Settlement is fair, reasonable, and adequate and in the best interest of the Settlement Collective.

5. **Intent of Settlement.**

The Settlement set forth in this Agreement is intended to resolve all disputes between the Parties arising out of the Action and to achieve the following: (a) entry of an order approving the Settlement and granting monetary and other relief set forth in this Agreement; (b) resolution of all disputes between the Parties arising out of the Action; (c) discharge of the Released Parties from liability for any and all of the Released Claims; (d) entry of judgment and dismissal with prejudice of the Action; and (e) no appeals of any order or judgment entered by the Court. If any individual— whether Named Plaintiff, Opt-In Plaintiffs, absent class members, or any other individual(s)—files an appeal challenging any order or judgment entered by any Court in this matter (except for appeals challenging the Court's order on the fairness of this settlement), then, at Defendant's sole discretion, the Settlement shall be considered null and void, neither the Settlement nor any of the related negotiations or proceedings shall be of any force or effect, and the Parties shall stand in the same position, without prejudice, as if the Settlement had been neither entered into nor filed with the Court.

III.    **SETTLEMENT TERMS AND CONSIDERATION**

1.    **Gross Settlement Amount.**

The Gross Settlement Amount of $1,175,000.00, and other actions and forbearances taken by Defendant shall constitute adequate consideration for the Settlement and will be made in full and final settlement of (a) the Released Claims; (b) the Administrative Expenses; and (c) any other obligation of Defendant under this Agreement.

2.    **Service Fee Award.**

Named Plaintiff may receive a Service Fee, subject to Court approval in an amount up to $10,000 for his efforts on behalf of the Settlement Collective in this Action. These efforts include providing a day of deposition, assisting in the investigation of the claims, responding to written

discovery, and consulting with Plaintiffs' Counsel. Additionally, a service fee of $500 shall be paid to each of the following Collective Settlement Members who were deposed in this matter: Lakendal Harris, Ronald Baugh, Justin Hughes, and Nathaniel Thompson ("Discovery Collective Members").

Any Service Fee approved by the Court shall be paid to Named Plaintiff and/or Discovery Collective Members from the Gross Settlement Amount and shall be in addition to any distribution which they may otherwise be entitled as a Settlement Collective Member. Such Service Fee shall not be considered wages, and the Settlement Administrator shall issue Named Plaintiff an IRS 1099 Form reflecting such payment. Named Plaintiff shall be responsible for the payment of any and all taxes with respect to his Service Fee and shall hold Defendant harmless from any and all liability with regard thereto.

### 3.    Reserve Fund.

The Settlement Administrator shall set aside $15,000 of the Gross Settlement to be held in a Reserve Fund. The Reserve Fund shall be used to make payments as provided in Article IX, Paragraph 3. Any remaining portion of the Reserve Fund at the time of final administration of the settlement (as provided in Article IX, Paragraph 3) shall also be donated to the St. Christopher's Fund.

### 4.    Allocation of the Net Settlement Amount.

The Net Settlement Amount shall be distributed to each of the Settlement Collective Members as Settlement Payments as follows: Each Collective Member who does not Opt-Out shall receive $100 plus a pro rata share of the Net Settlement Amount, valued based on the number of Qualifying Weeks Worked by each Settlement Collective Member during the Collective Period. For tax purposes, the Parties agree the Settlement Payments will be reported on an IRS Form 1099.

The Settlement Collective shall hold Defendant harmless from any tax liability for the Settlement Payments they receive. If Defendant incurs tax liability for employer-side payroll taxes, Defendant will be solely responsible for paying such taxes.

