UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

GALE CARTER, ET AL.                                                                 PLAINTIFFS

v.                                                                      No. 5:18-cv-41-BJB

PASCHALL TRUCK LINES, INC., ET AL.                                        DEFENDANTS

\* \* \* \* \*

OPINION & ORDER PRELIMINARILY APPROVING SETTLEMENT CLASS &
AUTHORIZING NOTICE

Gale Carter and Forbes Hays are former drivers for Paschall Truck Lines, a national motor carrier that provides shipping across the continental United States. PTL hires both employees and independent contractors to drive for it. Carter and Hays[1] sued PTL under the Fair Labor Standards Act, alleging that it misclassified them as independent contractors and therefore failed to pay them the minimum wage.[2] They also sought to represent other similarly situated PTL drivers, and the Court conditionally certified (DN 161) an FLSA collective action in April 2019. According to the Plaintiffs, about 1,000 drivers have filed consent forms to opt in to the collective action. Brief Supporting Preliminary Approval of Collective-Action Settlement (DN 314-3) at 1. After several years of discovery and settlement discussions, the parties reached a proposed settlement agreement and asked this Court to preliminarily approve it. *Id.* at 1–2.[3]

---

[1] Hays later withdrew from the suit. *See* DN 254.

[2] This case previously included putative class claims asserting violations of the Federal Forced Labor Statute and the Truth-in-Leasing Act. *See* Brief Supporting Preliminary Approval of Collective-Action Settlement (DN 314-3) at 1. This motion, though, only involves the FLSA claim.

[3] "The Sixth Circuit has yet to rule definitively on the question" whether the FLSA *requires* court approval of settlement agreements. *Steele v. Staffmark Investments, LLC*, 172 F. Supp. 3d 1024, 1026 (W.D. Tenn. 2016). The parties have asked the Court to preliminarily approve their settlement of this FLSA case, consistent with the general practice in this judicial district. *See, e.g., Mitcham v. Intrepid U.S.A., Inc.*, No. 3:17-cv-703, 2019 WL 5496023, at \*2 (W.D. Ky. May 28, 2019) ("As a general rule, employees' claims under the FLSA are non-waivable and may not be settled without supervision of either the Secretary of Labor or a district court.") (quoting *Gentrup v. Renovo Services., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at \*2 (S.D. Ohio Jun. 24, 2011)); *Ross v. Jack Rabbit Services, LLC*, No.

1

Preliminary approval would authorize Plaintiffs' counsel to give notice of the proposed settlement to collective members, provide collective members a chance to object or opt out of the settlement, and set a final fairness hearing. *See* FED. R. CIV. P. 23, Advisory Committee Notes to 2018 Amendments. At that hearing, this Court would decide whether final approval is warranted after considering any objections and the requirements of the Federal Rules and due process. If ultimately approved, this settlement would bind all collective members.

Preliminary approval of a proposed FLSA settlement requires the reviewing court to "determine whether the settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Thompson v. Seagle Pizza, Inc.*, No. 3:20-cv-16, 2022 WL 1431084, at *4 (W.D. Ky. May 5, 2022) (quotation marks omitted). Because the Plaintiffs' motion for preliminary approval establishes that the settlement both resolves a bona fide dispute and is fair and reasonable, the Court will grant the motion and authorize notice as described below.

### I. The settlement resolves a bona fide dispute.

"A federal district court approving any settlement of claims must determine whether a bona fide dispute exists to ensure that plaintiff employees have not"—at least not without good cause— "relinquished their rights to compensation guaranteed by the statute." *Love v. Gannett Co. Inc.*, No. 3:19-cv-296, 2021 WL 4352800, at *1 (W.D. Ky. Sept. 24, 2021) (quoting *Ross v. Jack Rabbit Services, LLC*, No. 3:14-cv-44, 2016 WL 7320890, at *2 (W.D. Ky. Dec. 15, 2016)). "Without a bona fide dispute, no settlement could be fair and reasonable. Thus, some doubt must exist that Plaintiffs would succeed on the merits through litigation of their claims." *Id.* (quoting *Ross*, 2016 WL 7320890, at *2).

