# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

GALE CARTER, ET AL.                                                    PLAINTIFFS

v.                                                         No. 5:18-cv-41-BJB

PASCHALL TRUCK LINES, INC., ET AL.                                    DEFENDANTS

* * * * *

## MEMORANDUM OPINION AND ORDER

The proposed settlement of this Fair Labor Standards Act collective action resolves claims that Paschall Truck Lines misclassified truck drivers as independent contractors and failed to pay them the minimum wage. *See* Preliminary Approval Order (DN 319) at 1. According to class and defense counsel, 1,056 truck drivers have opted into the collective action, while none have opted out. *See* Motion for Final Settlement Approval (DN 321-1) at 16. Nor have any drivers objected to the proposed settlement, which calls for payments of roughly $37 for each week that every affected driver worked for PTL without sufficient payment. In March 2025, the Court preliminarily approved the collective-action settlement and authorized notice to the affected drivers. And in July, at the plaintiffs' request, the Court held a final-fairness hearing to evaluate the settlement.

Against what should a settlement of this sort be evaluated? Many courts have held that dismissal of FLSA collective-action claims requires judicial review. *See, e.g., Maldonado v. WK Kellogg Co.*, No. 1:24-cv-90, 2025 WL 1427073, at *2 (W.D. Mich. May 6, 2025) (collecting cases). And those courts have deduced standards concerning adversity, fairness, diligence, and the like against which to measure the proposed resolution. *See, e.g., Mitcham v. Intrepid U.S.A., Inc.*, No. 3:17-cv-703, 2019 WL 5496023, at *2 (W.D. Ky. May 28, 2019).

The source of that judicial obligation and authority, however, isn't entirely clear. The FLSA's text doesn't impose any such obligation. And the Federal Rules of Civil Procedure ordinarily give effect to post-settlement stipulations of dismissal without any judicial action at all, so long as all parties have signed off. *See* FED. R. CIV. P. 41(a)(1)(A)(ii); *Askew v. Inter-Continental Hotels Corporation*, 620 F. Supp. 3d 635, 637 (W.D. Ky. 2022). The primary exception is for class actions, which bind absent parties whose interests a court must—as a matter of equity and under the federal rules—protect. *See Gilstrap v. Sushinati LLC*, 734 F. Supp. 3d 710, 724–25 (S.D. Ohio 2024) ("In the class action context, a court's order or judgment—issued as an exercise of the court's equitable powers—is necessary to bind absent class

members."). But FLSA collective actions are opt-*in* affairs without absent parties. *Id.* at 725–26. So the threats to the rights of absent litigants against which judicial review is meant to guard, *see generally Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 805 (1985), are far less salient than in the class-action context.

Whether judicial approval of a settlement in this setting is warranted, futile, or even advisory is an open question in the Sixth Circuit. *See Steele v. Staffmark Investments, LLC*, 172 F. Supp. 3d 1024, 1026 (W.D. Tenn. 2016) (collecting cases). Other circuits remain split on the question. *Id.* And district judges within the Sixth Circuit likewise disagree. *Compare Askew*, 620 F. Supp. 3d at 638 (expressing doubts regarding the necessity of judicial approval of FLSA collective-action settlements), and *Gilstrap*, 734 F. Supp. 3d at 721 (expressing even more doubts, even more strongly), *with, e.g., Maldonado*, 2025 WL 1427073, at *4–5 (inferring a duty to review collective-action settlements from the FLSA's purpose).