## IV.    ATTORNEY FEES AND EXPENSES OF PLAINTIFFS' COUNSEL AND SETTLEMENT ADMINISTRATOR COSTS

### 1.    Plaintiffs' Counsel Fees and Expenses.

As part of the motion for approval of the Settlement, Plaintiffs' Counsel may submit an application for an award of attorney fees in an amount not to exceed one third of the Gross Settlement Amount paid by Defendant and litigation costs and expenses not to exceed $50,000, to be heard by the Court at the Approval and Fairness Hearing. As a condition of this Settlement, Plaintiffs' Counsel have agreed to pursue their fees only in the manner reflected by this Paragraph. Any fees, costs, and expenses awarded by the Court shall be paid to Plaintiffs' Counsel from the Gross Settlement Amount. Any amount awarded to Plaintiffs' Counsel by the Court from the Gross Settlement Amount shall be in full payment of their attorney fees, costs, and expenses, and, except as provided above, neither Named Plaintiff nor Plaintiffs' Counsel shall be entitled to any further award of attorney fees, costs, or expenses from Defendant.

### 2.    Settlement Administration Costs.

The cost of administration shall include, but not be limited to, administering and distributing the Settlement Payments. If the Settlement Administrator requires part of the settlement administration fee to be paid up front, Defendant shall pay this amount from the Gross Settlement Amount, with any unused amount of the deposit to be returned to Defendant if the Court does not approve the Settlement, and any remaining balance shall be paid as set forth in Article VII, Paragraph 2 of this Agreement.

## V.    RELEASE BY THE SETTLEMENT COLLECTIVE AND NAMED PLAINTIFF

1.    __Release of Claims by Named Plaintiff and Settlement Collective Members.__

Upon the Final Effective Date, and except as to such rights or claims as may be created by this Agreement, Named Plaintiff and each member of the Settlement Collective will fully release and discharge the Released Parties from any and all of the Released Claims.

Regardless of whether any Settlement Collective Member actually negotiates the check by which his or her distribution is to be paid, each Settlement Collective Member will be bound to the release of Released Claims as a result of this Settlement.

In addition, in exchange for a Service Award as approved by the Court, Named Plaintiff shall and does hereby forever release, discharge, and agree to hold harmless the Released Parties for any and all known and unknown claims, complaints, causes of action, lawsuits, demands, back wages, benefits, attorneys' fees, pain and suffering, debts, controversies, damages, judgments, in law or equity, of any kind, nature and character, which Named Plaintiff has, had, or may have against the Release Parties arising out of, related to, or in any way connected with his engagement by, alleged employment with, or work for the Release Parties, including but not limited to the Released Claims, as well as any other claim arising out of any and all transactions, occurrences, or matters between Named Plaintiff and the Released Parties before the date this Settlement Agreement is executed, except as prohibited by law. This Release shall include, without limitation, any and all claims alleged by Named Plaintiff in this Action, any and all wage and hour claims relating to services performed by Named Plaintiff on the behalf of any of the Released Parties, and any and all wage and hour claims relating to Named Plaintiff's employment with any of the Release Parties.

Without limiting the generality of the foregoing, this Release shall include, but not be limited to, any and all claims under the (a) Americans With Disabilities Act of 1990, 42 U.S.C. §

12101, et seq., as amended; (b) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., as amended; (c) the Civil Rights Act of 1991; (d) 42 U.S.C. § 1981, as amended; (e) the Age Discrimination in Employment Act and the Older Workers Benefit Protection Act, 29 U.S.C. § 621, et seq.; (f) the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., as amended; (g) the Equal Pay Act of 1963, as amended; (h) the Employee Retirement Income Security Act, as amended; (i) the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1161 et seq.; (j) the Rehabilitation Act of 1973, as amended; (k) the Family and Medical Leave Act of 1993, at amended, 29 U.S.C. § 2601, et seq.; (l) the National Labor Relations Act, 29 U.S.C. § 151, et seq.; (m) the Workers Adjustment and Retraining Notification Act (WARN), 29 USC § 2100 et. seq., as amended; (n) any state wage payment statutes; and (o) any and all other federal, state and local statutes, ordinances, regulations, rules and other laws, and any and all claims based on constitutional, statutory, common law or regulatory grounds, as well as any other claims based on theories of wrongful or constructive discharge, breach of contract or implied contract, fraud, misrepresentation, promissory estoppel or intentional and/or negligent infliction of emotional distress, or damages under any other federal, state or local statutes, ordinances, regulations, rules or laws. This release is for any and all legal, equitable and/or other relief, no matter how denominated, including, but not limited to, back pay, front pay, vacation pay, bonuses, compensatory damages, tortious damages, liquidated damages, punitive damages, damages for pain and suffering, and attorney fees and costs, and the Named Plaintiff hereby forever releases, discharges, and agrees to indemnify and hold harmless the Released Parties from any and all claims for attorney fees, costs, and expenses arising out of the matters released in this Settlement Agreement. Named Plaintiff also agrees that, to the extent permitted by law, if a claim is prosecuted in his name against one of the Released Parties before any court or administrative