The hard-fought litigation in this case leaves little doubt about the existence of a bona fide dispute. The parties have been litigating since 2017. Even today they continue to dispute whether the drivers were employees. Brief Supporting Preliminary Approval at 11, 15–16. Even assuming employee status, PTL continues to deny it violated the FLSA. Settlement Agreement (DN 314-1) at 14. Other significant unresolved issues about the extent of potential liability remain: what constitutes work time under the FLSA (a determination critical to FLSA damages liability), whether PTL acted willfully and should be subject to an extra year of FLSA liability, whether PTL can show that it acted in good faith and should be relieved of liquidated damages, and whether any Plaintiffs are entitled to equitable tolling? Brief Supporting Preliminary Approval at 16–17. This proposed settlement plainly resolves a bona fide dispute. *See Burnham v. Papa John's Paducah, LLC*, No. 5:18-cv-112, 2020 WL 2065793, at *1 (W.D. Ky. Apr. 29, 2020).

---

3:14-cv-44, 2016 WL 7320890, at *2 (W.D. Ky. Dec. 15, 2016) ("[C]ourts in the Sixth Circuit require a settlement agreement under the FLSA to be approved by the court.").

**II. The settlement is a fair, reasonable, and adequate resolution of the dispute.**

Courts in this circuit apply the same fairness analysis to settlement agreements in the FLSA context that they do in the class-action context under Rule 23 of the Federal Rules of Civil Procedure. *See, e.g.*, *Mitcham v. Intrepid U.S.A., Inc.*, No. 3:17-cv-703, 2019 WL 5496023, at *2 (W.D. Ky. May 28, 2019.

A district court may approve a settlement proposal "only after a hearing" and "only on finding that it is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). The question at the preliminary-approval stage is "simply whether the settlement is fair enough that it is worthwhile to expend the effort and costs associated with sending [collective] members notice and processing opt-outs and objections." *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020) (citing NEWBERG ON CLASS ACTIONS § 13:10 (5th ed.)). Preliminary approval may establish "an initial presumption of fairness," but "does not inexorably result in final approval." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 603 (3d Cir. 2010) (Smith, J., dissenting) (quotation marks omitted).

When deciding whether to preliminarily approve a classwide settlement, courts in this circuit consider two sets of factors—one articulated in 2018 by the Rules Committee in FED. R. CIV. P. 23(e)(2)(A)–(D) and another similar set, known as the *UAW* factors, as described in *International Union, United Auto., Aerospace, & Agricultural Implement Workers of America v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ("UAW"). *See, e.g.*, *Does 1-2 v. Deja Vu Services, Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019).[4] The "burden of proving the fairness of the settlement is on the proponents." *In re Dry Max Pampers Litigation*, 724 F.3d 713, 719 (6th Cir. 2013) (quoting 4 NEWBERG ON CLASS ACTIONS § 11:42 (4th ed.)).

Largely for the reasons set forth in the Plaintiffs' submission (DN 314-1) and elaborated during a telephonic hearing (*see* DN 318), the Court "will likely be able to approve the proposal under Rule 23(e)(2)." FED. R. CIV. P. 23(e)(1)(B)(i). The settlement appears fair enough under both the Rule 23(e) and *UAW* factors to warrant notice to the collective members and proceed to a final fairness hearing.