Despite, or perhaps because of, this uncertainty, counsel for the opt-in plaintiffs and PTL asked the Court to review and approve their settlement. *See* Plaintiff's Unopposed Motion for Final Settlement Approval (DN 321). During a hearing on the motion, they took no position on whether the FLSA *required* such approval. *See* DN 322. Yet they maintained that approval would be appropriate regardless—partly because the parties' settlement agreement rested on this Court's determination that the settlement is "fair, reasonable, and adequate." Settlement Agreement (DN 314-1) at 27. Does such a contractual term suffice to justify judicial review? Certainly litigants may not stipulate their way into federal court. *See, e.g., Mitchell v. Maurer*, 293 U.S. 237, 244 (1934) ("[L]ack of federal jurisdiction cannot be waived or be overcome by an agreement of the parties"). But a legitimate dispute raising questions about the application of federal law originated this long-running litigation. So the only question is whether review is necessary to terminate, rather than trigger, federal jurisdiction. And federal courts regularly exercise their discretion to formalize agreed resolutions to pending Article III controversies. *See Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 381–82 (1994). Given the unsettled nature of this question and diversity of approaches taken by district courts in this circuit, that approach is appropriate here. So the Court has reviewed the substance of the proposed settlement and determined that, at a minimum, dismissal is appropriate under Rule 41. *Cf. Askew*, 620 F. Supp. 3d at 639–40 (explaining that FLSA dismissal are permissible and self-executing under Rule 41).

The Court would reach the same result if it went further and applied the standards often employed by other courts within the Sixth Circuit. When reviewing FLSA collective-action settlements, those courts have generally looked to the same criteria used to review class settlements. *See, e.g., Mitcham*, 2019 WL 5496023, at *2 (noting that some factors are rooted in the Federal Rules while others apparently continue to apply, notwithstanding the addition of Rule 23(e), as some species of federal common law). The factors rooted purely in caselaw "include: (1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the

merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest." *Does 1–2 v. Déjà Vu Services, Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019) (quotation marks omitted). And those that emerge from Rule 23 itself include whether the class representatives and counsel adequately represented the class, negotiated a proposal at arm's length, reached an agreement providing adequate relief, and reached an agreement that treats class members equitably relative to one another. *See* FED. R. CIV. P. 23(e)(2).

For all the reasons stated in the preliminary-approval order, the Court has no reason to doubt that the settlement agreement here would satisfy both sets of considerations. *See* Preliminary Approval Order at 4–6. At that stage, the court could not address the sixth *Déjà Vu* factor—the reaction of absent class members—because those members had not yet had the chance to object. *Id.* at 6. But the time for objections has now come and gone without any indication of discontent within the class; to the contrary, the class unanimously supported the settlement with zero objections and zero opt-outs. Motion for Final Settlement Approval at 16.

Otherwise, the Court's main concern at the preliminary-approval stage was whether the proposed $10,000 service award to named plaintiff Gale Carter amounted to inequitable treatment of the other class members that would offend Rule 23(e)(2). At the hearing, counsel explained that Carter had contributed more than 100 hours—on a dozen different dates—into developing the plaintiffs' case. The Sixth Circuit has recognized that, at least in class actions, such service awards can be "efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). And here, given the average payout to plaintiffs of roughly $657, the Court can imagine that—absent some service award—no plaintiff would have incentive to spend the hundreds of hours that were apparently necessary to secure some recovery. So unlike service awards that *disincentivize* class representatives from robustly advocating on a class's behalf, Carter's incentives were aligned with the class, and the whole class—as evidenced by the settlement's unanimous approval—benefited from his efforts. *See In re Dry Max Pampers Litigation*, 724 F.3d 713, 722 (6th Cir. 2013).† Four other plaintiffs sat for remote depositions, and the agreement calls for them to receive $500 each. For similar reasons, these plaintiffs' efforts appear to have benefited the plaintiffs as a collective whole, whose counsel has authorized this compensation.

The only other issue that the preliminary-approval order had identified was the settlement agreement's proposed disbursement of any leftover funds to the St. Christopher's Truckers Fund under the *cy pres* doctrine. *See* Settlement Agreement

---

† Despite the skepticism expressed above regarding the doctrinal basis for judicial review of collective actions, differential treatment of class members—including through the approval of service awards—stands as one potential reason why judicial review of the equity of such settlements may prove warranted. *Cf. In re Dry Max*, 724 F.3d at 718 (addressing service awards in class-action settlements).

(DN 314-1) at 28.  First, the parties explained at the final fairness hearing that the settlement agreement's mechanics and unanimous participation rate should leave little if any money left over.  That minimizes the importance of the question, even if it doesn't directly answer it.  Second, to the extent any money is left over, St. Christopher's appears to be an appropriate *cy pres* "remainderman": a charity that supports injured truckers, whom the parties agree are appropriate beneficiaries of any unclaimed funds.