agency, he waives and agrees not to take, any award of money or other damages from such proceeding. Plaintiff agrees that, unless otherwise compelled by law, if a claim is prosecuted in his name against one of the Released Parties that he will immediately request in writing that the claim on his behalf be withdrawn.

Upon executing this Agreement, Named Plaintiff shall have seven days in which he may revoke this release only as it pertains to their ADEA claims. The ADEA release shall not be enforceable as to Named Plaintiff until this revocation period has expired without Named Plaintiff exercising his right of revocation. Notice of the revocation of this Agreement must be in wiring and delivered or emailed to Christopher J. Eckhart, Scopelitis, Garvin, Light, Hanson & Feary, P.C., 10 West Market Street, Suite 1400, Indianapolis, IN 46204, ceckhart@scopelitis.com, no later than 10:00 a.m. Eastern Time on the next business day following the expiration of the seven-day period.

## VI.    CLAIMS ADMINISTRATION COSTS AND EXPENSES; FUNDING OF SETTLEMENT

### 1.    The Settlement Administrator's Costs and Expenses.

All costs and expenses due the Settlement Administrator in connection with its administration of the Settlement, including, but not limited to, providing the Collective Notice, locating Collective Members, processing Opt-Out Forms, and administering and distributing settlement payments, shall be paid from the Gross Settlement Amount and are not anticipated to exceed $12,000.

### 2.    Payment by Defendant of the Gross Settlement Amount.

Within 14 days after the Final Effective Date, Defendant will pay the Gross Settlement Amount to the Settlement Administrator by wire transfer.

## VII.    NOTICE TO COLLECTIVE MEMBERS AND CLAIMS ADMINISTRATION

1.    __Settlement Administrator's Duties.__

As provided below, Defendant shall provide a list of Collective Members which shall contain the most current contact information Defendant possesses as to each Collective Member. The Settlement Administrator will be checking such contact information against the National Change of Address Database; Calculating the Estimated Individual Settlement Amounts and including same in the Collective Notice; mailing the Collective Notice to Collective Members, which will include the Collective Members' Estimated Individual Settlement Amounts; handling inquiries from Collective Members concerning the Collective Notice or any other issue related to the Settlement; and determining Individual Settlement Amounts or any other issue, preparing, administrating and distributing settlement checks, and performing such other duties as the Parties may direct.

On a weekly basis, the Settlement Administrator will provide reports to Plaintiffs' Counsel and Defense Counsel updating them as to the number of validated, timely received Opt-Out Forms as well as any disputes of Estimated Individual Settlement Amounts or objections submitted by Settlement Collective Members. The Settlement Administrator will serve on Plaintiffs' Counsel and Defense Counsel via e-mail date-stamped copies of the original Opt-Out Request Forms, disputes, objections, and any withdrawals of objections no later than seven days after their receipt. Within 14 days after the Opt-Out Deadline, but no later than 14 days before the Final Approval and Fairness Hearing, or as soon thereafter as practicable, the Settlement Administrator will provide Plaintiffs' Counsel with a declaration of due diligence and proof of mailing of the Collective Notice, the Notice of Estimated Individual Settlement Amounts, and the Opt-Out Request Form, along with information as to the number of Opt-Outs and Objections Received, which Plaintiffs' Counsel will file with the Court no later than seven days prior to the Court's Final

Approval and Fairness Hearing. Within 14 days after the Opt-Out Deadline, or as soon thereafter as practicable, the Settlement Administrator will compile and deliver to Plaintiffs' Counsel and Defense Counsel a final report with information regarding the final pro rata portion of each Settlement Collective Member and the final number of Opt-Outs.