---

[4] The Rules Advisory Committee amended Rule 23(e) in 2018 to specify the factors relevant to evaluating a proposed classwide settlement. The Committee noted that "each circuit has developed its own" list of factors to consider in approving class action settlements; the amendment, it noted, was not intended to "displace any factor," but rather to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *See* FED. R. CIV. P. 23 (Advisory Committee Notes to the 2018 Amendments). Courts within this circuit asking whether a classwide settlement is "fair, reasonable, and adequate" under Rule 23(e) have accordingly interpreted the revised Rule 23(e)(2) to complement, rather than supplant, the factors previously articulated in Sixth Circuit precedent. *See, e.g.*, *In re Family Dollar Stores Inc.*, No. 2:22-md-3032, 2023 WL 7112838, at *10 (W.D. Tenn. Oct. 27, 2023).

**A. Rule 23(e) factors.** Rule 23(e) permits courts to approve class-action settlements only if they satisfy four conditions: adequate representation by class (or here, collective) representatives and counsel, arm's-length negotiation, adequate relief under the circumstances, and equitable treatment of class members relative to each other. *See* FED. R. CIV. P. 23(e)(2)(A)–(D).

The record supports a finding that the collective has been adequately represented in arm's-length negotiation. Plaintiffs' counsel—attorneys with significant experience specializing in litigating trucking class and collective actions—have actively litigated the matter for more than six years, including mediation before an experienced class-action mediator. Brief Supporting Preliminary Approval at 8–9. Courts presume a settlement resulting from "extensive negotiations by experienced counsel" is fair. *In re Inter-Op Hip Prosthesis Liability Litigation*, 204 F.R.D. 330, 351 (N.D. Ohio 2001).

The settlement agreement also appears to provide adequate relief to collective members. The Plaintiffs calculate their potential recovery under various scenarios at around $300,000, $2.6 million, or $6.2 million.[5] The settlement agreement allows them to recover an amount in between—$1,175,000. Settlement Agreement at 15.

The final factor—equitable treatment of collective members—will merit more consideration at the final fairness hearing. The Settlement Agreement grants a $10,000 service award to Carter and $500 each to four collective settlement members who were deposed in the matter. *Id.* at 19. The Sixth Circuit has held that a settlement agreement may, in some circumstances, be inequitable if it "'gives preferential treatment to the named plaintiffs." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013) (quoting *Williams v. Vukovich*, 720 F.2d 909, 925 n.11 (6th Cir. 1983)). More recently, the Sixth Circuit warned that "we should be most dubious of incentive payments when they make the class representatives whole, or … even more than whole; for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief." *In re Dry Max Pampers Litigation*, 724 F.3d at 722. Under that rejected settlement, the class representatives received a service award of $1000 per child, while absent class members received no monetary relief. *Id.* at 716. Here, Carter would receive ten times that amount, though absent class members should at least receive something: an average of about $733.[6] Given that Carter worked for

---

[5] The differences depend on whether the Court would decide on a two-year or three-year limit, whether it would award liquidated damages, and whether it would award an additional 18 months of equitable tolling. The first scenario follows if PTL wins on all three points. The second scenario follows if the Court awards Plaintiffs three years and liquidated damages. The third adds another 18 months of equitable tolling. *See* Brief Supporting Preliminary Approval at 10.

[6] After attorneys' fees (1/3), and litigation costs (not to exceed $50,000), Settlement Agreement at 5, the settlement amount available to the collective would be around $733,000.

4

PTL for three months at most—"from in or around October of 2015 to in or around December of 2015," Amended Complaint (DN 103) ¶ 72—his actual damages are surely far less than $10,000. As a result, the service award would make him "more than whole." The initial request for preliminary approval does not explain what the service award compensates Carter for, though it states elsewhere that it had "multiple meetings and conferences" with him. Settlement Agreement at 12.

Despite general suspicion of service awards,[7] this particular settlement still appears to fall "within the range of possible approval," which is all that is required at this preliminary stage. *In re High-Tech Employee Antitrust Litigation*, No. 11-cv-2509, 2014 WL 3917126, at *3 (N.D. Cal. Aug, 8, 2014) (quotation marks omitted). But given the caselaw and considerations noted above, this issue deserves consideration before or during the final fairness hearing.