The Court therefore acknowledges the parties' agreement to dismiss this case with prejudice, consistent with the terms of the proposed settlement, and retains jurisdiction to enforce that settlement should the parties seek such relief.  Proposed Order (DN 321-8) at 1–3; *see also Kokkonen*, 511 U.S. at 381–82.  Consistent with the plaintiffs' unopposed proposed order, the parties may proceed with the allocation of funds as their agreement contemplates.  Because this fully resolve the parties' dispute, this order and the proposed order attached and incorporated below, stands as a final judgment.  *See* FED. R. CIV. P. 58.

**\* \* \* \* \***

Benjamin Beaton, District Judge

United States District Court

February 13, 2026

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| GALE CARTER, *et al.* | |
| Plaintiff, | No. 5:18-CV-41-BJB |
| v. | |
| PASCHALL TRUCK LINES, INC., *et al.* | |
| Defendants. | |

## [PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE COLLECTIVE SETTLEMENT

Before this Court is the Plaintiffs' Unopposed Motion for Final Approval of the Collective Settlement. On July 29, 2025, with notice to the class, the Court conducted a hearing (the "Fairness Hearing") to consider final approval of the Settlement Agreement filed with the Court at ECF Doc. 314-1 ("Settlement"). For the reasons discussed on the record during the Fairness Hearing, and as provided in Plaintiffs' Brief in Support of Plaintiffs' Motion, the Court hereby GRANTS Plaintiffs' Unopposed Motion in Full. The Court:

1. GRANTS final approval of the Collective Settlement;

2. INCORPORATES the definitions, terms, and conditions of the Settlement, which are incorporated and made a part of this Final Judgment and shall have the same meaning as set forth therein;

3. ORDERS Defendant to wire the entire Gross Settlement Amount of $1,175,000 to Simpluris, Inc., who is appointed Claims Administrator, within 14 days of the Final Effective Date of the Settlement, pursuant to § VI(2) and § IX(2) of the Settlement;

4. ORDERS Simpluris, Inc., who is the appointed Claims Administrator, to distribute the Settlement Fund to all Collective Members Consistent with § IX(3) of the

1

Settlement, subject to any modification directed by the Court;

5.      GRANTS Named Plaintiff Gale Carter's request for a service payment of $10,000 for the effort and risk he took to benefit the Collective;

6.      GRANTS Ronald Baugh, Nathaniel Thompson, Justin Hughes, and Lakendal Harris' requests for service payments of $500 each for the effort and risk they took to benefit the Collective;

7.      GRANTS Class Counsel's requests for their reasonable attorneys' fees of $391,666.66, representing 33 1/3% of the Settlement Fund;

8.      GRANTS Class Counsel's request for reimbursement of their reasonable litigation costs of $49.505.29;

9.      GRANTS the Claims Administrator its reasonable fees and costs incurred and to be incurred in providing notice of and administering the settlement to be paid from the Settlement Fund in accordance with the Settlement Agreement, not to exceed $15,000;

10.     ORDERS that the Release contained at § V(1) in the Settlement is binding on all Settlement Collective Members;

11.     ORDERS that, pursuant to § IX(3) of the Settlement Agreement, any unclaimed funds remaining in the Settlement Fund following the time periods provided in § IX(3) shall be donated to *cy pres* recipient, St. Christopher Truckers Development and Relief Fund.

This document shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure. Final Judgment in this action is hereby entered. This Action is hereby dismissed on the merits and with prejudice as to the Released Claims, without fees or costs to any Party except as otherwise provided in this Order, any other Order of this Court, and the Settlement Agreement.

2

Without affecting the finality of this Final Judgment, the Court hereby retains continuing and exclusive jurisdiction over the Parties with respect to all matters relating to the Action and/or Agreement, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the Settlement and this Order and Judgment.

IT IS SO ORDERED this _____ day of _____, 2025.

_____
The Honorable Benjamin Beaton
U.S. District Judge