2.    **List of Settlement Collective Members.**

Defendant shall provide a list to the Settlement Administrator within 14 days after entry and service of an Order Granting Preliminary Approval of this Settlement (Collective Member List). The Collective Member List will identify each Collective Member, his or her social security number or federal employer identification number (if available), last known mailing address, last known email address on record (if available), and last known telephone number on record (if available). However, in the interest of protecting the privacy of the Collective Members, the Collective Member List provided to Plaintiffs' Counsel will be redacted to remove the social security numbers of the Collective Members. To the extent that Plaintiffs' Counsel have a legitimate case-related need for any Collective Member's social security number, the Settlement Administrator will release that information on request from Plaintiffs' Counsel. The Collective Member List also will contain the number of Qualifying Weeks Worked credited to each Collective Member for purposes of the Settlement Administrator calculating the Estimated Individual Settlement Amounts. The Collective Member List shall be marked "Confidential – Attorney's and Settlement Administrator's Eyes Only." Plaintiffs' Counsel represents, warrants, covenants and agrees that (a) Plaintiffs' Counsel shall hold the Collective Member List, including any copies thereof, in strictest confidence and shall not disclose or divulge its contents to any Collective Member, including Plaintiff, or to any third party other than the Settlement Administrator; (b) the Collective Member List shall be kept in secure facilities; and (c) the contents

of the Collective Member List shall be used exclusively for administration of the Settlement pursuant to this Agreement and for no other purpose, including, but not limited to, fact-gathering, or discovery. This provision does not preclude Plaintiffs' Counsel from speaking with Collective Members. Likewise, within 14 days after entry and service of an Order Granting Preliminary Approval of this Settlement, Plaintiffs' Counsel will provide to the Settlement Administrator and Defendant any self-reported changes to the addresses of the Collective Members provided to Plaintiffs' Counsel in a Consent Form or through other contact between Plaintiffs' Counsel and the Collective Members. Plaintiffs' Counsel and/or the Settlement Administrator will have sole responsibility for updating the Collective Member List based on any self-reported changes to the addresses of the Collective Members provided to Plaintiffs' Counsel in a Consent Form or through other contact between Plaintiffs' Counsel and the Collective Members.

   **3.** **Notice of Collective Action Settlement.**

      **a.** **Form of Notice.**

The Collective Notice is attached hereto as **Exhibit 1**.

      **b.** **Distribution of Notice.**

Within 14 days after the Settlement Administrator receives the Collective Member List from Defendant and any self-reported address updates from Plaintiffs' Counsel, the Settlement Administrator shall process the Collective Member List against the National Change of Address Database maintained by the U.S. Postal Service ("USPS"). The Settlement Administrator will then mail to all Collective Members, via first-class U.S. mail, the Collective Notice.

      **c.** **Returned or Undeliverable Notices.**

It shall be presumed that, if the Collective Notice is not returned as undeliverable, the Settlement Collective Member received the Collective Notice. With respect to any Collective Notice

returned as undeliverable, if forwarding addresses are provided by the USPS, the Settlement Administrator shall immediately re-mail the Collective Notice.  If an undeliverable Collective Notice is returned without a forwarding address, the Settlement Administrator shall use standard skip-tracing devices based on Lexis/Nexis or similar databases to obtain updated address information, and shall re-mail the Collective Notice to those Settlement Collective Members.  The skip tracing shall include all returned envelopes received during the 60-day period after the initial mailing.  Collective Notices shall only be re-mailed once; if the Collective Notice is returned after re-mailing, there shall be no further skip tracing, and it shall be presumed that the Settlement Collective Member cannot be located or has declined to respond.

### d.    Toll-Free Number

The Settlement Administrator shall set up a toll-free number to respond to inquiries from Settlement Collective Members.

### e.    Non-Receipt of Notice.

In the event the procedures set forth herein are followed and the intended Collective Member of a Collective Notice later asserts that he or she did not receive the Collective Notice, the Collective Member will remain a Settlement Collective Member and will be bound by all terms of this Agreement and the order granting final approval entered by the Court. To the extent any funds remain in the Reserve Fund or before disbursement to the cy pres recipient under Paragraph IX.3, the Settlement Administrator will make payment to the Settlement Collective Member from those remaining funds. However, regardless whether or not a Collective Member receives notice or receives payment, they are bound by the judgment and the release.