**B.  *UAW* factors.** The Sixth Circuit requires courts to consider seven related factors: the (1) risk of fraud or collusion; (2) complexity, expense and likely duration of the litigation, (3) amount of discovery engaged in by the parties; (4) likelihood of success on the merits; (5) opinions of class counsel and class representatives; (6) reaction of absent class members; and (7) public interest. *Déjà Vu*, 925 F.3d at 894–95.

*First*, absent evidence of fraud or collusion, the Court may presume none exists. *See Dick v. Sprint Communications Co.*, 297 F.R.D. 283, 295 (W.D. Ky. 2014). No evidence here suggests fraud or collusion. The parties reached their agreement after six years of litigation along with mediation sessions led by a well-respected mediator. Brief Supporting Preliminary Approval at 8. Such negotiation with an independent mediator's involvement "virtually insures" no collusion between the parties. *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008).

*Second*, further motions practice presents a "significant ris[k]" to the success of the collective action. Before the settlement agreement, the parties were still disputing the scope of remaining discovery, which would "likely result in at least an additional two dozen depositions and additional written discovery from Opt-In Plaintiffs." Brief Supporting Preliminary Approval at 11. Expert discovery is still not complete. *Id.* And then a complex trial would ensue, involving testimony from dozens of witnesses. *Id.* Even if the collective won at trial, appeals would further

---

With about 1,000 collective members, that averages to $733 per member. Plaintiffs' counsel verified this estimate at the hearing—estimating a mean payout of $700 to $750. DN 318.

[7] *See Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020) (holding that incentive awards to compensate class representatives for their time and reward them for bringing a lawsuit are unlawful); *but see Scott v. Dart*, 99 F.4th 1076, 1083 (7th Cir. 2024) (holding that "even modest services justify an incentive award").

"delay meaningful relief." *Dick*, 297 F.R.D. at 295. Settlement avoids these risks and delays.

*Third*, the parties have engaged in substantial investigation of the claims and enough discovery to ensure that they are well informed and have sufficient information to reach a settlement that is fair, reasonable, and adequate. They have exchanged "[h]undreds of thousands of pages of documents and millions of data-points" to help them both "assess and argue the strengths and weaknesses of their respective positions" and calculate a reasonable settlement amount. Brief Supporting Preliminary Approval at 8.

*Fourth*, the Plaintiffs' likelihood of success on the merits is uncertain. To collect more than the amount in the settlement agreement, if anything at all, the Plaintiffs would have to withstand PTL's likely motion to decertify the collective action, then win disputes about whether the drivers should have been classified as employees and that they should be awarded a three-year accrual period (rather than two) because PTL's violations were willful. *See id.* at 10–12. In light of those risks, the settlement agreement provides the collective a reasonable tradeoff: some relief now in exchange for not pursuing more. They get to "control the resolution of this dispute through negotiation today rather than litigation tomorrow." *UAW*, 497 F.3d at 632.

*Fifth*, Plaintiffs' counsel and the named plaintiff representing the collective both support the settlement. *See* Brief Supporting Preliminary Approval at 14; *Green v. Platinum Restaurants Mid-America LLC*, No. 3:14-cv-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022) (support of counsel and class representatives weighs in favor of settlement approval).

The *sixth* factor—reaction of absent class members—does not weigh for or against the settlement at this stage. No objectors have surfaced, though that is perhaps to be expected given the lack of notice to date.[8] The final approval hearing will be the more appropriate time to consider this factor.

*Seventh*, and finally, approving the settlement under Rule 23(e) would align with the pro-settlement policy followed by the Sixth Circuit and other courts, *Deja Vu*, 925 F.3d at 899, and would further familiar interests in judicial economy, speedy recovery, and harmony between erstwhile adversaries.

Because several of the *UAW* factors weigh in favor of approval and none weighs against, the Court "will likely be able to approve the proposal under Rule 23(e)(2)."