### 4.    <u>Opt-Out and Objection Procedure.</u>

The Collective Notice will notify all Collective Members of their right to Opt-Out of the Settlement. For a Collective Member to request exclusion from this Agreement, the Opt-Out Request must be postmarked no later than the Opt-Out Deadline. If an initial Collective Notice is returned as undeliverable, and Collective Notice is remailed to a different address, that Collective Member shall have an additional 14 days to file an Opt-Out Request beyond the Opt-Out Deadline. A Collective Member may ask the Settlement Administrator for a substitute Collective Notice and file an Opt-Out Request any time up to the Opt-Out Deadline. A Collective Member who files an Opt-Out Request with the Settlement Administrator is not eligible for any recovery under the Agreement.

The Settlement Administrator shall maintain a list of persons who have excluded themselves, and shall provide such list to the Parties upon request and at the end of the Objection Deadline and Opt-Out Deadline. The Settlement Administrator shall retain the originals of all Opt-Out Letters (including the envelopes with the postmarks or the equivalent for electronically filed forms) received from Settlement Collective Members, and shall make copies or the originals available to Defense Counsel or Plaintiffs' Counsel upon request. Upon concluding its duties, the Settlement Administrator shall provide the original Opt-Out Letters to Plaintiffs' Counsel, and Plaintiffs' Counsel shall file a list of all Opt-Outs with the Court. Collective Members who timely and validly opt out agree that by excluding themselves they are withdrawing their opt in consent to participate in the collective action and their act of doing so will not prevent the Court from entering a final judgment on all pending claims, including dismissal of the Opt-Outs without prejudice. Any opt-outs dismissed without prejudice in this manner will have the statute of limitations of the FLSA claims asserted herein tolled from the date their consent form was filed with this Court, through 60 days after the date they are dismissed.

Those Collective Members who have not returned a complete Opt-Out Request by the Opt-Out Deadline shall share in the distribution of the Net Settlement Amount of the Gross Settlement Amount and shall be bound by the dismissal with prejudice of this Action and the release of Released Claims set forth in Section V of this Agreement.

    **5.**     **Objections.**

A Settlement Collective Member who wishes to object to the settlement must send a written notice of objection to the Settlement Administrator (who shall promptly provide the same to Defense Counsel and Plaintiffs' Counsel), postmarked or electronically filed on or before the Objection Deadline. Plaintiffs' Counsel will file with the Court any timely Objections received from the Settlement Administrator. Additionally, a Settlement Collective Member may file a written notice of objection directly with the Court. Instructions regarding how to object are found within the Notice. Settlement Collective Members who fail to mail or file a timely written objection shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the settlement. Settlement Collective Members who file Opt-Out Letters may not object to the settlement, whether by appeal or otherwise.

**VIII.**     **NULLIFICATION OF THIS AGREEMENT**

    **1.**     **Non-Approval of the Agreement.**

If (a) the Court should for any reason decline to approve this Agreement in the form agreed to by the Parties, (b) the Court should for any reason fail to enter a judgment and dismissal with prejudice of the Action, or (c) the judgment and dismissal is reversed, modified, or declared or rendered void, then the Settlement shall be considered null and void, and neither the Settlement nor any of the related negotiations or proceedings shall be of any force or effect, and the Parties shall stand in the same position, without prejudice, as if the Settlement had been neither entered into nor filed with the Court. Notwithstanding the foregoing, the Parties may attempt in good faith to cure any perceived defects in the Agreement to facilitate approval.

       **2.**    **Apportionment of Settlement Administrator Charges in the Event of Settlement Failure.**

If the Settlement is not approved, any unused amount from the deposit shall be returned to Defendant by the Settlement Administrator, and Plaintiffs' Counsel shall reimburse Defendant for one-half of the portion of the amount expended by the Settlement Administrator for expenses.