---

[8] "Any class member may object to the proposal if it requires court approval …." FED. R. CIV. P. 23(e)(5)(A). Class members "who claim the mantle of 'objector' usually do so in the context of opposing the terms of a proposed settlement," though they may object at any time "prior to a settlement's [final] approval." *In re Nat'l Prescription Opiate Litigation*, 976 F.3d 664, 699, 700 n.38 (6th Cir. 2020) (Moore, J. dissenting).

**C. The nature of the *cy pres* recipient remains unclear.** One other potential issue may merit attention at or before the final fairness hearing: the Settlement Agreement proposes to distribute uncollected funds from the settlement to a *cy pres* recipient—St. Christopher's Truckers Fund. Settlement Agreement at 28. The agreement states that the fund is "a 501(c)(3) charity which provides money to truck drivers in a financial crisis," *id.*, but the record contains no other information about the organization. Before a Court order directs money to a charity that would otherwise go to claimants, Plaintiffs' counsel should provide more information about the nature of that organization.

## ORDER

1. Unless otherwise defined, all terms that are capitalized shall have the meanings ascribed to those terms in the Settlement Agreement.

2. The Court finds on a preliminary basis that the settlement ("Settlement") memorialized in the "Settlement Agreement" is fair, reasonable, and adequate.

3. Per the request of the Parties, the Court appoints Simpluris as the Settlement Administrator.

4. The Court approves the form and content of the proposed Notice to be mailed to the Collective describing the terms of the settlement and process by which Collective Members may exclude themselves from the settlement or object to it.

5. According to the terms of the Settlement at § VII(2), the Court directs the Defendant to give the Settlement Administrator and Plaintiffs' Counsel a list, in electronic form, containing the name, last known address, and any other necessary identifying information of each eligible Collective Member ("Collective Member List"), within 14 days of the date of this Order.

6. According to the terms of the Settlement at § VII(2), the Court directs Plaintiffs' Counsel to give the Settlement Administrator and Defendant any self-reported changes to the addresses of Collective Members provided to Plaintiffs' Counsel in a consent form or through other contact between Plaintiffs' Counsel and Collective Members, within 14 days of this Order.

7. According to the terms of the Settlement at § VII(3), the Court directs the Settlement Administrator to mail the Notices to the Collective Members within 14 days of receipt of the Collective List, after processing the list according to the terms of the Settlement.

8. According to the terms of the Settlement at § VII(4), any Eligible Collective Member may opt out of the Settlement by submitting an Opt-out Letter within 45 days of the date the Settlement Administrator mails the Notice, or, if an initial Collective Notice is returned as undeliverable, and a substitute Collective Notice is remailed to a different addresses, within 59 days of the date the Administrator mailed the original notice.

9. According to the terms of the Settlement at § VII(4)–(5), any Eligible Collective Member may object to the Settlement by submitting an Objection to the Settlement Administrator, Plaintiffs' Counsel, or by filing the Objection directly with this Court, within 45 days of the date the Settlement Administrator mails the Notice, or, if an initial Collective Notice is returned as undeliverable, and a substitute Collective Notice is remailed to a different addresses, within 59 days of the date the Administrator mailed the original notice.

10. According to the terms of the Settlement at § VII(4)–(5), the final date for any Eligible Class Member to file an Opt-out Statement or Objection is the first business day following 59 calendar days after the Settlement Administrator mailing the Notice (the "Opt-out Period").

11. According to the terms of the Settlement at § VII(3)–(4), the Settlement Administrator shall serve on Plaintiffs' and Defendants' counsel a list of all Opt-Outs and a copy of all Objections received, whether timely or not, by not later than three business days after the conclusion of the Opt-out Period, at which time Plaintiffs' Counsel shall file all timely objections and the number of timely opt-outs with the Court.

12. Plaintiffs' Counsel shall file a Motion for Order Granting Final Approval of the Settlement no later than 14 days before the Final Fairness Hearing.