**IX.**    **COURT FINAL APPROVAL OF SETTLEMENT**

       **1.**    **Final Approval.**

In connection with the motion for final approval and the Final Approval and Fairness Hearing provided for in this Agreement, the Parties will submit a proposed final order: (a) approving the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions; (b) approving Plaintiffs' Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses as described in Article IV, Paragraph 1 of this Agreement; (c) approving the Service Fees, if any, to Named Plaintiff and Discovery Collective Members; (d) approving all payments to the Settlement Administrator for costs of administering the Settlement; and (e) requesting entry of judgment thereon.

       **2.**    **Defendant's Duty to Fund Settlement.**

Within 14 days following the Final Effective Date, Defendant shall transmit to the Settlement Administrator the Gross Settlement Amount, less any amounts already advanced to the Settlement Administrator, which will be used to pay (a) the Settlement Payments for all Settlement Collective Members; (b) the total amount of Service Fees to Named Plaintiff and Discovery Collective Members as approved by the Court; (c) all settlement administration costs to the Settlement Administrator; and (d) the total amount of Plaintiffs' Counsel's attorney fees and litigation costs and expenses approved by the Court.

3. __Payments to and on Behalf of Settlement Collective Members.__

Within 30 days of receiving the Gross Settlement Amount, the Settlement Administrator shall issue Individual Settlement Amount payments to the Settlement Collective Members. If a Settlement Collective Member is deceased at the time the payment is issued, payment shall be made payable to the Settlement Collective Member's estate and delivered to the executor or administrator of that estate. Within 14 days of making the payments, the Settlement Administrator shall file with the Court and serve on Plaintiffs' Counsel and Defense Counsel a declaration of payment.

Each Settlement Collective Member must cash his or her Individual Settlement Amount check within 120 days after it is mailed to him or her. If a check is returned to the Settlement Administrator, the Settlement Administrator may make such efforts, if any, as it deems to be reasonable to re-mail it to the Settlement Collective Member at his or her correct address. Re-mailed settlement checks will have a void date of either 120 days after the initial check mailing date or 60 days after re-mailing, whichever is later. A Settlement Collective Member may request a reissued check and such check shall be reissued, even if the request is late, so long as the Administrator is still holding the settlement funds. If the check remains uncashed by the expiration of the most-recently issued settlement check, the Settlement Administrator will send any remaining funds to a *cy pres* beneficiary, the St. Christopher's Truckers Fund, a 501(c)(3) charity which provides money to truck drivers in a financial crisis to be mutually agreed upon by the Parties and approved by the Court. In such event, the Settlement Collective Member will nevertheless remain bound by the Settlement.

If any Settlement Collective Member timely disputes his or her Estimated Individual Settlement Amount by the Dispute Deadline, such dispute shall be referred to Plaintiffs' Counsel.

Plaintiffs' Counsel shall investigate the dispute. The Defendant agrees to cooperate fully and in good faith with such investigation and provide reasonably available information sufficient to determine the validity of the dispute. After investigation, if the Parties deem the dispute substantiated, the Settlement Administrator shall calculate the Individual Settlement Amount accounting for the substantiated dispute. To the extent the Parties disagree as to the validity of the dispute, the Settlement Administrator will make the final decision as to the validity of the dispute.

If a Settlement Collective Member submits an untimely dispute and the Settlement Administrator cannot recalculate the Individual Settlement Amounts before distributing payments to Settlement Collective Members, then the Settlement Administrator will use monies from the Reserve Fund to make an adjusted payment to the Settlement Collective Member if the parties deem the dispute substantiated. To the extent the Parties disagree as to the validity of the dispute, the Settlement Administrator will make the final decision as to the validity of the dispute. Should the Reserve Fund become exhausted, adjusted payments shall be made from any funds which remain from uncashed and expired settlement funds. Regardless whether or not monies remain or whether or not the Settlement Collective Member receives an adjusted payment, they are bound by the judgment and the release. In no event shall Defendant be required to pay any additional amount.