13. A hearing, for purposes of determining whether the Settlement should be finally approved, shall be held before this Court on **Tuesday, July 29, 2025 at 9:30 a.m.** at the U.S. District Court for the Western District of Kentucky, Gene Snyder United States Courthouse, 601 West Broadway, Louisville, KY 40202. At the hearing, the Court will hear arguments concerning whether the proposed Settlement of the Action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court. The Court will consider any objections that may be filed, as well as Plaintiffs' Counsel's request for an award of attorneys' fees and costs and for a Service Award to be made to Named Plaintiff and four other opt-in Plaintiffs who provided deposition testimony.

14. Pending the Court's decision on final approval of the Settlement and entry of the Court's Final Approval Order, Plaintiff and all Collective Members who do not timely submit valid Opt Outs, and anyone acting on any of their behalf, shall be barred and enjoined from: (a) further litigation in this case; and (b) filing or taking any action directly or indirectly to commence, prosecute, pursue, or participate on an individual or class or collective action basis of any action, claim, or proceeding against any Defendant in any forum in which any of the claims released in the Settlement Agreement are asserted, or which in any way would prevent any such claims from being extinguished.

15. Upon the Effective Date, the Litigation shall be dismissed with prejudice and all Released Claims of Named Plaintiffs and the Collective shall be released, and the Named Plaintiff and each Collective Member shall be deemed to have, and by operation of the Final Order and Judgment shall have, released, waived, and forever discharged the Releasees from all Released Claims. As of the Effective Date, Named Plaintiff and the Collective Members, and anyone claiming through or on behalf of any of them, will be forever barred and enjoined from commencing or prosecuting any action or other proceeding in any court of law or equity, arbitration All Collective Members who do not opt out of the Settlement by submitting a timely Opt Out shall be bound by all determinations and judgments in the Action concerning the Settlement, whether favorable or unfavorable to the Collective or Collective Member.

16. Subject to the approval of the Court, any timely and properly objecting Collective Member may appear, in person or by counsel, at the Final Approval Hearing to explain why the proposed Settlement should not be approved as fair, reasonable, and adequate, or to object to any motion for attorneys' fees and expenses or class representative Service Awards. Any Collective Member who has not timely and properly filed an objection in accordance with the deadlines and requirements set forth herein shall be deemed to have waived and relinquished his/her/its right to object to any aspect of the Settlement, or any adjudication or review of the Settlement, by appeal or otherwise.

17. To appear at the Final Approval Hearing, any Collective Member must, no later than the objection deadline, file with the Clerk of the Court, and serve upon all counsel designated in the Notice, a notice of intention to appear at the Final Approval Hearing. The notice of intention to appear must include copies of any papers, exhibits, or other evidence that the objecting Collective Member (or the Collective Member's counsel) intends to present to the Court in connection with the Final Approval Hearing. Any Collective Member who does not provide a notice of intention to appear in accordance with the deadline and other specifications set forth in the Settlement Agreement and the Notice, or who has not filed an objection in accordance with the deadline and other requirements set forth in the Settlement Agreement and the Notice, shall be deemed to have waived and relinquished any right to appear, in person or by counsel, at the Final Approval Hearing.

18. In the event that the Effective Date (as provided for in the Settlement Agreement) does not occur, the Settlement and the Settlement Agreement shall be deemed null and void and shall have no effect whatsoever.

19. The Parties must carry out the Settlement according to the terms of the Settlement Agreement.

20. The Court imposes the following schedule:

| **Event** | **Date** |
|---|---|
| Notice Date | No later than April 23, 2025 |
| Opt-Out and Objection Deadline | 45 days after mailing of notice; or 59 days for any notices that were re-mailed |
| Plaintiffs' Motion for Final Approval | No later than July 15, 2025 |
| Final Approval Hearing | July 29, 2025 |

Benjamin Beaton, District Judge
United States District Court

March 24, 2025

10