4.    **Remaining Payments.**

Within 14 days of receiving the Gross Settlement Amount, the Settlement Administrator shall issue checks to Named Plaintiff and Discovery Collective Members in the amount of the Service Fee approved by the Court, issue checks to Plaintiffs' Counsel for the attorney fees and litigation costs and expenses approved by the Court and pay all remaining settlement administration costs.

## X.    MISCELLANEOUS PROVISIONS

### 1.    Parties' Authority.

The signatories hereto, including any person executing this Agreement on behalf of a corporate signatory, warrant and represent that they are fully authorized to enter into this Agreement and bind the Parties hereto to the terms and conditions hereof. Further, Plaintiffs' Counsel represents and warrants that they are fully authorized to enter into this Agreement on behalf of the Settlement Collective Members.

### 2.    Mutual Full Cooperation.

The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendant and Defense Counsel, take all necessary steps to secure the Court's approval of the Settlement. Further, the Parties agree to abide by all of the Settlement terms in good faith and to use their best efforts to defend this Settlement from any legal challenge, whether by appeal or collateral attack.

### 3.    No Prior Assignment.

The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights released and discharged by this Agreement.

### 4.    No Admission.

Nothing contained herein, nor the consummation of this Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant or any of the other Released Parties toward Named Plaintiff, Settlement Collective Members, or any other person. Each of the Parties hereto has entered into this Agreement with the intention of avoiding further disputes and litigation with the attendant inconvenience, expenses, and contingencies. Nothing herein shall constitute any admission by Defendant of wrongdoing or liability, of the truth of any factual allegations in the Action. To the contrary, Defendant has denied and continue to deny each and every material factual allegation and each and every alleged claim asserted in the Action. To this end, the Settlement of the Action, the negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement are not, shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in the Second Amended Complaint filed in the Action; and are not, shall not be deemed to be, and may not be used as, an admission or evidence of any fault or omission on the part of Defendant in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. This Agreement is a settlement document and shall, pursuant to Federal Rule of Evidence 408, be inadmissible in evidence in any proceeding, except an action or proceeding to approve the Settlement and/or interpret or enforce this Agreement.

5.    **Enforcement Actions.**

Except as otherwise provided in this Agreement, in the event that one or more of the Parties to this Agreement institutes any legal action or other proceeding against any other Party or Parties to enforce the provisions of this Agreement or to declare rights and/or obligations under this Agreement, the successful Party or Parties shall be entitled to recover from the unsuccessful Party

or Parties reasonable attorney fees and costs, including expert witness fees, incurred in connection with any enforcement actions.

**6.    Different Facts.**

The Parties hereto, and each of them, acknowledge that, except for matters expressly represented herein, the facts in relation to the dispute and all claims released by the terms of this Agreement may turn out to be other than or different from the facts now known by each Party and/or its counsel, or believed by such Party or counsel to be true, and each Party therefore expressly assumes the risk of the existence of different or presently unknown facts, and agrees that this Agreement shall be in all respects effective and binding despite such difference.

**7.    Public Comments Regarding the Action or the Settlement. The Parties agree as follows:**

a)    Plaintiffs' Counsel shall not take any action to affirmatively report the Settlement to any publication, whether print, electronic, or otherwise. The Parties, and their respective counsel, agree that they shall not discuss with or present to the media the terms of this Agreement, the fact of the Settlement embodied in this Agreement, the disposition of the Action, the Action, and all matters relating to the litigation of the Action, including discovery proceedings therein, and evidence obtained during the course of the Action. If contacted by the press or media, Plaintiffs' Counsel may only state that the case has been resolved and may refer the media to the Court file or to the Settlement Administrator.

b)    All necessary disclosures may be made on Defendant's financial statements; to Defendant's accountants and auditors; in public filings; to government regulatory agencies; to Defendant's banks; and to any local, state, or federal taxing authority or as otherwise required by law.

**8.      No Retaliation.**

Defendant understands and acknowledges that it has a legal obligation not to retaliate against any Settlement Collective Member. Defendant will refer any inquiries regarding this Settlement to the Settlement Administrator or Plaintiffs' Counsel.

**9.      Governing Law.**

This Agreement is intended to and shall be governed by the laws of the State of Kentucky, without regard to conflict of law principles, in all respects, including execution, interpretation, performance, and enforcement.

**10.      Attorney Fees, Costs, and Expenses.**

Except as otherwise specifically provided for herein, each Party shall bear his or their own attorney fees, costs and expenses, taxable or otherwise, incurred by them in or arising out of the Action and shall not seek reimbursement thereof from any other Party to this Agreement.

**11.      Notices.**

Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be sufficiently given if delivered in person to the Party or their counsel by registered or certified mail, return receipt requested, e-mail, facsimile, or overnight delivery addressed as follows:

To Named Plaintiff or Settlement Collective Members:

    Justin L. Swidler, Esq.
    jswidler@swartz-legal.com
    Joshua S. Boyette, Esq.
    jboyette@swartz-legal.com
    Manali Arora, Esq.
    marora@swartz-legal.com
    Swartz Swidler, LLC
    1101 Kings Highway N, Suite 402
    Cherry Hill, NJ 08034

Phone: (856) 685-7420
Fax: (856) 685-7417

<u>To Defendant</u>:

Christopher J. Eckhart
ceckhart@scopelitis.com
James A. Eckhart
jeckhart@scopelitis.com
Scopelitis Garvin Light Hanson & Feary, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
Phone: (317) 637-1777
Fax: (317) 687-2414

Lori J. Keen
lkeen@millerlaw-firm.com
Miller Hahn, PLLC
2660 West Park Drive, Suite 2
Paducah, KY 42001
Phone: (270) 554-0051
Fax: (866) 578-2230

## 12.    <u>Construction.</u>

The Parties hereto agree that the terms and conditions of this Agreement are the result of lengthy, intensive arms' length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or any Party's counsel participated in the drafting of this Agreement.

## 13.    <u>Captions and Interpretations.</u>

Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof. Each term of this Agreement is contractual and not merely a recital.

## 14.    <u>Modification.</u>

This Agreement may not be changed, altered, or modified, except in writing and signed by the Parties hereto and approved by the Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by all of the Parties hereto.

15.    **Integration Clause.**

This Agreement contains the entire agreement between the Parties relating to the Settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein. No rights hereunder may be waived except in writing.

16.    **Binding Effect.**

This Agreement shall be binding upon and inure to the benefit of Named Plaintiff and Settlement Collective Members, and their heirs, trustees, executors, administrators, successors and assigns and to the benefit of Defendant and the Released Parties, and their present and former, parent companies, subsidiaries, divisions, affiliates, related companies, joint ventures, and each of their respective present and former officers, directors, shareholders, agents, employees, insurers, attorneys, accountants, auditors, advisors, representatives, consultants, pension and welfare benefit plans, plan fiduciaries, administrators, trustees, general and limited partners, predecessors, successors and assigns, although not specifically named herein.

17.    **Signatures of All Settlement Collective Members Unnecessary to be Binding.**

It is agreed that, because the members of the Settlement Collective are numerous, it is impossible or impractical to have each Settlement Collective Member execute this Agreement. It is agreed that, for purposes of seeking approval of the Settlement, this Agreement may be executed

on behalf of the Collective by Plaintiffs' Counsel and Named Plaintiff and that Settlement Collective Members will be bound by the Agreement.

      18.    **<u>Counterparts.</u>**

      This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one fully-signed Agreement, which shall be binding upon and effective as to all Parties.

*[Remainder of page left intentionally blank]*

IN WITNESS WHEREOF, the Parties and their counsel have executed this Agreement on the date below their signature or the signature of their representatives. The date of the Agreement shall be the date of the latest signature.

Gale Carter                                      Paschall Truck Lines, Inc.

_____       By:_____

Dated: _____              _____
                                               Printed Name and Title

                                               Dated: _____


SWARTZ & SWIDLER                         SCOPELITIS GARVIN LIGHT HANSON & FEARY P.C.

By:_____        By:_____
    Joshua S. Boyette,                       Christopher J. Eckhart,
    Attorney for Named Plaintiff and Opt-In   Attorney for Defendant
    Plaintiffs


Dated: _____              Dated: _____


4890-7529-3613,
4890-7529-3613, v. 15